**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

DR. CYNTHIA E. KEPPEL,

    **PLAINTIFF,**

 **V.**

           **Case No.: 4:26-CV-00112-MSD-LRL**

JEFFERSON SCIENCE ASSOCIATES, LLC,
SOUTHEASTERN UNIVERSITIES
RESEARCH ASSOCIATION, INC.,
JENS DILLING, AND
SEAN HEARNE,

     **DEFENDANTS.**

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JENS DILLING'S MOTION TO DISMISS**

**INTRODUCTION**

Defendant Jens Dilling ("Dilling") submits this Memorandum of Law in support of his Motion to Dismiss all claims asserted against him under Federal Rule of Civil Procedure 12(b)(6). Although the Complaint spans fifteen counts, only two are directed at Dilling: Count XI, a claim under the District of Columbia Human Rights Act ("DCHRA") premised on an aiding-and-abetting theory, and Count XII, a claim for defamation per se under Virginia common law. Neither states a claim, and neither belongs in this Court against this individual defendant.

Plaintiff was, by her own allegations, employed at the Thomas Jefferson National Accelerator Facility in Newport News, Virginia. Her defamation claim is the centerpiece of the case against Dilling, yet the Complaint never sets forth the actual words Dilling is alleged to have spoken—an essential requirement under well settled Virginia law. Instead, Plaintiff offers only a paraphrase: that Dilling stated she had "mismanaged the fiscal and safety aspects of her position."

That is not enough. The DCHRA claim fares no better, because the DCHRA does not reach employment based in Virginia, and the aiding-and-abetting theory against Dilling is wholly derivative of a primary violation Plaintiff cannot establish. For these reasons, and because no federal claim is pleaded against Dilling at all, the claims against him should be dismissed.

## STATEMENT OF ALLEGED FACTS[1]

Plaintiff Dr. Cynthia E. Keppel alleges that she was employed for approximately thirty years at the Thomas Jefferson National Accelerator Facility ("Jefferson Lab") in Newport News, Virginia, which is operated by Jefferson Science Associates, LLC ("JSA") and Southeastern Universities Research Association, Inc. ("SURA"). (Compl. ¶¶ 3, 14, 32.) She alleges she rose to Associate Director for the Physics Division. (Compl. ¶¶ 3, 34.)

Plaintiff alleges that in May 2025, Dilling was appointed Laboratory Director of Jefferson Lab by JSA/SURA. (Compl. ¶¶ 5, 38.) She alleges that Dilling thereafter engaged in gender-based conduct, including bypassing her to contact her male direct reports, interrupting and dismissing her at Directors' Council meetings, and implementing an "Operations Audit" of her division. (Compl. ¶¶ 6, 40-52.)

Plaintiff alleges that on November 21, 2025, JSA terminated her employment. (Compl. ¶¶ 7, 53.) She alleges she was escorted from the facility and her access credentials were disabled. (Compl. ¶¶ 9, 58.)

With respect to the claims against Dilling, Plaintiff alleges that on or about December 18, 2025, Dilling hosted a video conference attended by JSA/SURA employees, clients, customers, and members of the scientific community, and that during that conference Dilling "made unsupported, false, and defamatory statements alleging that Dr. Keppel had mismanaged the fiscal,

---

[1] Defendant Dilling contests the accuracy of the facts as plead but accepts them as true only for purposes of this motion.

safety and operational aspects of her position." (Compl. ¶¶ 10, 70-72.) The Complaint characterizes these statements as false and made with actual malice but does not quote any specific words spoken by Dilling. (Compl. ¶¶ 73-74, 168-171.)

Plaintiff further alleges that both JSA and SURA maintain headquarters in Washington, D.C., and that the discriminatory and retaliatory decisions "originated and were transmitted from Defendants' Washington, DC headquarters." (Compl. ¶¶ 15, 19, 162.) She alleges that Dilling and Hearne are "individually liable under the DCHRA as aiders and abettors" pursuant to D.C. Code § 2-1402.62. (Compl. ¶ 164.)

**LEGAL STANDARD**

To survive a motion under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Although a court accepts well-pleaded facts as true, it need not accept "legal conclusions," "[t]hreadbare recitals of the elements of a cause of action," or "conclusory statements." *Id*.; *Twombly,* 550 U.S. at 555. The Fourth Circuit has held that "naked assertions of wrongdoing" without "factual enhancement" cannot survive a motion to dismiss. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009).

