**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **DR. CYNTHIA E. KEPPEL,**<br><br>          **PLAINTIFF,**<br><br>     **v.**<br><br>**JEFFERSON SCIENCE ASSOCIATES, LLC;**<br>**SOUTHEASTERN UNIVERSITIES**<br>**RESEARCH ASSOCIATION, INC.;**<br>**JENS DILLING; AND**<br>**SEAN HEARNE,**<br>          **DEFENDANTS.** | **Case No.: 4:26-CV-00112-MSD-LRL** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT JEFFERSON SCIENCE ASSOCIATES, LLC'S**
<u>**MOTION TO DISMISS**</u>

**INTRODUCTION**

Plaintiff Dr. Cynthia E. Keppel's Complaint recasts an ordinary, lawful leadership-realignment decision by a Department of Energy Management and Operating ("M&O") contractor into a sprawling fifteen-count employment-discrimination lawsuit. But the Complaint's own well-pleaded factual allegations—stripped of their conclusory labels—foreclose any plausible inference of sex discrimination. Most notably, the Complaint itself concedes that a "similarly situated male employee" was terminated at the same time as Dr. Keppel. Compl. ¶ 89. That admitted male comparator undercuts any inference that JSA's actions were motivated by sex.

The alleged hostile-work-environment conduct—meeting interruptions, a division-level operations review, being bypassed for a single presentation, and generic managerial directness—amounts to ordinary workplace friction that the Fourth Circuit has repeatedly held insufficient to

1

sustain a hostile-work-environment claim. The retaliation theory rests on a compromise offer extended after Plaintiff retained counsel and on temporal proximity that cannot establish but-for causation. The ancillary defamation, COBRA, and ERISA claims are each independently deficient as a matter of law. Because no claim against JSA survives the *Twombly*/*Iqbal* plausibility standard, the entire Complaint against it should be dismissed.

## STATEMENT OF FACTS[1]

### I.      Parties and Background

Dr. Keppel is a nuclear physicist who was employed at the Thomas Jefferson National Accelerator Facility ("Jefferson Lab") in Newport News, Virginia. Compl. ¶¶ 2-4, 14, 32. JSA is a Virginia limited liability company that operates Jefferson Lab under contract with the U.S. Department of Energy. Compl. ¶¶ 15-16. JSA maintains its principal place of business in, Newport News, Virginia. Compl. ¶ 15. Dr. Keppel served as Associate Director for the Physics Division and allegedly was one of nine members of the Directors' Council. Compl. ¶¶ 34, 37.

#### A.      Dilling's Appointment and the Conduct Alleged in the Complaint

In May 2025, Dr. Jens Dilling was appointed by JSA as Laboratory Director. Compl. ¶¶ 5, 38. The Complaint alleges that Dilling "routinely bypassed" Dr. Keppel to contact her male direct reports, "interrupted" and "dismissed" her contributions at Directors' Council meetings, and selected a male to deliver a presentation to the Secretary of Energy. Compl. ¶¶ 40-42, 46. The Complaint further alleges that an "Operations Audit" of the Physics Division was ordered by Hearne of SURA and implemented by Dilling. Compl. ¶¶ 47, 49-51.

#### B.      November 21, 2025 Termination Notice and Transition Offer

---

[1] Defendant JSA contests the accuracy of the facts as plead but accepts them as true only for purposes of this motion.

On November 21, 2025, JSA issued Dr. Keppel a written notice regarding the termination of her employment, citing that her "ability to lead the division is not aligned with the direction of the organization." Compl. ¶¶ 53-54. Dr. Keppel was escorted from the facility and her security badge was disabled. Compl. ¶¶ 58-59. Attached to the notice was an unsigned letter offering Dr. Keppel "the opportunity to transition to an individual contributor role," with a one-business-day deadline. Compl. ¶¶ 60-63. Critically, the Complaint alleges that at the same time Dr. Keppel was terminated, a "similarly situated male employee" was also terminated. Compl. ¶ 89.

### C.     Post-Separation Events

Dr. Keppel retained counsel on or about November 25, 2025. Compl. ¶ 67. Her counsel notified JSA on November 26, 2025, and again on December 3, 2025, asserting Title VII violations. Compl. ¶¶ 68-69. On December 18, 2025, Dilling hosted a video conference attended by approximately 300 individuals during which he allegedly made statements regarding the fiscal and safety management of the Physics Division. Compl. ¶¶ 70-71. On December 22, 2025, JSA offered Dr. Keppel a "Nuclear Physics Special Advisor" position at a salary reduction of approximately $100,000. Compl. ¶¶ 77-78.

