**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **DR. CYNTHIA E. KEPPEL,**<br><br>**PLAINTIFF,**<br><br>**V.**<br><br>**JEFFERSON SCIENCE ASSOCIATES, LLC, ET. AL,**<br><br>**DEFENDANTS.** | **Case No.: 4:26-CV-00112-MSD-LRL** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JENS DILLING'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Jens Dilling ("Dilling" or "Defendant"), by counsel, respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the First Amended Complaint ("Am. Compl.") filed by Plaintiff Dr. Cynthia E. Keppel ("Plaintiff" or "Dr. Keppel") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The First Amended Complaint was filed as of course under Fed. R. Civ. P. 15(a)(1)(B). Although the Amended Complaint adds additional factual detail and quotations, it still fails to state a cognizable claim against Dilling and should be dismissed.

The First Amended Complaint asserts two counts against Dilling individually: Count XI for aiding and abetting discrimination under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.62, and Count XII for defamation under Virginia common law. Both claims remain legally deficient. As set forth below, the defamation claim fails because the statements now quoted in the Amended Complaint are evaluative opinions and institutional commentary—not provably false assertions of fact about Dr. Keppel—and remain protected by a

qualified privilege. The DCHRA claim fails because Dr. Keppel's employment was entirely Virginia-based, and the newly alleged connections to the District of Columbia describe nothing more than ordinary corporate governance activity from SURA's headquarters. Finally, to the extent Plaintiff attempts to assert any individual-capacity claim under Title VII of the Civil Rights Act of 1964 or the Virginia Human Rights Act ("VHRA"), such claims are barred as a matter of law.

**STATEMENT OF ALLEGED FACTS[1]**

Plaintiff Dr. Keppel was employed at the Thomas Jefferson National Accelerator Facility ("Jefferson Lab" or the "Lab") in Newport News, Virginia. Am. Compl. ¶¶ 1, 3. Jefferson Lab is managed and operated by Jefferson Science Associates, LLC ("JSA"), a limited liability company formed by Southeastern Universities Research Association, Inc. ("SURA") and PAE Applied Technologies, LLC. Am. Compl. ¶¶ 22–23. Defendant Dilling was appointed Lab Director in May 2025. Am. Compl. ¶¶ 5, 38.

Plaintiff alleges that after Dilling's arrival, she was subjected to gender-based discriminatory treatment and hostile work environment. Am. Compl. ¶¶ 6, 48–70. Plaintiff further alleges that in November 2025, Dilling ordered an Operations Audit of Plaintiff's division. Am. Compl. ¶¶ 55, 68–69. Plaintiff's employment was terminated on November 21, 2025. Am. Compl. ¶¶ 7, 71.

On December 18, 2025, Dilling held a "Town Meeting" in an auditorium seating approximately 300 persons, which was simultaneously broadcast online. Am. Compl. ¶¶ 91–92. The audience included Jefferson Lab staff, external scientists, university physicists, and laboratory users. Am. Compl. ¶ 92. During the Town Meeting, Dilling made statements that included: "this

---

[1] Dilling contests the allegations in the Amended Complaint but accepts them as true only for purposes of this Motion.

year we had again unfortunately some safety related issues, and it was at a level where the board…brought in an external review and looked at what's happening with safety" and that the result "was not positive." Am. Compl. ¶ 93. With respect to the budget, Dilling stated that the laboratory "only had 23 days of reserve" when "[w]e were supposed to have 41 days," because "plans and hopes…hadn't worked out." Am. Compl. ¶ 93. The Amended Complaint alleges that Dilling made references to "line management" that Plaintiff contends were understood by every audience member to refer to Dr. Keppel. Am. Compl. ¶ 96. Plaintiff also alleges that specific safety "yellow card" warnings were referenced. Am. Compl. ¶ 205.

Plaintiff further alleges that Dilling made private statements to community leaders Shepherd, Napolitano, and Milner. Am. Compl. ¶¶ 108, 209.

