**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| DR. CYNTHIA E. KEPPEL,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON SCIENCE ASSOCIATES, LLC, SOUTHEASTERN UNIVERSITIES RESEARCH ASSOCIATION, INC., JENS DILLING, and SEAN HEARNE,<br><br>Defendants. | Civil Action No. 4:26-cv-00112-MSD-LRL<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT JENS DILLING'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Dr. Cynthia Keppel ("Plaintiff") asks this Court to deny Defendant Jens Dilling's ("Dilling") motion to dismiss the First Amended Complaint ("FAC") because his District of Columbia Human Rights Act ("DCHRA") argument rests on one case, *Cole v. Boeing Co.*, and his assertion of an incorrect holding in that case. Moreover, he supports that argument with a list of "undisputed facts," at least one of which is not alleged in the FAC, and none of which addresses where the challenged decisions were made. Finally, he asks the Court to award him attorney's fees without identifying any statute, rule, or contract that would permit it.

## II. STATEMENT OF FACTS

The following facts are drawn from the FAC (Dkt. 29) and are accepted as true at this stage.

**A. Dr. Keppel, Dilling, and the Removal**

Dr. Keppel joined the Thomas Jefferson National Accelerator Facility in approximately 1995, led Experimental Hall A from 2012, and in 2021 became Associate Director for the entire Experimental Physics Division, one of nine members of the Directors' Council and one of three women on it. FAC ¶¶ 41-43, 47. In thirty years JSA and SURA never informed her of any performance problem with her leadership, productivity, or management. FAC ¶ 44. Her most recent formal appraisal, signed in March 2025, rated her overall performance "Exceeds Most" and rated her Scientific/Technical Performance—the most heavily weighted category—"Exemplary," and the Department of Energy awarded the laboratory its only two A-level ratings for work performed largely by her division. FAC ¶¶ 46, 67.

Dilling became Laboratory Director in May 2025. FAC ¶ 55. The FAC alleges that from the outset he bypassed Dr. Keppel to deal directly with her male direct reports, interrupted and dismissed her at Directors' Council meetings, and did none of those things to the men on the Council. FAC ¶¶ 57-59. On November 4, 2025, Sean Hearne ordered, and Dilling implemented, an Operations Audit of Dr. Keppel's division alone—the first targeted review of its kind and one never imposed on a male-led division. FAC ¶¶ 28(a), 64, 66-69. The audit found that the division met all performance expectations and all applicable safety standards, and its written report was delivered to SURA and to Hearne. FAC ¶¶ 28(b), 46, 68, 99-101.

On November 21, 2025, JSA handed Dr. Keppel a notice stating that her employment was "terminated effective immediately" because Dilling had "determined that your ability to lead the division is not aligned with the direction of the organization." FAC ¶¶ 71-72. Dilling had never discussed her leadership with her or counseled her on any deficiency. FAC ¶ 74. She was escorted

out, her badge was disabled, and she was replaced by a less-qualified man while her female deputy of ten years was passed over. FAC ¶¶ 76-77, 82, 84.

**B. The December 18, 2025 Town Meeting**

Dr. Keppel retained counsel on November 25, 2025; counsel notified JSA's General Counsel of the representation on November 26 and wrote on December 3 that the termination "was based on illegal discrimination in violation of Title VII." FAC ¶¶ 88-90.

Fifteen days after that letter, Dilling convened a Town Meeting. It was called at the request of the scientific user community, which "sought an explanation of the abrupt leadership changes." FAC ¶ 91. It was held in the laboratory's 300-seat auditorium, which approximately three hundred people attended, and was broadcast to pre-approved online attendees; a significant portion of the audience was not JSA or SURA employees at all, but university physicists, laboratory users, and leaders of the nuclear physics community. FAC ¶¶ 91-92. Dilling opened by identifying the Experimental Physics Division as a focus of his remarks—Dr. Keppel's division. FAC ¶ 93. He then stated that "this year we had again unfortunately some safety related issues, and it was at a level where the board . . . brought in an external review," whose result "was not positive," and that as to "responsibility and management of the budget" the laboratory "only had 23 days of reserve" when "[w]e were supposed to have 41 days" because "plans and hopes . . . hadn't worked out." FAC ¶ 93. The FAC alleges that Dilling attributed those safety and budget failures to "line management," and that every member of the audience understood that term to refer to Dr. Keppel. FAC ¶¶ 95-96.