**ARGUMENT**

**I.    Count XII: Plaintiff Fails to State a Claim for Defamation**

        **A.    *Virginia law requires a defamation plaintiff to plead the exact words allegedly spoken***

3

The Complaint alleges only that Dilling made "statements alleging that Dr. Keppel had mismanaged the fiscal, safety and operational aspects of her position." (Compl. ¶¶ 71, 168.) It does not identify a single actual word attributed to Dilling. That allegation is a characterization of the supposed gist of a statement, not a pleading *in haec verba*. However, in Virginia, a "[g]ood pleading requires that the exact words spoken or written must be set out in the declaration in haec verba [sic]. Indeed, the pleading must go further; -- that is it must purport to give the exact words. . .. Words of equivalent or similar import are not sufficient." *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 215 (1939). Judge Giles recently affirmed that the Virginia pleading requirement for *in haec verba* for defamation claims applies in federal court. *See Chacko v. Preston*, Case No. 1:23-cv-551, 2024 U.S. Dist. LEXIS 38816, at *14 (E.D. Va. Mar. 5, 2024), *aff'd,* 2024 U.S. App. LEXIS 29228 (4th Cir. Nov. 18, 2024).

The Eastern District of Virginia has consistently adopted this standard for claims pending in federal court. *See Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 670 (E.D. Va. 2015) ("Goulmamine, in response, claims that the 'exact words' requirement is a state law requirement that is inapplicable in a federal proceeding, and that laxer federal pleading standards govern his Complaint. (Pl.'s Reply 18) (relying on *Hatfill*, 416 F. 3d at 329 ('A defamation complaint, like any other civil complaint in federal court, must provide 'a short and plain statement of the claim.'')). Goulmamine's reference to the general federal standard of pleading is defeated by more specific federal jurisprudence on pleading insulting words and defamation under Virginia law. First, Goulmamine ignores that Thompson was a federal district court decision, deciding an insulting words claim, that required plaintiff to plead exact words. Second, courts in the Eastern District of Virginia regularly cite the pleading standards of Virginia state law when they dismiss defamation cases for failure to plead exact words. *E.g., McGuire v. IBM Corp.*, No. 1:11CV528

4

LMB/TCB, 2011 U.S. Dist. LEXIS 100893, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011) ('The pleading standard for a defamation claim under Virginia law 'requires that the exact words spoken or written must be set out in the declaration in haec verba''). Although McGuire and similar cases involve defamation rather than insulting words, the insulting words statute 'has been interpreted by Virginia courts to be virtually co-extensive with the common law action for defamation.' *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987) (applying constitutional imitations on defamation actions to insulting words cases); *O'Neil*, 157 F. Supp. at 651 ('an action for insulting words ... is treated precisely as an action for slander or libel, for words actionable per se, with one exception, namely, no publication is necessary'). Thompson and McGuire are persuasive authority and, relying on them, the Court concludes that insulting words claims must state the insulting language in haec verba in federal as well as state court."). This specificity permits the court to determine whether the alleged statement is capable of a defamatory meaning, is factual rather than opinion, and is otherwise actionable. *See Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134 (2003).

Plaintiff's omission is dispositive. Without the exact words, neither Dilling nor the Court can evaluate whether Plaintiff alleges a false statement of fact instead of an opinion; whether the words have a defamatory sting; whether the claimed statement is susceptible to proof; or whether the communication was privileged. *See Sloane*, 185 Va. at 852–53; *Harless*, 80 Va. App. at 686–87, 900 S.E.2d at 507–08; *Cretella*, 640 F. Supp. 2d at 746–47. Count XII should be dismissed.

### B. The alleged statements are, at most, non-actionable expressions of opinion

Moreover, pure expressions of opinion—statements relative in nature that depend largely on the speaker's viewpoint—cannot support a defamation claim. *Schaecher v. Bouffault*, 290 Va. 83, 101-102 (2015); *Raytheon Tech. Servs. Co. v. Hyland*, 273 Va. 292, 303 (2007). Although a

performance review can contain actionable false factual assertions, statements that are merely evaluative and lack a provably false factual connotation are protected opinion. *Raytheon*, 273 Va. at 303–06.

Courts have consistently rejected defamation claims based on opinions. *See Am. Communs. Network v. Williams*, 264 Va. 336, 340 (2002) (finding statement that employee "made two key mistakes" to be an opinion not qualifying as defamatory); *Cory v. Thompson*, No. CL22-971, 2022 Va. Cir. LEXIS 146, at *12-13 (Spotsylvania Cnty. Aug. 1, 2022):

> The Court finds that the remaining statements are opinions that rest entirely on the viewpoints of the speakers". In *Raytheon Technical Services Co.*, the Virginia Supreme Court reviewed a statement that an individual 'is frequently verbose and vocal in her opinions, to a degree that others stop participating in open dialogue.' *Raytheon Technical Services Co.*, 273 Va. at 305.