### D.     COBRA and Retirement Fund Issues

Dr. Keppel alleges JSA failed to provide timely COBRA notice within 44 days of the November 21, 2025 qualifying event. Compl. ¶¶ 81-89. She further alleges that JSA denied her access to her TIAA 401(k) retirement funds on January 14, February 26, and March 6, 2026, because JSA maintained she was still employed. Compl. ¶¶ 91-97.

### E.     Administrative Exhaustion

Dr. Keppel filed EEOC charges on January 20, 2026, against JSA (Charge No. 437-2026-00771) and SURA (Charge No. 437-2026-00772). Compl. ¶ 30. The EEOC issued a Determination

3

and Notice of Rights as to the JSA charge on April 27, 2026. Compl. ¶ 30. This Complaint was filed on July 14, 2026. Compl. ¶ 31.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court accepts well-pleaded factual allegations as true, it need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A complaint that pleads facts "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

In the employment-discrimination context, the Fourth Circuit has emphasized that *Iqbal* requires more than formulaic recitations. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585-86 (4th Cir. 2015) (affirming dismissal of Title VII discrimination complaint that offered only "naked allegations" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]"); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

## ARGUMENT

### I.      Count I: Title VII Gender-Discrimination Claim Fails to State a Plausible Claim

While a Title VII plaintiff need not plead a full *McDonnell Douglas* prima facie case at the pleading stage, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the complaint must nonetheless allege facts sufficient to "raise a reasonable expectation" that discovery will reveal evidence of discrimination. *McCleary-Evans*, 780 F.3d at 585. Here, the Complaint's own allegations defeat any plausible inference of sex-based motive.

The elements of a Title VII gender-discrimination claim nonetheless frame that plausibility inquiry. To state such a claim, a plaintiff must allege facts making it plausible that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Coleman*, 626 F.3d at 190. The first and third elements are sufficiently pled—Dr. Keppel is a woman, and she was removed from her leadership position—but the Complaint fails to plead non-conclusory facts satisfying the second and fourth elements.

### A.    *Plaintiff Fails to Plead Sufficient Facts to Plausibly Show Her Job Performance Met the Employer's Legitimate Job Expectations at the time of the Alleged Adverse Employment Actions.*

First, the Complaint does not plausibly allege that Dr. Keppel was meeting JSA's legitimate expectations at the time of the challenged decision—the second element. The controlling question is whether the employee was performing at a level that met the *employer's* legitimate expectations at the time of termination, not whether the employee believes her own performance was adequate. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279–80 (4th Cir. 2000) (it is the perception of the decisionmaker that is relevant, not the self-assessment of plaintiff).

In the Complaint, Plaintiff fails to plead any facts to support that her performance met her employer's legitimate job expectations. In *Warch v. Ohio Casualty Insurance Company*, the Fourth Circuit Court explained that "the *prima facie* case requires the employee to demonstrate 'that [she] was 'qualified' in the sense that [she] was doing [her] job well enough to rule out the possibility that [she] was fired for inadequate job performance, absolute or relative.'" 435 F.3d 510, 514-15 (4th Cir. 2006). As the Fourth Circuit explained in *Irani v. Palmetto Health*, "whether an employee is satisfying [her] employer's legitimate expectations does not depend on the retrospective analysis of an expert witness or the employee's own perception, but instead depends on 'the perception of

5

the decision maker.'" 767 F. App'x 399, 419 (4th Cir. 2019) (citing *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000)).