With respect to the DCHRA claim, the Amended Complaint now alleges that SURA maintains its offices in the District of Columbia and describes those offices as an "administrative and governance hub." Am. Compl. ¶¶ 28–32. Plaintiff alleges that Defendant Sean Hearne's search committee convened at the DC offices, that an audit was ordered from DC, and that a Leadership Participation Agreement was executed from DC. Am. Compl. ¶¶ 28–32, 55, 199. Plaintiff alleges that Dilling aided and abetted discrimination in violation of the DCHRA. Am. Compl. ¶ 199.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept the factual allegations in the complaint as true and draw all reasonable inferences in

the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks omitted).

A motion to dismiss under Rule 12(b)(1) challenges subject matter jurisdiction. "The plaintiff bears the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When, as here, subject matter jurisdiction is challenged on the face of the complaint, the court accepts the allegations as true and determines whether the complaint is sufficient to confer jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

## ARGUMENT

### I. Count XII: Plaintiff Fails to State a Claim for Defamation.

In the First Amended Complaint, Plaintiff identifies two incidents in which Dilling allegedly made defamatory statements. With regard to the first incident, although the First Amended Complaint now provides quotations from Dilling's December 18, 2025 Town Meeting—which were absent from the original Complaint—the defamation claim remains fatally deficient. The quoted statements are evaluative opinions and institutional commentary about safety and budget metrics, not provably false statements of fact about Dr. Keppel. They do not specifically identify Dr. Keppel. They are protected by a qualified privilege. And the allegations of actual malice remain conclusory. Each deficiency independently warrants dismissal.

With regard to the second incident, Plaintiff fails to plead the exact words spoken. Instead, she offers vague allegations of private communications with Shepherd, Napolitano, and Milner.

#### A. December 18, 2025 Town Meeting

### 1. The Amended Complaint's Quoted Statements Are Evaluative Opinions, Not Provably False Facts.

Under Virginia law, a statement is actionable as defamation only if it "contains a provably false factual connotation." *Schaecher v. Bouffault*, 290 Va. 83, 101–102 (2015) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). Pure expressions of opinion—statements relative in nature that depend largely on the speaker's viewpoint—cannot support a defamation claim. *Schaecher v. Bouffault*, 290 Va. 83, 101-102 (2015). As such, courts have consistently rejected defamation claims based on opinions. *See Am. Communs. Network v. Williams*, 264 Va. 336, 340 (2002) (finding statement that employee "made two key mistakes" to be an opinion not qualifying as defamatory); *Cory v. Thompson*, No. CL22-971, 2022 Va. Cir. LEXIS 146, at *12-13 (Spotsylvania Cnty. Aug. 1, 2022) (finding statement that Plaintiff is "violent," "controlling," "threatening," and "cruel;" has a "history of spousal abuse;" and is "physically dangerous" are opinions that rest entirely on the viewpoints of the speakers).

As the Supreme Court of Virginia explained in *Schaecher*, "[t]o determine whether a statement can be reasonably understood as stating or implying actual facts, whether those statements are verifiable, and whether they are reasonably capable of defamatory meaning, we must examine them in context." 290 Va. at 93. Moreover, "innuendo may not extend beyond the meaning of the words in the statement." *Id.* at 96.

The statements now quoted in the Amended Complaint fall squarely on the opinion side of this line. Dilling's comments at the Town Meeting concerned three categories of institutional information:

- **Safety review commentary:** Dilling stated that "this year we had again unfortunately some safety related issues, and it was at a level where the board…brought in an external review and looked at what's happening with safety"

and that the result "was not positive." Am. Compl. ¶ 93. This is a description of an institutional process, the board's decision to commission a review, and a characterization of the review's outcome. The existence of a board-ordered safety review is a matter of institutional record, not a secret defamatory assertion. Characterizing the result as "not positive" is a classic evaluative assessment, not a statement susceptible to being proved true or false.

- **Budget commentary:** Dilling stated that *the laboratory* "only had 23 days of reserve" when "[w]e were supposed to have 41 days," because "plans and hopes…hadn't worked out." Am. Compl. ¶ 93. The reserve-day figures describe institutional finances—not personal conduct by Dr. Keppel. Moreover, the statement that "plans and hopes hadn't worked out" is unmistakably an expression of opinion about organizational direction, not a factual assertion about any individual.
- **References to "line management":** The term "line management" is a generic organizational term that refers to the chain of management responsible for direct operations. Am. Compl. ¶ 96. This is discussed further in Section I.B below.