The FAC alleges that each of those statements was false: the division operated above ninety percent efficiency in every measured area; the external review found that the division reviewed well and characterized the safety matters as relatively minor; the SURA-ordered audit had

confirmed weeks earlier that the division met all performance and safety standards; the division never exceeded its budget; and the laboratory's reserve level and overhead rate were set by the Laboratory Director and by JSA and SURA, entirely outside Dr. Keppel's control. FAC ¶¶ 99-100. Both reports were in Defendants' possession before Dilling spoke. FAC ¶¶ 101, 103, 206. In the same period, at the direction of Hearne and SURA, Dilling sought out leaders of the nuclear physics community and its governing organizations and told them privately that Dr. Keppel had mismanaged funds. FAC ¶¶ 108-109, 209.

## III. LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion if it contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Intent, knowledge, and other conditions of mind "may be alleged generally." Fed. R. Civ. P. 9(b). A court may not consider matters outside the pleadings without converting the motion under Rule 12(d). *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015).

## VI. ARGUMENT

Two counts of the First Amended Complaint are directed at Defendant Jens Dilling: Count XI, which alleges that he aided and abetted discrimination in violation of the District of Columbia Human Rights Act, and Count XII, which alleges defamation under Virginia law. His motion asks the Court to resolve against Dr. Keppel, on the pleadings, three questions that cannot be resolved that way: whether the statements, read in the context in which they were made, are reasonably capable of a defamatory factual meaning; whether the audience understood them to refer to her;

and whether a qualified privilege was abused. The first is a threshold question for the Court that the FAC's allegations answer in her favor; the second and third are questions that Virginia law commits to the factfinder.

The premise of Dilling's motion is that on December 18, 2025 he offered a laboratory audience nothing more than "institutional commentary" about safety and money. Mem. in Supp. of Def. Dilling's Mot. to Dismiss (Dkt. 37) ("Dilling Mem.") 4; *see also id.* at 5-7. That is not what the First Amended Complaint alleges. It alleges that the meeting was convened at the request of the scientific user community to explain the abrupt leadership changes at the laboratory, including Dr. Keppel's removal; that Dilling opened by identifying Dr. Keppel's division as a subject of his remarks; that he then told roughly three hundred laboratory staff, users, and leaders of her field that an external safety review had come back "not positive" and that the laboratory had only 23 days of budget reserve against a required 41, failures he attributed to "line management"; and that every person in the room understood "line management" to mean Dr. Keppel. FAC ¶¶ 91-96. It further alleges that Dilling had in hand, before he spoke, both the external review and the SURA-ordered Operations Audit, and that both documents said the opposite of what he told the room. FAC ¶¶ 99-101, 103, 206.

Whether those statements are provably false assertions of fact about Dr. Keppel, whether they were "of and concerning" her, and whether Dilling published them with knowledge of their falsity to an audience of hundreds of outsiders who had no interest in why one employee was removed, are questions for discovery and trial. They are not questions that can be answered against Dr. Keppel on a Rule 12(b)(6) motion. Dilling's DCHRA argument fails for the reasons given in Part II, and Dilling's remaining arguments—that this Court lacks subject-matter jurisdiction, that it should decline supplemental jurisdiction, and that individual liability does not lie under statutes

the FAC does not invoke against him—are answered in Parts II.A, III, and IV. The motion should be denied.

**A. The Defamation Count States a Claim Against Dilling (Count XII).**

**1. The Town Meeting Statements Are Provably False Assertions of Fact, Not Opinion.**

Under Virginia law a statement is actionable if it contains a "provably false factual connotation." *Schaecher v. Bouffault*, 290 Va. 83, 98, 772 S.E.2d 589, 597 (2015). The line is not between statements that sound factual and statements that sound evaluative; it is between statements that can be proved true or false and those that cannot, and a statement cast as an opinion may still be actionable where it implies an assertion of objective fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20 (1990). Whether a statement is reasonably capable of defamatory meaning is a threshold question of law for the court. *Schaecher*, 290 Va. at 94, 772 S.E.2d at 595. Where it is, the matter is presented to the finder of fact and cannot be resolved against the plaintiff on the pleadings. *Id.*