> The Court held that 'the negative conduct, and whether and how often it occurred, is a matter of the speaker's perspective and, as such, constitutes opinion, not fact.' The statements here are analogous. Describing words like 'violent,' 'controlling,' 'threatening,' 'cruel,' and 'physically dangerous' vary based on the speaker's perspective. Similarly, the word 'abuse' can also vary based on perspective; the speaker could be referring to physical abuse or emotional abuse, and the degree at which one considers conduct to be 'abuse' varies from person to person. That Shannon 'fears' Shane and feels that he abuses his spouses is pure viewpoint. The demurrer is sustained as to these statements."); *Baldwin v. Baker*, 94 Va. Cir. 366, 373 (Prince Edward Cnty. 2016) ("Crawford and Sinyard complain that Baker made defamatory statements to Crossroads staff, namely, Baker made the following comments: 'they are not as knowledgeable as you think'; 'they are liars'; and, 'they were dangerous to Crossroads and needed to be removed.'

> Each of Baker's statements is insulting or offensive, but these statements are her opinion that is not provably false. 'Speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of common law defamation claim.' *Schaecher v. Bouffault*, 290 Va. at 102, citing *Yeagle v. Collegiate Times*, 255 Va. at 295.

> These opinion statements are not defamatory as a matter of law.

Here, the Complaint's bare characterization that Dilling said Plaintiff "mismanaged" certain aspects of her position provides no actual language, no underlying factual assertion, and no

6

contextual detail from which the Court could determine that an actionable factual statement was made. Even if this allegation wasn't an expression of opinion, how Plaintiff managed her position, which received federal funding, is a matter of public concern. The pleading therefore does not plausibly establish the required actionable statement element.

### C.    The alleged statements are protected by a qualified privilege

Virginia recognizes a qualified privilege for communications made in good faith between persons sharing a corresponding interest or duty in the subject matter. *Larimore v. Blaylock*, 259 Va. 568, 572 (2000); *Cashion v. Smith*, 286 Va. 327, 338 (2013). Employment matters are a familiar occasion for the privilege, including communications made between employers and employees in disciplinary or discharge matters. *Larimore*, 259 Va. at 572–74; *Harless*, 80 Va. App. at 688–90, 900 S.E.2d at 508–09.

The pleaded context is a conference involving institutional employees and persons allegedly connected to Jefferson Lab's scientific and professional community, concerning Plaintiff's former leadership role. (Compl. ¶¶ 70–72.) Plaintiff offers only the conclusory label "actual malice," without facts identifying the alleged words or showing a malicious abuse of any privilege. (*Id.* ¶¶ 73–74, 168–71.) That is insufficient under *Twombly* and *Iqbal*.

## II.    Count XI: The DCHRA Does Not Reach Plaintiff's Virginia-Based Employment, And the Aiding-And-Abetting Claim Against Dilling Is Derivative

The DCHRA makes it unlawful for an employer to discriminate in the "terms, conditions, or privileges of employment." D.C. Code § 2-1402.11. The Act does not apply extraterritorially. When an employee is not employed in the District, either the [adverse employment] decision must be made, or its effects must be felt, or both must have occurred, in the District of Columbia. *See Cole v. Boeing Co*, 845 F. Supp. 2d 277, 284–85 (D.D.C. 2012). Likewise, the Fourth Circuit

rejected a claim under Maryland law for conduct allegedly occurring in Virginia. *See Elyazidi v. SunTrust Bank*, 780 F.3d 227, 237-38 (4th Cir. 2015).

The District of D.C.'s decision in *Cole v. Boeing Co.* is directly instructive. There, the court dismissed DCHRA claims based on alleged discrimination, retaliation, and a hostile work environment occurring in Virginia. 845 F. Supp. 2d at 284–85. The court held that the DCHRA did not cover acts occurring in Virginia where the relevant decisions did not occur in the District. *Id.*

The Complaint alleges that Plaintiff worked at Jefferson Lab in Newport News, Virginia; was supervised and audited there; was terminated there; and was escorted from that Virginia facility. (Compl. ¶¶ 14, 32, 40–58.) It contains no nonconclusory allegation that Plaintiff worked in the District or felt the effects of the alleged discrimination there. JSA's and SURA's alleged District headquarters and the generalized assertion that decisions originated or were transmitted from Washington do not transform a Virginia employment relationship into one governed by the DCHRA. *See Cole*, 845 F. Supp. 2d at 284–85.