In *Robinson v. Loudon Cty. Pub. Schs*, the District Court explained that to plausibly allege satisfactory performance a plaintiff must plead facts to support her allegation that she had always met or exceeded the performance expectations of her employer. Civil Action No. 1:16-cv-1604, 2017 U.S. Dist. LEXIS 133534, at *12 (E.D. Va. Aug. 18, 2017). However, "[a] plaintiff's naked assertion that [he] performed above expectations is insufficient." *Id.* To establish this element and "satisfy the plausibility requirement," a plaintiff can cite "positive feedback or performance reviews that [he] had received from [her] supervisor." *Id.*

In *Goode v. Cent. Va. Legal Aid Soc'y*, the plaintiff listed various positions he held over nearly 25 years while employed at Central Virginia Legal Aid Society ("CLVAS") and cited a 2009 award that he received from the Virginia State Bar. Civil Action No. 3:14cv281-HEH, 2014 U.S. Dist. LEXIS 111650, at *10-11 (E.D. Va. Aug. 12, 2014). The plaintiff then alleged in a conclusory fashion that he "has always met or exceeded the performance expectations of CVLAS." The District Court found these allegations to be insufficient because "[t]he Complaint provides no information concerning *subsequent job evaluations, awards, or recognition* given to him after 2009. There is simply no plausible inference to be drawn about the quality of Goode's performance in March 2013 from the award he received, or comments made by a previous CVLAS Executive Director in 2009." *Id.* at *11. Consequently, the focus of the inquiry is plaintiff's job performance at the time of their adverse employment action, not their job performance over the course of their career.

In her Complaint, Plaintiff fails to plead any information regarding positive feedback, performance reviews, awards, or recognition that she received at the time or leading up to her

6

alleged termination. Instead, Plaintiff vaguely alleges that "[t]hroughout her thirty-year career at Jefferson Laboratory, Dr. Keppel performed all of her duties with exceptional skill, vision, and leadership" and that "[s]he founded numerous initiatives and programs both within JSA/SURA and in collaboration with other key national scientific organizations." Compl. ¶35. Plaintiff's allegations only reflect her own assessment of her work and the absence of prior criticism. Although Plaintiff cites alleged awards and recognition that she received, all of the cited examples substantially predate the relevant time period. *See* Compl. ¶36 ("Dr. Keppel received sustained and repeated recognition for her outstanding leadership and scientific contributions, including: (a) the *2020* U.S. Department of Energy Office of Science Distinguished Scientist Fellow Award; (b) the *2011* Virginia Outstanding Scientist Award; and (c) the *2010* Influential Women of Virginia Award") (emphasis added). In this case, Plaintiff's pleadings regarding her job performance are insufficient, and as a result, the Court should grant the Motion to Dismiss.

To the contrary, the Complaint itself pleads that the Laboratory Director determined that her "ability to lead the division is not aligned with the direction of the organization," Compl. ¶ 54, and it alleges no non-conclusory facts from which the Court could infer that this leadership judgment was anything other than genuine. A plaintiff's self-assessment and the mere absence of earlier reprimands cannot, without more, carry the second element past the plausibility threshold.

### B. *Plaintiff Fails to Plead Sufficient Facts to Plausibly Show the Alleged Adverse Employment Actions Occurred Under Circumstances Giving Rise to a Reasonable Inference of Unlawful Discrimination*

Second, the Complaint fails to plead facts satisfying the fourth element—circumstances giving rise to an inference of unlawful discrimination. The Complaint acknowledges that the stated reason for Dr. Keppel's removal from senior leadership was that her "ability to lead the division is not aligned with the direction of the organization." Compl. ¶ 54. That stated reason is facially

non-discriminatory, and the Complaint pleads no non-conclusory facts connecting it to Dr. Keppel's sex.

Third, the Complaint's remaining allegations of animus—that Dilling "bypassed" Dr. Keppel, "interrupted" her at meetings, selected a different employee for a presentation, and ordered a division review—are precisely the "threadbare recitals" and conclusory assertions that *Iqbal* instructs courts to disregard. An employee's subjective belief that supervisory criticism is unfair, excessive, or unwarranted does not itself state a Title VII claim. Absent evidence that the criticism was because of a protected characteristic, or that protected-class-based conduct was sufficiently severe or pervasive to alter the conditions of employment, Title VII does not convert ordinary performance disputes, harsh management, or personality conflict into actionable discrimination. *See Holloway v. Maryland*, 32 F.4th 293, 300–01 (4th Cir. 2022); *see also Perkins v. International Paper Co.*, 936 F.3d 196, 207–08 (4th Cir. 2019); *Hawkins*, 203 F.3d at 280–82.