None of these statements asserts a provably false fact ***about Plaintiff***. The safety review was an institutional event; the budget figures are organizational data; and the evaluative characterizations ("not positive," "hadn't worked out") are subjective assessments of institutional performance. Virginia courts have consistently held that such evaluative characterizations are protected opinion. *See Schaecher*, 290 Va. at 101–102 (holding that statements expressing evaluative judgment are not actionable); *Raytheon*, 273 Va. at 303 (examining context to distinguish fact from opinion).

For example, in *Boyer v. Smith & Nephew, Inc.*, the Virginia Court of Appeals upheld the sustaining of a demurrer based on non-actionable opinion statements regarding job performance:

> Boyer argues that the statement, "Boyer was a poor leader because he caused sales representatives to resign" was actionable because it was "a statement of cause and effect" rather than one of opinion. We disagree.
>
> Though the statement here is a two-part one, we consider it as a whole to determine whether it is one of fact or opinion. *Hyland*, 277 Va. at 47. The first part of the statement alleging Boyer was a poor leader is facially a matter of opinion, as it is "relative in nature and depend[s] largely upon the speaker's viewpoint." *Gov't Micro*, 271 Va. at 40. But the latter part reveals a factual justification for that opinion, i.e., the resignation of sales representatives. Combined, the negative character trait cited as the reason for the resignations is "a matter of opinion which is not subject to proof." *Raytheon Tech Servs. Co. v. Hyland*, 273 Va. 292, 305, 641 S.E.2d 84 (2007). As such, the statement, viewed in its entirety, presents a nonactionable, subjective view and the circuit court correctly ruled that it was not an actionable statement. And because we hold that the statement was not actionable, we need not decide whether the other elements of defamation and defamation per se were present. *See Thomas v. Commonwealth*, 303 Va. 188, 198, 901 S.E.2d 44 (2024) ("The doctrine of judicial restraint dictates that generally we decide cases 'on the best and narrowest grounds available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4, 701 S.E.2d 58 (2010))). Accordingly, the circuit court did not err in sustaining appellees' demurrer as to this statement.

No. 1634-24-3, 2025 Va. App. LEXIS 576, at *6-7 (Ct. App. Sep. 23, 2025).

The context reinforces this conclusion. The Town Meeting was an institutional forum at which the Lab Director addressed the laboratory community about organizational matters. Am. Compl. ¶¶ 91–93. A reasonable listener in this setting would understand Dilling's remarks as a director's assessment of laboratory performance—the sort of organizational commentary that managers routinely provide—not as specific factual charges against any individual.

Because the Amended Complaint's quoted statements are evaluative opinions and institutional commentary rather than provably false facts, Count XII fails to state a claim and should be dismissed.

**2. The Reference to "Line Management" Does Not Specifically Identify Dr. Keppel.**

A defamation plaintiff must demonstrate that the allegedly defamatory statement was "of and concerning" the plaintiff. *Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985). The statement must be such that "persons who knew and were acquainted with the plaintiff understood from reading the publication, whether or not the plaintiff was identified by name, that it referred to the plaintiff." *Id.* The "of and concerning" requirement is not met where the statement is made about a group and could refer to any number of persons. *See Ewell v. Boutwell*, 138 Va. 402, 409 (1924).

For example, in *Dean v. Dearing*, the Supreme Court upheld the sustaining of a Demurrer where the alleged statement was directed at a department as opposed to the plaintiff:

> Dean's pleadings contain the defamatory statements referring to Elkton "law enforcement," police department, or police force, but contain no allegations, factual or otherwise, addressing how the articles reference Dean specifically or could be understood to do so, except based on his status as a police officer. As we have just discussed, the "of and concerning" element of common law defamation cannot be satisfied as a matter of law by either the "small group theory" or allegations and evidence that readers of allegedly defamatory statements understood the statements referred to a member of the governmental group based solely on that person's membership in the identified governmental group. *Rosenblatt*, 383 U.S. 75, 82-83, 15 L. Ed. 2d 597, 86 S. Ct. 669; *New York Times*, 376 U.S. at 258, 288-89. The mere conclusory statement that the articles are "of and concerning" Dean does not satisfy the pleading requirement of alleging facts upon which relief can be granted in this case, and therefore Dean's pleading was insufficient to withstand a demurrer.