Measured against that standard, Dilling's statements are not opinions. That an "external review" of the division was commissioned and that its result "was not positive" is an assertion about what a particular document says. It can be proved true or false by producing the document—which, the FAC alleges, Dilling had. FAC ¶¶ 101, 103, 206. That the laboratory "only had 23 days of reserve" when it was "supposed to have 41" is an assertion of two specific numbers and, in the context of a meeting called to explain Dr. Keppel's removal, an assertion that her management produced the shortfall. The FAC alleges that her division never exceeded its budget and that the reserve level and overhead rate were set by the Laboratory Director and by JSA and SURA. FAC ¶ 100(d)-(f). Statements of that kind are precisely what *Fuste* held actionable: the assertions

there—that physicians had "abandoned" their patients and that there were "concerns about their competence"—contained "a provably false factual connotation" and were "capable of being proven true or false," notwithstanding their evaluative flavor. *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132-33, 575 S.E.2d 858, 861-62 (2003).

Dilling's authorities do not displace *Fuste* or its application to the FAC. *Boyer v. Smith & Nephew, Inc.*, No. 1634-24-3 (Va. Ct. App. Sept. 23, 2025) (unpublished), held that calling a manager "a poor leader because he caused sales representatives to resign" was a subjective characterization; the underlying fact, that representatives resigned, was undisputed. That is not what the FAC alleges; here the underlying facts are the disputed part: what the review found, and what the reserve figures had to do with Dr. Keppel. *American Communications Network v. Williams*, 264 Va. 336, 341-42, 568 S.E.2d 683, 686-87 (2002), is also inapposite. There, on appeal from a jury verdict, the court held that a private placement memorandum's statements that prior management had failed to establish "effective operations" and had "made two key mistakes" were either opinion or true, because the plaintiff had admitted the underlying facts at trial, including that substantial customers were never billed. *Id.* The court also recognized that "in a proper case, factual statements that support an opinion can form the basis of an action for defamation." *Id.* at 342, 568 S.E.2d at 687. This is such a case: Dr. Keppel admits nothing, and the FAC alleges that the facts underlying Dilling's statements are false. FAC ¶¶ 99-100. Neither case involved what the FAC alleges: Dilling telling a roomful of the plaintiff's professional peers what an external report said while holding a report that said the opposite.

Context confirms this point rather than defeating it. Dilling asks the Court to treat the Town Meeting as an ordinary institutional briefing at which a director "routinely provide[s]" organizational commentary. Dilling Mem. 7. The FAC alleges something narrower and more

pointed: a meeting convened at the community's request to explain the abrupt leadership changes at the laboratory, opened by Dilling's identification of Dr. Keppel's division, in which the safety and budget statements were offered as the reasons for the change. FAC ¶¶ 84, 91, 93. A statement of the reasons for removing someone is a statement about that person. At a minimum, the words are reasonably capable of that meaning in that setting, and whether the audience took them that way is a question for the jury, not one to be disposed of at the pleading stage.

**2. The Statements Are "Of and Concerning" Dr. Keppel.**

Virginia does not require that a defamatory statement name the plaintiff. It is enough that persons who knew her understood the statement to refer to her, and that understanding may be established by extrinsic facts pleaded by way of inducement and colloquium. *Gazette, Inc. v. Harris*, 229 Va. 1, 37, 325 S.E.2d 713, 738 (1985); *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7-8, 82 S.E.2d 588, 591-92 (1954).

The FAC pleads those extrinsic facts and does not rest, as Dilling contends, on Dr. Keppel's "subjective belief." Dilling Mem. 9. It alleges that the meeting was called by the scientific community to explain the abrupt leadership changes; that Dilling opened by identifying her division as a focus of his remarks; that Defendants publicly claimed that budget stewardship drove the leadership change and asserted safety- and budget-based justifications for her removal; and that "[e]very member of the audience understood" the "line management" he blamed to be Dr. Keppel. FAC ¶¶ 84, 91, 93, 95-96. Those are allegations of fact, and on a motion to dismiss they are taken as true.