Count XI alleges that Dilling is liable solely as an aider and abettor. (Compl. ¶ 164.) Because the Complaint does not plausibly allege a DCHRA violation applicable to Plaintiff's Virginia employment, it fails to state an aiding-and-abetting claim against Dilling as well.

### III.   Counts XI & XII: The Court Lacks Subject Matter Jurisdiction Over the Claims Against Dilling and Should Decline Supplemental Jurisdiction

Alternatively, and to the extent the Court is inclined to deny the motion to dismiss on the merits, the Court should decline supplemental jurisdiction over XI and XII.

The Complaint pleads fifteen counts, but every federal cause of action—the Title VII claims (Counts I-VI), the COBRA claim (Count XIII), and the ERISA claims (Counts XIV-XV)—is asserted only against JSA and/or SURA, not against Dilling. The only two counts naming Dilling

8

arise under the DCHRA (Count XI) and Virginia common law (Count XII). There is no independent basis for federal jurisdiction over either claim: no federal question is presented, and the parties are not diverse (Plaintiff and Dilling are both alleged to be Virginia residents/citizens). Jurisdiction over the claims against Dilling therefore rests solely on supplemental jurisdiction under 28 U.S.C. § 1367.

The Virginia defamation claim against Dilling does not arise from the same common nucleus of operative fact as the federal claims against SURA and JSA. Plaintiff alleges that she was terminated by SURA[2] and JSA on November 21, 2025. The alleged defamation did not occur until December of 2025. Therefore, the allegations underpinning her federal claims are completely separate from her allegations underpinning the defamation claim. Under § 1367(c), the Court should either dismiss or decline supplemental jurisdiction over the defamation claim.

A district court may decline to exercise supplemental jurisdiction where the state-law claim raises novel or complex issues of state law, substantially predominates, or for other compelling reasons. *See id.* The DCHRA's extraterritorial reach (discussed below) is precisely such a novel and complex question, and the individual-capacity state and local claims against Dilling should be dismissed. *See* 28 U.S.C. § 1367(c); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *ESAB Group, Inc. v. Zurich Insurance PLC,* 685 F.3d 376, 394 (4th Cir. 2012); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

## IV.   To The Extent Plaintiff Asserts Any Title VII or VHRA Claim Against Dilling Individually, It Fails As A Matter Of Law

Counts I through X are pleaded against JSA and/or SURA. But to the extent the Complaint's reference to Dilling "individually and in his official capacity" is construed to assert Title VII or VHRA claims against him personally, those claims fail.

---

[2] As more fully discussed in SURA's brief in support of its motion to dismiss, SURA did not employ Plaintiff.

9

Supervisors and employees are not individually liable under Title VII. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998); *see also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). The VHRA likewise imposes liability on covered employers, not on individual employees acting as supervisors. Va. Code Ann. § 2.2-3905. Any individual Title VII or VHRA claim against Dilling should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Jens Dilling respectfully requests that the Court grant his Motion to Dismiss and dismiss with prejudice all claims asserted against him—Count XI (DCHRA) and Count XII (Defamation Per Se)—together with any Title VII or VHRA claim construed to be asserted against him individually, grant him his attorney's fees and costs pursuant to Va. Code § 8.01-223.2, and grant such other and further relief as the Court deems just and proper.

Date: August 10, 2026                                Respectfully submitted,

                                                     **JENS DILLING**

                                                     /s/ Kristina H. Vaquera
                                                     Kristina H. Vaquera (VSB No. 43655)
                                                     Milena Radovic (VSB No. 91000)
                                                     N. Winston West, IV (VSB No. 92598)
                                                     Jackson Lewis P.C.

                                                     *Physical Addresses:*
                                                     701 E. Byrd Street, 17th Floor
                                                     Richmond, Virginia 23219

                                                     Dominion Tower
                                                     999 Waterside Dr., Ste. 2525
                                                     Norfolk, VA 23510

                                                     *Mailing Address:*
                                                     P.O. Box 85068
                                                     Richmond, Virginia 23285

10

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jens Dilling*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including:

Deborah Y. Collins
Brittany C. Robbins
Yeng Collins Law, PLLC
440 Monticello Avenue, Suite 1875
Norfolk, VA 23510

Ronald J. Kim
Solomon Law Firm, PLLC
1025 Connecticut Avenue, NW, Suite 1000,
Washington, DC 20036

*Counsel for Plaintiff*

/s/ Kristina H. Vaquera
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jens Dilling*

12