Plaintiff's allegations that employees outside her protected characteristics received more favorable treatment fares no better. In *Haywood v. Locke*, the Fourth Circuit explained that "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim[;] [h]owever, in this case, the plaintiffs have based their allegations completely upon a comparison to an employee from a non-protected class, and *therefore the validity of their prima facie case depends upon whether that comparator is indeed similarly situated*." 387 F. App'x 355, 359 (4th Cir. 2010) (emphasis added). If a plaintiff "seeks to establish *the plausibility* of discrimination by comparing [themselves] to employees outside of the protected class," they must "*do more than make a general accusation that [they were] treated differently* as a result of [their protected characteristic]." *Robinson*, 2017 U.S. Dist. LEXIS 133534, at *10 (emphasis added).

8

A valid comparator must be similar in all relevant respects, including comparable conduct and a common decisionmaker. *See Haywood*, 387 F. App'x at 359. When a plaintiff fails to plead sufficient facts to show that employees were similarly situated, Courts will dismiss discrimination claims. *See, e.g.*, *Credle*, 2025 U.S. Dist. LEXIS 1203, \*34-35 ("As described above, a plaintiff utilizing comparator evidence to establish the fourth prong of a prima facie case must plead 'sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination.' *Swaso*, 698 F. App'x at 748 (citation omitted). But here, Plaintiff fails to plead any facts past the conclusory statement that no other non-African American employees had to work five days per week in the office. (FAC ¶¶ 64, 104.) Plaintiff failed to even name a single similarly situated colleague who was not required to work in office five days per week. Further, under the 'general pattern of racial discrimination' standard, Plaintiff would again fail, because she pleads no such pattern. *Swaso*, 698 F. App'x at 748 (citation omitted). As a result, Plaintiff failed to plead non-conclusory facts to support an inference of discrimination as it relates to the requirement that she work in the office five days per week.").

The allegations in the Complaint are conclusory at best as Plaintiff fails to identify a single employee that allegedly received more favorable treatment. Instead, Plaintiff relies on broad generalizations. *See* Compl. ¶102 ("JSA subjected Dr. Keppel to gender discrimination in violation of Title VII through: (a) […] silenced in ways that did not occur with *male colleagues*, and gender-based disparate treatment pervaded her daily professional interactions; (b) the imposition of a pretextual Operations Audit on her division alone, a form of heightened scrutiny never applied to *male-led divisions*; […] (e) the immediate replacement of Dr. Keppel with *a less qualified male*; (f) the denial of severance despite a pattern and practice of providing it to departing *male*

*executives*[.]"). The Complaint simply labels these actions as "gender-based" without pleading non-conclusory facts demonstrating that these actions were taken *because of* sex rather than because of legitimate leadership assessments. *McCleary-Evans*, 780 F.3d at 588.

## II.      Count III: Hostile-Work-Environment Claim Fails as a Matter of Law

To state a hostile-work-environment claim under Title VII, a plaintiff must plausibly allege that the conduct was: (1) unwelcome; (2) based on sex; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (4) imputable to the employer. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313-14 (4th Cir. 2008). The Complaint fails to satisfy elements (2) and (3).

### A.      Alleged Conduct Was Not Based on Sex

Title VII targets discrimination "because of sex," not general workplace unhappiness. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). The Fourth Circuit requires "some basis for [the] belief" that the conduct would not have occurred but for the plaintiff's sex. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

Here, every act comprising the alleged hostile environment is gender-neutral on its face: interrupting a subordinate at meetings, contacting that subordinate's direct reports, ordering an operations audit of a division, and selecting someone else for a presentation. The Complaint attempts to convert these neutral acts into sex-based conduct through the conclusory assertion that Dilling "did not do this to similarly situated male colleagues." Compl. ¶¶ 40-42. But these are precisely the "naked assertions devoid of further factual enhancement" that *Iqbal* holds insufficient. 556 U.S. at 678. A court has already rejected a Title VII hostile work environment claim with similar facts. *See Andrews v. Va. Polytechnic Instit. and State Univ.*, Case No. 7:18CV00281, 2020 U.S. Dist. LEXIS 24856, at *25 *aff'd*, No. 20-1297, 2022 U.S. App. LEXIS

6704 (4th Cir. Mar. 15, 2022) (workplace audit, coupled with scattered comments by co-worker and supervisor, did not rise to the level of "severe or pervasive" conduct).