263 Va. 485, 490 (2002).

The term "line management" is a generic organizational descriptor that encompasses the chain of operational management within an organization. In a large national laboratory such as Jefferson Lab, "line management" could refer to numerous individuals at multiple levels of the organizational hierarchy—division heads, department managers, group leaders, and others with supervisory responsibility for day-to-day operations. The Amended Complaint alleges that Dilling's references to "line management" were "understood by every audience member" to refer to Dr. Keppel. Am. Compl. ¶ 96. But this conclusory allegation does not cure the fundamental problem: the statements themselves do not name, describe, or otherwise identify Dr. Keppel.

Plaintiff's subjective belief that audience members understood the reference does not satisfy the "of and concerning" requirement. The Court must examine the statement itself, not the plaintiff's interpretation of how it was received. *See Harris*, 229 Va. at 15. A reference to an organizational category that includes many individuals is not a reference to any one individual. The Amended Complaint does not allege that Dilling named Dr. Keppel, pointed to her, or otherwise singled her out during the Town Meeting. Nor does it allege facts from which the Court could reasonably infer that "line management" was a term exclusively associated with Dr. Keppel.

Because the statements are not "of and concerning" Dr. Keppel, Count XII should be dismissed on this independent ground.

### 3. The Alleged Statements Are Protected by a Qualified Privilege.

Even assuming the challenged statements could be construed as assertions of fact about Plaintiff, they were made on an occasion of qualified privilege. Under Virginia law, a qualified privilege attaches to "[c]ommunications between persons on a subject in which the persons have an interest or duty." *Cashion v. Smith*, 286 Va. 327, 338, 749 S.E.2d 526, 532 (2013) (quoting *Larimore v. Blaylock*, 259 Va. 568, 572, 528 S.E.2d 119, 121 (2000)). Employment-related

communications are a familiar application of that rule: employees and management have corresponding interests and duties in reporting, evaluating, and addressing performance and operational matters. *Larimore*, 259 Va. at 574–75, 528 S.E.2d at 122; *Jafari v. Old Dominion Transit Mgmt. Co.*, 913 F. Supp. 2d 217, 225–26 (E.D. Va. 2012).

The Town Meeting remarks fall within that privilege. Dilling spoke in his capacity as Laboratory Director about laboratory-wide safety and budget conditions—subjects directly bearing on the safe operation, financial stewardship, and scientific mission of Jefferson Lab. The alleged recipients were Lab personnel and members of the scientific-user community, including scientists, university physicists, and laboratory users who worked at, collaborated with, or used the Lab. Am. Compl. ¶¶ 91–93. Those recipients had a corresponding professional interest in information concerning safety reviews and financial conditions that could affect laboratory operations, access, planning, and research activity. The alleged statements therefore concerned matters as to which Dilling had an institutional responsibility to communicate and the recipients had a cognizable interest in receiving.

This case is unlike a publication of employment-related accusations to strangers who have no responsibility for, or stake in, the relevant subject matter. In *Larimore*, the Supreme Court of Virginia recognized that employment matters are privileged when communicated among persons with corresponding duties or interests, but emphasized that the privilege may be lost where a statement is communicated to persons who have no such duty or interest. 259 Va. at 574–75, 528 S.E.2d at 122. Likewise, *Jafari* applied the privilege to management's communication of a workplace complaint to the employee's supervisor, human-resources director, and acting manager because each recipient had a duty to monitor or manage the employee's work. 913 F. Supp. 2d at 225–26. The complaint's allegations place the Town Meeting audience within the same operative

principle: they identify an audience tied to the Lab's operations and mission, not an indiscriminate publication to the public at large.