*Dean v. Dearing*, 263 Va. 485, 490, 561 S.E.2d 686, 689 (2002), on which Dilling principally relies, is a group-libel case. The statements there, made by Elkton's mayor and published in local newspapers, attacked the Elkton police department generally, and the plaintiff's

only connection to them was his membership in that department. Dr. Keppel's FAC alleges specific statements about her by Dilling. *Ewell v. Boutwell*, 138 Va. 402, 121 S.E. 912 (1924), cuts the other way. As *Dean* itself explains, *Ewell* recognized that where defamatory language is directed toward "a comparatively small group of persons . . . and is so framed as to make defamatory imputations against all members of the small or restricted group, any member thereof may sue." *Dean*, 263 Va. at 488, 561 S.E.2d at 688 (quoting *Ewell*, 138 Va. at 411, 121 S.E. at 914). And a publication that does not name the plaintiff is actionable where "the allegations and supporting contemporaneous facts connect the libelous words to the plaintiff." *Gazette*, 229 Va. at 37, 325 S.E.2d at 738 (citing *Ewell*, 138 Va. at 413, 121 S.E. at 915). The "line management" of a single division whose head had just been removed is not a large class, and the FAC pleads the contemporaneous facts that connect Dilling's words to Dr. Keppel. FAC ¶¶ 91, 93, 96. At a minimum, the size and identity of the group is a question of fact. *General Products Co. v. Meredith Corp.*, 526 F. Supp. 546, 550 (E.D. Va. 1981). *Dean* does not address a statement made at a meeting convened to explain abrupt leadership changes that included the plaintiff's removal, opened by the speaker's identification of her division. The rule Dilling draws from *Dean*—that a generic organizational term can never refer to an individual—would immunize any speaker who takes care to use a job description instead of a name.

**3. Qualified Privilege Is an Affirmative Defense That Cannot Be Resolved on the Pleadings, and the FAC Pleads Its Abuse.**

Qualified privilege is an affirmative defense, and it is lost where the plaintiff shows common-law malice, which includes, among other things, that the statement was made with knowledge of its falsity or with reckless disregard for the truth, that it was communicated to persons having no corresponding interest in the subject, or that it was motivated by personal spite or ill will or not made in good faith. *Cashion v. Smith*, 286 Va. 327, 338-39, 749 S.E.2d 526, 532-

33 (2013). Whether a defendant has lost or abused the privilege is a question of fact for the jury. *Cashion*, 749 S.E.2d at 533 (citing *Fuste*, 265 Va. at 135, 575 S.E.2d at 863). A Rule 12(b)(6) dismissal on an affirmative defense is appropriate only where the defense appears on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).

The FAC pleads abuse on each ground. First, knowledge of falsity: it alleges that the Operations Audit report and the external review were in Defendants' possession, and had been delivered to SURA and Hearne, before Dilling spoke, and that both contradicted what he told the room. FAC ¶¶ 28(b), 99-101, 103, 206. Dilling's answer is that he was "reporting" the review's conclusions rather than "fabricating them," Dilling Mem. 12—which is a factual assertion about his own state of mind, offered without record support, on a motion that requires the opposite inference. His further complaint that the FAC does not "quote" the external review's findings, Dilling Mem. 13, asks Dr. Keppel to plead the contents of a document that Defendants have and she does not. Rule 9(b) permits knowledge to be alleged generally for exactly this reason.

Second, excessive publication: the FAC alleges that a significant portion of the three-hundred-person audience were not employees of JSA or SURA but outside university physicists, laboratory users, and leaders of the nuclear physics community, and that Dilling separately sought out the leaders of that community's governing organizations to repeat the accusation privately. FAC ¶¶ 91-92, 108-109, 209. Dilling responds only that the FAC "does not establish that [the outside attendees] lacked a professional interest in laboratory safety and financial conditions." Dilling Mem. 13. That is an argument about the absence of a negative, and it inverts the burden: qualified privilege is Dilling's affirmative defense to establish. It also does not answer the point, because the privilege protects a communication to persons with a corresponding duty or interest in *the specific subject of the statement*, *Cashion*, 286 Va. at 337, 749 S.E.2d at 532, and the subject

here was why a particular employee had been removed. Whether several hundred outside scientists shared a duty or interest in that subject is a factual question about the interests of several hundred people.

Third, improper purpose: the FAC alleges that the statements were made fifteen days after Dr. Keppel's counsel asserted her Title VII claims and "for the specific purpose of punishing Dr. Keppel for retaining counsel" and destroying her standing in her field. FAC ¶¶ 90-91, 102, 208.

Dilling's malice cases confirm rather than undercut the point. *Echtenkamp v. Loudoun County Public Schools*, 263 F. Supp. 2d 1043, 1062-63 (E.D. Va. 2003), distinguishes conclusory assertions of malice from allegations of a "broader, factually supported retaliatory scheme," and the FAC pleads the latter. The FAC does not plead malice by label; it pleads two documents, in Defendants' hands, that say the opposite of what Dilling said.