Moreover, the Operations Audit was, on the Complaint's own account, a division-level review of operations—a facially gender-neutral management measure. Compl. ¶¶ 47, 49-51. The Complaint supplies no non-conclusory facts showing that the review was undertaken because of Dr. Keppel's sex; it offers only the label that no comparable review had been imposed on a male-led division. Compl. ¶¶ 50-51. And by Plaintiff's own allegations, the audit concluded that her division met all performance expectations and applicable safety standards, Compl. ¶ 51, so the review neither imposed nor was used to impose any adverse consequence on her. A division operations review is not sex-based harassment merely because the Complaint labels it "discriminatory."

### B.      Alleged Conduct Was Neither Severe nor Pervasive

Even if the conduct were plausibly based on sex—which it is not—it does not approach the threshold of severity or pervasiveness required by the Fourth Circuit. To be clear, "'general allegations' regarding a hostile work environment without 'accounts of specific dates, times or circumstances' are insufficient." *Coleman v. Kettler Mgmt.*, Civil Action No. 1:22-cv-84 (RDA/JFA), 2022 U.S. Dist. LEXIS 223787, at *17 (E.D. Va. Dec. 12, 2022) (quoting *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994)). Indeed, where a plaintiff does not "provide any details as to the specific dates on which her supervisors allegedly harassed her or even the frequency of the purported harassment," those incidents "do not amount to severe or pervasive harassment." *Id.* at *18.

The standard is demanding. Title VII "does not establish a general civility code for the American workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Notably,

"[w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals,* 521 F.3d at 315-16. "Title VII was not designed to create a federal cause of action for all combative or abrasive workplace interactions." For example, Title VII does not reach "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Likewise, conduct that is merely "rude" or "callous," personality conflicts, or isolated incidents (unless extremely serious) are insufficient. *Sunbelt Rentals,* 521 F.3d at 315-16; *Baqir v. Principi*, 434 F.3d 733, 746–47 (4th Cir. 2006). The Fourth Circuit has consistently held that "callous behavior by [one's] superiors" and "rude treatment by [coworkers]" are insufficient to sustain a hostile-work-environment claim. *Bass*, 324 F.3d at 765.

In *Buchhagen v. ICF International, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013), the court held that "harsh criticism," exclusion from meetings, and reassignment of duties were insufficiently severe or pervasive. Likewise, in *Decoster v. Becerra*, the Fourth Circuit rejected the Plaintiff's argument that seven months of alleged humiliation, contemptuous treatment, unfair blame, threats, and negative performance measures created a hostile work environment. 119 F.4th 332, 338-89 (4th Cir. 2024). It characterized the allegations as a difficult supervisory relationship and unpleasant—but not abusive—performance criticism. *Id.* Because the Plaintiff alleged neither physically threatening conduct nor specific discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive, the court held that she failed to state a plausible hostile-work-environment claim and affirmed dismissal. *Id.*

The conduct alleged here—meeting interruptions over a period of approximately six months, being bypassed for one presentation, a division operations review, and allegedly

12

dismissive managerial behavior—is precisely the type of "ordinary workplace friction" that falls far short of the demanding severe-or-pervasive standard. There are no allegations of physical threats, sexual advances, explicit gender-based epithets, or any conduct that objectively alters the terms and conditions of employment. The escort from the facility upon termination, as described in the Complaint, is a facially neutral security measure accompanying an immediate separation, Compl. ¶¶ 58-59, and the Complaint pleads no facts suggesting it was undertaken because of Dr. Keppel's sex. Count III should be dismissed with prejudice.

**III.     Count V: Title VII Retaliation Claim Fails to State a Plausible Claim**

A Title VII retaliation claim requires: (1) protected activity; (2) a materially adverse action; and (3) but-for causation between the two. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Complaint fails on both the adverse-action and causation elements.

First, the December 22, 2025 "Nuclear Physics Special Advisor" offer was extended after Dr. Keppel had retained counsel, who had already notified JSA of the representation and asserted her Title VII claims. Compl. ¶¶ 67-69, 77. An offer of continued employment made in that posture is a compromise communication, and under Federal Rule of Evidence 408 and Virginia Rule of Evidence 2:408 such communications cannot form the basis of a retaliatory adverse action. *See Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

Second, the December 18, 2025, video conference—which the Complaint describes as a conference attended by JSA/SURA employees, clients, customers, business partners, and members of the scientific and national laboratory community—is not a materially adverse employment action. Compl. ¶ 70. An employer's communication to its employees and stakeholder community

13

regarding a leadership change is an ordinary business activity, not an act that would deter a reasonable employee from engaging in protected activity.