The private communications alleged in Paragraph 108 are privileged for the same reason. The complaint alleges that Dilling spoke with leaders in the nuclear-physics community and its governing organizations concerning the management of funds at a major national research laboratory. Am. Compl. ¶ 108. As alleged, those communications concerned institutional operations within a professional field in which the identified recipients held leadership roles. That subject matter and audience support an occasion of privilege. See *Cashion*, 286 Va. at 338, 749 S.E.2d at 532; *Chalkley v. Atlantic Coast Line R.R. Co.*, 150 Va. 301, 307–09, 143 S.E. 631, 633–34 (1928) (recognizing qualified privilege where an employer communicated concerning an employee's discharge in the performance of institutional duties).

Once a qualified privilege is established, the burden shifts to the plaintiff to prove that the defendant abused the privilege through actual malice. *Larimore*, 259 Va. at 572. As demonstrated in the following section, the Amended Complaint fails to plausibly allege actual malice.

**4. Actual Malice Remains Conclusory.**

To overcome a qualified privilege under Virginia law, a plaintiff must allege and prove actual malice—i.e., that the defendant made the statement "knowing it to be false, or so recklessly as to amount to a willful disregard for its truth." *Larimore*, 259 Va. at 572. Actual malice requires specific facts showing that the defendant entertained serious doubts about the truth of the statement. *See Gazette, Inc. v. Harris*, 229 Va. at 17 (applying actual malice standard in qualified privilege context).

When plaintiffs have failed to plead sufficient facts to plausibly show malice, Virginia courts have dismissed defamation claims. *See, e.g.*, *Owen v. Liberty University*, No. 6:19-cv-

00007, slip op. at 37–39 (W.D. Va. Apr. 13, 2020) ("At bottom, Plaintiff's complaint lacks well-pleaded factual allegations which, taken as true at this stage of the case, plead malice required to displace the qualified privilege. And Plaintiff's bare, '[r]epeated assertions that a party acted with malice or with a motive of personal spite is not sufficient; rather, such conclusory language does not state a claim for malice if the facts as alleged cannot support a finding as such.' *Ortiz v. Panera Bread Co.*, No. 1:10-cv-1424, 2011 WL 3353432, at *5 (E.D. Va. Aug. 2, 2011) (internal citations omitted); *see Zarelli v. City of Norfolk*, No. 2:13-cv-447, 2014 WL 2860295, at *11 (E.D. Va. June 23, 2014) (dismissing defamation claim for failure to plead more than conclusory allegations of malice). Thus, to the extent that Dilella's comments relating to Plaintiff's equine therapy could even be considered defamatory, they are qualifiedly privileged and the defamation and defamation per se claims against Dilella under Counts XI and XV will be dismissed. *See Verrinder v. Rite Aid Corp.*, No. 3:06-cv-00024, 2006 WL 2375630, at *1 (W.D. Va. Aug. 11, 2006) (citing *Echtenkamp*, 263 F. Supp. 2d at 1062) (stating that a claim may survive a motion to dismiss if the Plaintiff makes more than conclusory allegations of malice and describes a greater pattern of animus by the defendant); *see also Nedrick*, 2020 WL 534052, at *9 (holding that claims were protected by qualified privilege and granting motion to dismiss).")

The Amended Complaint still does not plausibly allege that Dilling knew his statements were false or acted with reckless disregard for their truth. The safety review was commissioned by the board and conducted by an external reviewer (Am. Compl. ¶ 93)—Dilling was reporting its conclusions, not fabricating them. The budget reserve figures are institutional financial data that Dilling, as Lab Director, would have obtained from the Lab's finance office. The Amended Complaint does not allege that Dilling knew the safety review actually had a positive result and

deliberately mischaracterized it, or that Dilling knew the budget figures were inaccurate and stated them anyway.

The Amended Complaint does not plausibly allege facts demonstrating such abuse. Its assertion that Dilling acted with "actual malice" rests on the conclusory characterization that the audit and external-review materials contradicted his remarks. Am. Compl. ¶¶ 99–103, 206–09. But the pled Town Meeting remarks concern laboratory-wide safety issues, an external review, and reserve levels; the Amended Complaint does not identify the external review, quote its findings, or plead facts showing that it found no safety issues or that Dilling's description of its outcome was knowingly false. Nor does it identify facts establishing that the alleged reserve figures were inaccurate or that Dilling knew them to be inaccurate when he spoke.