**4. The Private Statements to Shepherd, Napolitano, and Milner.**

Dilling separately argues that the private statements to the three named community leaders must be dismissed because the FAC does not set out his exact words, and argues in the alternative that the accusation is opinion and in any event privileged. Dilling Mem. 14-16. Three points answer the exact-words argument; the alternative grounds are addressed at the end of this section.

First, the sufficiency of a defamation complaint in federal court is governed by Rule 8. *Hatfill v. New York Times Co.*, 416 F.3d 320, 329-30 (4th Cir. 2005), is a decision of the Fourth Circuit holding that a defamation complaint, "like any other civil complaint in federal court," need only provide a short and plain statement of the claim, and it has not been overruled. Pleading requirements are procedural, and a federal court applies the Federal Rules to them even when the underlying claim arises under state law. *Hanna v. Plumer*, 380 U.S. 460, 471-74 (1965). The district court decisions Dilling cites, *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652,

670 (E.D. Va. 2015), and *Chacko v. Preston*, No. 1:23-cv-551, 2024 U.S. Dist. LEXIS 38816 (E.D. Va. Mar. 5, 2024), cannot displace *Hatfill*. *Goulmamine* did consider and reject the *Hatfill* argument, but the passage Dilling reproduces concludes only that "insulting words claims must state the insulting language *in haec verba* in federal as well as state court." Dilling Mem. 15 (quoting *Goulmamine*, 138 F. Supp. 3d at 670). That is a district court's reading of Virginia practice, and it cannot supersede a published Fourth Circuit holding on what Rule 8 requires of a federal complaint. Neither decision reaches this pleading in any event. *Chacko* dismissed a *pro se* complaint that identified no allegedly defamatory statement at all—the plaintiff recited only questions put to him after the statements were made—and it applied the Virginia rule without mentioning *Hatfill* or addressing whether a state pleading requirement governs in federal court.

Second, even on Dilling's own view of the pleading standard, the FAC identifies the operative accusation—that Dr. Keppel "had mismanaged funds in her capacity as Associate Director of Experimental Physics," FAC ¶ 108—along with the speaker, the period, the three named recipients, FAC ¶ 209, and the allegation that Dilling sought them out at Hearne's and SURA's direction. That is enough to permit Dilling to answer and to allow the Court to assess whether the accusation is capable of a defamatory meaning. It plainly is: an accusation that a scientist mismanaged federal research funds is defamatory per se. The exact words are in the recipients' and Dilling's possession and are the proper subject of discovery.

Third, and in any event, this argument cannot dispose of Count XII. The Town Meeting statements are quoted in the FAC. A pleading defect as to one publication within a count does not warrant dismissal of the count. If the Court concludes that the private publications must be pleaded word for word, Plaintiff requests leave to amend to plead them once the words are obtained, and any dismissal as to those publications should be without prejudice.

Dilling's alternative grounds fare no better. He argues that the accusation that Dr. Keppel "mismanaged funds" is "nothing more than an opinion," and that the three recipients are "community leaders with a legitimate interest in the operations of a major employer and research institution in their community" to whom the privilege attaches. Dilling Mem. 16. Neither can be resolved on the pleadings. An accusation that a division director mismanaged federal research funds is an assertion about the handling of identifiable money, provable true or false against the Operations Audit and the laboratory's financial records, and *Fuste* forecloses treating such a charge as opinion merely because it carries an evaluative flavor. 265 Va. at 132-33, 575 S.E.2d at 861-62. And whether three leaders of a national scientific community—none employed by JSA or SURA, and none alleged to have any role in Dr. Keppel's employment, FAC ¶ 209—shared a duty or interest in the reasons for her removal is the same factual question addressed in Part I.C, on which Dilling bears the burden. *Cashion*, 286 Va. at 337, 749 S.E.2d at 532.

**B. The DCHRA Count States a Claim Against Dilling (Count XI).**

**1. Rule 12(b)(1) Is the Wrong Vehicle.**

Dilling moves in part under Rule 12(b)(1), treating the DCHRA's territorial reach as a matter of this Court's subject-matter jurisdiction. Dilling Mem. 18. Plaintiff acknowledges that *Cole* and other decisions of the District Court for the District of Columbia have used jurisdictional language in this setting. The Supreme Court has since instructed that a statutory limitation on a claim's coverage is treated as an element of the claim rather than a jurisdictional bar unless the legislature has clearly ranked it as jurisdictional. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006). Nothing in the DCHRA does so, and the D.C. Council could not in any event define the subject-matter jurisdiction of a federal court; jurisdiction over Count XI rests on 28 U.S.C. § 1367(a). That a claim may fail on the merits does not deprive a court of jurisdiction to decide it.