Third, the Complaint's causation theory rests entirely on temporal proximity—that the December 18 video conference occurred fifteen days after counsel's December 3 letter. Compl. ¶ 125. But temporal proximity alone, without more, is insufficient to establish but-for causation under *Nassar*'s heightened standard. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). The Complaint offers no additional facts from which the Court could plausibly infer that the video conference would not have occurred but for Dr. Keppel's protected activity. Count V should be dismissed with prejudice.

## IV. Counts VII and IX: VHRA Claims Fail for the Same Reasons

Virginia courts apply the same analytical framework used under Title VII to claims brought under the VHRA. *See* Va. Code Ann. § 2.2-3900 *et seq.* The VHRA discrimination, hostile-work-environment, and retaliation claims (Counts VII and IX) are based on identical allegations and legal theories as the Title VII claims and fail for all the reasons set forth in Sections A through C above. Counts VII and IX should be dismissed with prejudice. *See Lee v. Korea Innovation Ctr.*, No. 1:25-cv-635, 2026 U.S. Dist. LEXIS 50656, at *29 (E.D. Va. Mar. 11, 2026) ("As a preliminary matter, the Court will analyze Plaintiff's Title VII and VHRA claims together, because Title VII and the VHRA use substantially identical language."); *see also Morton v. Froehling & Robertson, Inc.*, 786 F. Supp. 3d 965, 976 (E.D. Va. 2025) ("The analysis of COUNTS IV, V, and VI will be done together because the elements of a retaliation claim under Title VII, Section 1981, and the VHRA are the same. […] *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 398 (W.D. Va. 2023) (applying the elements of a Title VII retaliation claim to a VHRA retaliation claim).")"; *Dufort v. Liberty Univ.*, 2023 U.S. Dist. LEXIS

3424, *16 (E.D. Va. 2023) ("Because Virginia Code Section 2.2-3905(B)(7) uses almost identical language as Section 704(a) of Title VII's anti-retaliation provision, the Court finds that her VHRA claim fails as a matter of law for the same reasons discussed in Section A.").

## V.      Count XI: DCHRA Claim Fails Because the Statute Does Not Apply Extraterritorially

The District of Columbia Human Rights Act prohibits employment discrimination by employers operating within the District. D.C. Code § 2-1402.11. The DCHRA does not apply extraterritorially to employment relationships centered outside the District of Columbia. The statute protects individuals from discrimination in the terms and conditions of employment and provides jurisdiction over employers that maintain a workforce within the District.

Here, the Complaint's own allegations establish that Dr. Keppel resided and worked exclusively in Newport News, Virginia. Compl. ¶ 14. The Complaint further alleges that the unlawful employment practices "were committed principally in this District," and the alleged employment actions—the meetings, the Operations Audit, the termination notice, the facility escort—are all pleaded as occurring at the Jefferson Lab facility in Newport News. Compl. ¶¶ 14, 29. The mere fact that JSA maintains a headquarters address at 1201 New York Avenue, NW, Washington, DC does not transform Virginia-based employment into District of Columbia employment.

The Complaint alleges that "the discriminatory and retaliatory decisions described herein originated and were transmitted from Defendants' Washington, DC headquarters." Compl. ¶ 162. But the locus of the employment relationship and the effects of the challenged actions were in Virginia, not the District. Applying the DCHRA to these facts would impermissibly extend the statute to every multi-state employer that maintains a D.C. office. Furthermore, the substantive

15

discrimination and retaliation theories fail for the reasons stated in Sections A through C. Count XI should be dismissed with prejudice.

## VI.    Count XII: Defamation Per Se Claim Fails as a Matter of Law

Under Virginia law, a defamation claim must be pleaded with particularity, including "the exact words alleged to be defamatory." *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132 (2003); *Schaecher v. Bouffault*, 290 Va. 83, 102 (2015). The plaintiff must set forth "the specific statements" at issue. *Tharpe v. Saunders*, 285 Va. 476, 480 (2013).