Nor does the Amended Complaint plead nonconclusory facts demonstrating that Dilling published the statements beyond the scope of the shared interests described above. The allegation that some attendees were external scientists, university physicists, or laboratory users does not establish that they lacked a professional interest in laboratory safety and financial conditions. See *Jafari*, 913 F. Supp. 2d at 225–26. And a bare assertion of retaliatory motive or reputational injury does not itself establish common-law malice sufficient to defeat a qualified privilege. See *Echtenkamp v. Loudoun County Public Schools*, 263 F. Supp. 2d 1043, 1061–62 (E.D. Va. 2003) (conclusory assertions of malice are insufficient; allegations of a broader, factually supported retaliatory scheme may be sufficient).

Because the Amended Complaint fails to plead actual malice with the specificity required by *Iqbal*, the defamation claim cannot overcome the qualified privilege and must be dismissed.

### B. "Private Publications" to Shepherd, Napolitano, and Milner

With regard to the second incident of alleged defamation, Plaintiff offers nothing more than vague allegations that utterly lack context:

| Am. Compl. | Allegation |
|---|---|
| ¶ 108 | "Separately from the December 18, 2025, Town Meeting, and in or about the same period, Defendant Dilling made private, unequivocal statements to a number of leaders in the nuclear physics community, including its governing organizations, that Dr. Keppel had mismanaged funds in her capacity as Associate Director of Experimental Physics." |
| ¶ 209 | "The private publications to Shepherd, Napolitano, and Milner were likewise made to persons outside any employment relationship with Defendants, to whom no privilege of any kind attached." |

These allegations are characterizations of the supposed gist of a statement, not a pleading *in haec verba*. However, in Virginia, a "[g]ood pleading requires that the exact words spoken or written must be set out in the declaration in haec verba [sic]. Indeed, the pleading must go further; -- that is it must purport to give the exact words. . .. Words of equivalent or similar import are not sufficient." *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 215 (1939). Judge Giles recently affirmed that the Virginia pleading requirement for *in haec verba* for defamation claims applies in federal court. *See Chacko v. Preston*, Case No. 1:23-cv-551, 2024 U.S. Dist. LEXIS 38816, at *14 (E.D. Va. Mar. 5, 2024), *aff'd*, 2024 U.S. App. LEXIS 29228 (4th Cir. Nov. 18, 2024).

The Eastern District of Virginia has consistently adopted this standard for claims pending in federal court. *See Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 670 (E.D. Va. 2015) ("Goulmamine, in response, claims that the 'exact words' requirement is a state law requirement that is inapplicable in a federal proceeding, and that laxer federal pleading standards govern his Complaint. (Pl.'s Reply 18) (relying on *Hatfill*, 416 F. 3d at 329 ('A defamation complaint, like any other civil complaint in federal court, must provide 'a short and plain statement of the claim.'')). Goulmamine's reference to the general federal standard of pleading is defeated

by more specific federal jurisprudence on pleading insulting words and defamation under Virginia law. First, Goulmamine ignores that Thompson was a federal district court decision, deciding an insulting words claim, that required plaintiff to plead exact words. Second, courts in the Eastern District of Virginia regularly cite the pleading standards of Virginia state law when they dismiss defamation cases for failure to plead exact words. *E.g., McGuire v. IBM Corp.*, No. 1:11CV528 LMB/TCB, 2011 U.S. Dist. LEXIS 100893, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011) ('The pleading standard for a defamation claim under Virginia law 'requires that the exact words spoken or written must be set out in the declaration in haec verba''). Although McGuire and similar cases involve defamation rather than insulting words, the insulting words statute 'has been interpreted by Virginia courts to be virtually co-extensive with the common law action for defamation.' *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987) (applying constitutional imitations on defamation actions to insulting words cases); *O'Neil*, 157 F. Supp. at 651 ('an action for insulting words ... is treated precisely as an action for slander or libel, for words actionable per se, with one exception, namely, no publication is necessary'). Thompson and McGuire are persuasive authority and, relying on them, the Court concludes that insulting words claims must state the insulting language in haec verba in federal as well as state court."). This specificity permits the court to determine whether the alleged statement is capable of a defamatory meaning, is factual rather than opinion, and is otherwise actionable. *See Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134 (2003).").