*Bell v. Hood*, 327 U.S. 678, 682 (1946). In practical terms the label changes nothing here: Dilling's challenge is a facial one, and on a facial challenge the Court accepts the pleading's allegations as true and asks only whether they suffice. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (cited at Dilling Mem. 4). Under either rule, the allegations of the First Amended Complaint control.

**2. The FAC Satisfies the Rule *Cole* and *Monteilh* Actually State.**

Dilling's DCHRA argument rests on a single case, *Cole v. Boeing Co.*, 845 F. Supp. 2d 277 (D.D.C. 2012), described as "holding that the DCHRA did not apply where the plaintiff worked outside DC, even though the defendant's headquarters were in DC." Dilling Mem. 17. That describes *Cole*'s result, not its rule. *Cole* holds that where an employee is not employed in the District, "[e]ither the [adverse employment] decision must be made, or its effects must be felt, or both must have occurred, in the District of Columbia" for the statute to apply. *Id.* at 284 (quoting *Monteilh v. AFSCME*, 982 A.2d 301, 305 (D.C. 2009)). The same page states that "the most important factor . . . is not whether the plaintiff was actually employed in the District of Columbia, but whether the alleged discriminatory acts occurred in the District." *Id.* (quoting *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 104 (D.D.C. 2009)). *Cole* dismissed the Virginia claims there because "neither the decision to act, nor the effects of the acts were felt in the District of Columbia." *Id.* at 285. Dilling does not cite *Monteilh*, the decision of the District's highest court from which the rule comes, and his motion and memorandum of law erroneously report a situs-of-employment test that *Cole* did not apply.

The DCHRA reaches a plaintiff working outside the District where the challenged decision was made in the District or its effects were felt there. *Cole*, 845 F. Supp. 2d at 284; *Monteilh*, 982 A.2d at 305. The FAC pleads that rule. It alleges that SURA is headquartered in the District and that its Washington office is the administrative and governance hub for the management of

Jefferson Lab; that Hearne performs his duties from that office; that from it he interviewed and appointed Dr. Keppel, executed the agreement governing her retention, chaired the committee that selected the Laboratory Director who removed her, ordered the audit that preceded her removal, and received its written report; that Hearne and SURA directed and approved the termination and directed Dilling's private statements to leaders of the field; and that "[t]he adverse employment decisions at issue were, in substantial part, made in the District of Columbia." FAC ¶¶ 19, 27-32, 43, 71, 109, 199. Whether the decision was "made" in the District within the meaning of *Monteilh* and *Cole* is a fact question that discovery into Hearne's and Dilling's communications will answer.

**3. Dilling's "Undisputed Facts" Come From Outside the Pleadings.**

Dilling supports his argument with a bulleted list of "undisputed facts," Dilling Mem. 17, one of which—that "Dr. Keppel was supervised at the Jefferson Lab facility in Virginia"—carries no citation at all, because the FAC does not make that allegation in those terms. More fundamentally, where Dr. Keppel was supervised is not the test that Cole and Monteilh apply. A Rule 12(b)(6) movant may not supply the facts he wishes the pleading contained. *Zak*, 780 F.3d at 606-07.

What the pleading alleges is that Hearne, from Washington, appointed Dr. Keppel, ordered the audit of her division, and participated in her removal, and that SURA retained authority over senior personnel decisions at the laboratory. FAC ¶¶ 28-32, 43, 71, 199.

**4. The Aiding-and-Abetting Allegations Against Dilling Are Sufficient.**

The DCHRA makes it unlawful "for any person to aid, abet, invite, compel, or coerce" a violation. D.C. Code § 2-1402.62. Dilling's only argument directed at his own conduct is that the aiding-and-abetting claim is "derivative," so that it falls if the DCHRA does not reach the employment. Dilling Mem. 18. Because the DCHRA does reach conduct directed from the District,

the derivative argument fails with its premise. Dilling does not otherwise contend that the FAC fails to allege his personal participation, and it plainly does: he implemented the audit of Dr. Keppel's division alone, FAC ¶¶ 64, 66-69; he bypassed, interrupted, and dismissed her while treating the men on the Council differently, FAC ¶¶ 57-59; he made the determination on which the removal rested, FAC ¶¶ 71-72; and he published the statements that followed it, FAC ¶¶ 93, 108-109.