The Complaint fails this threshold requirement. It alleges only that Dilling made "unsupported, false, and defamatory statements alleging that Dr. Keppel had mismanaged the fiscal, safety and operational aspects of her position." Compl. ¶ 71. At no point does the Complaint set forth the actual words spoken. This vague characterization does not satisfy Virginia's particularity requirement and warrants dismissal.

Even if adequately pleaded, the statements are protected by Virginia's qualified privilege. An employer's communications to interested parties—here, the JSA employees, clients, customers, and business partners who, on the Complaint's own account, had worked with Dr. Keppel and depend on Physics Division operations—regarding a leadership change are made on a "proper occasion, from a proper motive, and . . . based upon reasonable or probable cause." Compl. ¶¶ 70, 167; *Larimore v. Blaylock*, 259 Va. 568, 572 (2000). Communicating a change in divisional leadership to the community that works with that division is a legitimate employer function.

To overcome the qualified privilege, the Complaint must plausibly allege common-law malice—that the statements were made with knowledge of their falsity or with reckless disregard for truth and with some sinister or corrupt motive. The Complaint's conclusory allegation of

16

"actual malice" (Compl. ¶ 171) is the kind of "threadbare recital" that *Iqbal* holds insufficient. Count XII should be dismissed with prejudice.

## VII.    Count XIII: COBRA Notice Claim Fails to State a Claim

COBRA requires the "administrator" of a group health plan to provide notice to qualified beneficiaries within 44 days of a qualifying event. 29 U.S.C. § 1166(a)(2), (c). Statutory penalties under 29 U.S.C. § 1132(c)(1) are discretionary with the court and run against the "administrator" as defined by 29 U.S.C. § 1002(16)(A).

The Complaint alleges that "JSA, as Dr. Keppel's employer and the party responsible for administering or ensuring compliance with the group health plan's COBRA notice obligations, was required to provide Dr. Keppel with timely written notice." Compl. ¶ 178. This conclusory characterization does not adequately allege that JSA is the "plan administrator" charged with the statutory notice obligation, as opposed to the plan itself or a third-party administrator. Moreover, the Complaint's own theory elsewhere—that Dr. Keppel was not actually separated from employment—undercuts the qualifying event allegation. JSA acknowledges that this is a narrower pleading defect and respectfully requests dismissal without prejudice to allow Plaintiff to replead if she can identify the proper plan administrator.

## VIII.   Count XIV: ERISA §510 Interference Claim Fails to State a Claim

ERISA §510 makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. §1140. Section 510 targets interference with the *employment relationship* to prevent attainment of benefit rights—not disputes over distribution of already-vested funds. *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 238–39 (4th Cir. 1991).

17

The Complaint's ERISA theory is that JSA denied Dr. Keppel "access to her retirement funds" by maintaining to TIAA that she was still employed. Compl. ¶¶ 91-97. This is not a §510 interference claim—it is a dispute over the *distribution* of vested plan benefits. The appropriate vehicle for such a claim is a benefits action under ERISA § 502(a)(1)(B),

29 U.S.C. § 1132(a)(1)(B), not a § 510 interference action.

Furthermore, the Complaint pleads no facts suggesting that JSA's actions were taken "for the purpose of interfering with the attainment of any right" to which Dr. Keppel "may become entitled." The funds are vested; the issue is distribution timing, not accrual. And Plaintiff's claim for equitable relief under § 502(a)(3) fails where an adequate remedy at law exists under section 502(a)(1)(B). *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Count XIV should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Jefferson Science Associates, LLC respectfully requests that this Court:

1. Dismiss all claims against it with prejudice;

2. Award Defendant attorney's fees and costs expended in defending this action; and

3. Grant such other and further relief as the Court deems just and proper.

Date: August 10, 2026                    Respectfully submitted,

**JEFFERSON SCIENCE ASSOCIATES, LLC**

/s/ Kristina H. Vaquera
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor

Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jefferson Science Associates, LLC*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August 2026, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to

all counsel of record, including:

Deborah Y. Collins
Brittany C. Robbins
Yeng Collins Law, PLLC
440 Monticello Avenue, Suite 1875
Norfolk, VA 23510

Ronald J. Kim
Solomon Law Firm, PLLC
1025 Connecticut Avenue, NW, Suite 1000,
Washington, DC 20036

*Counsel for Plaintiff*

/s/ Kristina H. Vaquera
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel:  (757) 648-1448
Fax:  (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jefferson Science Associates, LLC*

20