Plaintiff's omission is dispositive. Without the exact words, neither Dilling nor the Court can evaluate whether Plaintiff alleges a false statement of fact instead of an opinion; whether the words have a defamatory sting; whether the claimed statement is susceptible to proof; or whether the communication was privileged.

Even though Plaintiff offers the Court nothing more than vague allegations regarding "private publications" to Shepherd, Napolitano, and Milner, the underlying characterization — i.e. that Plaintiff "mismanaged funds" — is nothing more than an opinion and suffers from the same fate as the alleged statements made during the Town Meeting. In addition, qualified privilege applies to the private statements to Shepherd, Napolitano, and Milner. Am. Compl. ¶¶ 108, 209. These individuals are community leaders with a legitimate interest in the operations of a major employer and research institution in their community. Communications to them about leadership matters at the Lab are squarely within the qualified privilege. *See Cashion*, 286 Va. at 338. The Amended Complaint likewise fails to allege any facts supporting a finding of actual malice. There is no allegation that Dilling made known false statements to these individuals or that he acted with reckless disregard for the truth. The conclusory assertion that Dilling acted with malice is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Count XII should be dismissed.

## II. Count XI: The DCHRA Does Not Reach Plaintiff's Virginia-Based Employment, And the Aiding-and-Abetting Claim Against Dilling Is Derivative.

Count XI alleges that Dilling aided and abetted discrimination against Dr. Keppel in violation of the DCHRA. Am. Compl. ¶ 199. The DCHRA prohibits an employer from discriminating "in employment" against individuals "in the District of Columbia." D.C. Code § 2-1402.11(a). The aiding-and-abetting provision, D.C. Code § 2-1402.62, is derivative of the primary violation and requires that the underlying discrimination fall within the DCHRA's jurisdictional reach.

The Amended Complaint attempts to bolster the DC connection by alleging that SURA maintains offices in the District of Columbia and characterizing those offices as the "administrative

and governance hub" of the organization. Am. Compl. ¶¶ 28–32. Plaintiff further alleges that Hearne's search committee activities occurred at the DC offices, that the operations audit was ordered from DC, and that a Leadership Participation Agreement was executed from DC. Am. Compl. ¶¶ 28–32, 55, 199.

These new allegations do not cure the jurisdictional deficiency. The critical question under the DCHRA is where the *employment relationship* is situated—not where a parent entity's corporate officers perform their governance functions. *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284–85 (D.D.C. 2012) (holding that the DCHRA did not apply where the plaintiff worked outside DC, even though the defendant's headquarters were in DC). The DCHRA's protections run to employees working within the District; they do not create jurisdiction over employment actions merely because a corporate parent's officers sit in DC offices.

The undisputed facts demonstrate that Dr. Keppel's employment was entirely Virginia-based:

- Dr. Keppel worked at Jefferson Lab in Newport News, Virginia. Am. Compl. ¶¶ 1, 3.
- Dr. Keppel was supervised at the Jefferson Lab facility in Virginia.
- Dr. Keppel's employment was terminated at the Virginia facility. Am. Compl. ¶¶ 7, 71.
- Jefferson Lab is located in Newport News, Virginia, and all of the alleged discriminatory conduct occurred at that Virginia facility. Am. Compl. ¶¶ 48–70.

The new allegations about SURA's DC offices describe normal corporate governance activity from a headquarters location. Every multi-site organization has a headquarters from which governance functions are performed. The fact that a parent entity's board members or officers met

in DC, ordered an audit from DC, or executed administrative agreements from DC does not transform a Virginia employee's Virginia employment into employment "in the District of Columbia" within the meaning of the DCHRA. To hold otherwise would extend the DCHRA to every employee of any organization whose headquarters happen to be located in DC, which is plainly not what the statute contemplates. *See Cole*, 845 F. Supp. 2d at 284–85.