**C. The Court Should Retain Supplemental Jurisdiction.**

Dilling asks the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c). Dilling Mem. 18-19. The predicate for that request—the dismissal of the federal claims—is absent, and the two grounds he identifies do not apply.

His contention that the claims against him are "entirely distinct from the federal Title VII claims," Dilling Mem. 18, does not survive a reading of the FAC. The defamation claim arises from Dilling's public explanation of the very termination that is the subject of the Title VII claims, delivered by the Laboratory Director who carried it out, fifteen days after counsel asserted those claims, and it is pleaded both as defamation and as a retaliatory act under Counts V, VI, IX, and X. The same removal, the same audit, the same actors, and the same December 18 meeting are common to both. That is a single case or controversy. 28 U.S.C. § 1367(a).

Nor is the DCHRA question "novel." *Monteilh* is a decision of the District's highest court on the precise question, and *Cole* has applied it in federal court. Judicial economy, convenience, and fairness all favor one proceeding. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). *Shanaghan* and *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988), both address the court's discretion once the federal claims have been extinguished; neither supports carving out one defendant while the federal claims proceed against the others. Because Count XI is pleaded against

all four Defendants, declining jurisdiction as to Dilling alone would splinter a single claim across two forums.

**D. The Individual-Liability Argument Addresses Claims the First Amended Complaint Does Not Assert.**

Dilling devotes a section of his brief to the rule that individuals are not liable under Title VII or the VHRA. Dilling Mem. 19-20 (citing *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177 (4th Cir. 1998), and *Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999)). The FAC asserts no Title VII or VHRA claim against Dilling. The only counts against him are Count XI and Count XII. The argument requires no response, and the Court need not reach it.

**E. The Request for Attorney's Fees Should Be Denied.**

As noted at the outset, Dilling asks the Court to award him his attorney's fees, Dilling Mem. 20, without identifying any statute, rule, or contract that would authorize such an award. Under the American Rule, each party bears its own fees absent express authority. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). To the extent the request is understood as one under Title VII, a prevailing defendant may recover fees only on a finding that the action was frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). No such finding could be made here, and a motion to dismiss is not a vehicle for a fee award in any event.

**F. Any Dismissal Should Be Without Prejudice and With Leave to Amend.**

If the Court concludes that any part of Count XI or Count XII is deficient, Plaintiff requests leave to amend under Rule 15(a)(2). Leave is to be "freely give[n] when justice so requires," and denial is appropriate only for futility, bad faith, or prejudice. *Foman v. Davis*, 371 U.S. 178, 182

(1962); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). This case is at its inception: the Rule 26(f) conference was held on September 10, 2026, the Rule 16(b) conference has not yet occurred, initial disclosures are not yet due, and no discovery has been taken. Nor would amendment be futile: among other things, Plaintiff can allege that her counsel's December 12, 2025 letter asserting sex discrimination was sent directly to Hearne and Dilling, six days before the Town Meeting. Dilling's request that the claims be dismissed "with prejudice" is unsupported.

**V. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Jens Dilling's motion to dismiss the First Amended Complaint (Dkt. 36) in its entirety, deny his request for attorney's fees, and, in the alternative, grant Plaintiff leave to amend.

Dated: September 22, 2026

Respectfully submitted,

DR. CYNTHIA E. KEPPEL
By Counsel

/s/ Dawn C. Stewart
Dawn C. Stewart, Esq. (VSB No. 27717)
SOLOMON LAW FIRM, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, D.C. 20036
Tel: (202) 963-2116
Fax: (202) 688-1896
dstewart@fedemploylaw.com

/s/ Ronald J. Kim
Ronald J. Kim, Esq. (admitted *pro hac vice*)
SOLOMON LAW FIRM, PLLC
300 Great Oaks Blvd, Suite 312
Albany, NY 12203
Tel: (646) 475-3118
Fax: (202) 688-1896
rkim@fedemploylaw.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including Kristina H. Vaquera, Esq., Milena Radovic, Esq., and N. Winston West, IV, Esq., Jackson Lewis P.C., 701 E. Byrd Street, 17th Floor, Richmond, Virginia 23219, counsel for Defendants.

/s/ Dawn C. Stewart
Dawn C. Stewart, Esq.
SOLOMON LAW FIRM, PLLC