Moreover, the aiding-and-abetting claim against Dilling under D.C. Code § 2-1402.62 is necessarily derivative of the underlying discrimination claim. If the DCHRA does not reach Dr. Keppel's Virginia-based employment—and it does not—then there is no underlying DCHRA violation that Dilling could have aided and abetted. The aiding-and-abetting claim fails as a matter of law.

Count XI should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) or, alternatively, for failure to state a claim under Rule 12(b)(6).

**III. Counts XI & XII: The Court Should Decline Supplemental Jurisdiction.**

If the Court were to find that Counts XI and XII state cognizable claims, which they do not, alternatively, the Court should decline to exercise supplemental jurisdiction over them. Under 28 U.S.C. § 1367(c), a court may decline supplemental jurisdiction where the state and local law claims "substantially predominate" over the federal claims, where the claims raise "novel or complex issue[s] of State law," or where there are other "compelling reasons" for declining jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Here, the claims against Dilling individually—Virginia common law defamation and an aiding-and-abetting claim under the DCHRA—are entirely distinct from the federal Title VII claims asserted against the entity defendants. The defamation claim arises under Virginia common law and concerns statements made after Plaintiff's termination; it has no connection to the federal

employment discrimination claims. The DCHRA claim is a District of Columbia statutory claim that raises distinct jurisdictional questions about the extraterritorial reach of DC law.

The balance of interests favors declining supplemental jurisdiction. The two claims against Dilling individually raise questions of Virginia common law and DC statutory law that are better resolved by the courts of those respective jurisdictions. Exercising supplemental jurisdiction over these claims would inject state and local law issues into a federal employment discrimination case, complicating the proceedings without any corresponding benefit. *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.").

The Court should exercise its discretion under § 1367(c) to decline supplemental jurisdiction over Counts XI and XII as to Defendant Dilling.

## IV. To the Extent Plaintiff Asserts Any Title VII or VHRA Claim Against Dilling Individually, It Fails as a Matter of Law.

Although the First Amended Complaint does not clearly assert a Title VII or VHRA claim against Dilling individually, to the extent any such claim is intended, it is barred as a matter of law. Individual supervisors are not subject to personal liability under Title VII. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998) ("We join the consensus among the courts of appeals in holding that Title VII does not provide a remedy against individual defendants who do not qualify as 'employers' under the statutory definition."). The Fourth Circuit has repeatedly and unambiguously held that "supervisors are not liable in their individual capacities for Title VII violations." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).

Similarly, the VHRA does not provide for individual liability. The VHRA defines "employer" as a "person employing between five and 14 persons" and authorizes claims against the employer entity, not against individual supervisors. Va. Code § 2.2-3901; *see also Conner v.*

*Nat'l Pest Control Ass'n*, 257 Va. 286, 290 (1999). Dilling, as an individual supervisor, is not an "employer" under either Title VII or the VHRA and cannot be held individually liable under those statutes.

To the extent the Amended Complaint can be read to assert any Title VII or VHRA claim against Dilling in his individual capacity, such claim should be dismissed with prejudice.

**CONCLUSION**

For all the foregoing reasons, Defendant Jens Dilling ("Dilling") respectfully requests that this Court enter an Order:

1. Dismissing all claims against Dilling with prejudice;
2. Awarding Dilling his attorney's fees and costs incurred in defending this action; and
3. Granting such other and further relief as the Court deems just and proper.

Date: September 8, 2026

**JENS DILLING**

/s/ Kristina H. Vaquera
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com

Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jens Dilling*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including

Deborah Y. Collins
Brittany C. Robbins
Yeng Collins Law, PLLC
440 Monticello Avenue, Suite 1875
Norfolk, VA 23510
deb@yengcollinslaw.com
brittany@yengcollinslaw.com

Ronald J. Kim
Solomon Law Firm, PLLC
1025 Connecticut Avenue, NW, Suite 1000,
Washington, DC 20036
rkim@fedemploylaw.com

*Counsel for Plaintiff*

/s/ Kristina H. Vaquera
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com

Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jens Dilling*