IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| **DR. CYNTHIA E. KEPPEL,**<br><br>PLAINTIFF,<br>v.<br><br>**JEFFERSON SCIENCE ASSOCIATES, LLC, ET. AL,**<br><br>DEFENDANTS. | **Case No.: 4:26-CV-00112-MSD-LRL** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JEFFERSON SCIENCE ASSOCIATES, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Jefferson Science Associates, LLC ("JSA") respectfully submits this Reply Memorandum in further support of its Motion to Dismiss the First Amended Complaint ("FAC").

## ARGUMENT

### I. Count I Should Be Dismissed Because Plaintiff Fails to Plead a Plausible Title VII Gender-Discrimination Claim.

#### A. Plaintiff Fails to Plead Satisfactory Job Performance as Assessed by the Relevant Decisionmaker.

The Opposition ("Opp.") contends that JSA "concedes that a plaintiff need not plead a prima facie case, JSA Mem. 2, and then demands one anyway." ECF No. 50 at p. 8. This characterization is incorrect. JSA's Memorandum stated:

> In the Fourth Circuit, it is well established that while a plaintiff alleging employment discrimination need not plead a prima facie case to survive a motion to dismiss, the complaint must contain sufficient factual allegations from which the court can reasonably infer that the plaintiff was meeting the employer's legitimate job expectations at the time of the alleged adverse employment actions.

ECF No. 43 at p. 8. JSA expressly acknowledged — in so many words — that no prima facie case is required at the pleading stage. JSA articulated the correct *Iqbal*/*Twombly* plausibility standard: a plaintiff must plead factual content allowing the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. JSA requires factual allegations — not conclusions — from which the Court can reasonably infer that Plaintiff was meeting JSA's legitimate expectations at the time of the adverse action. That is not a novel position; it is the governing standard after *Iqbal* and *Twombly*. Plaintiff cannot defeat JSA's motion by attacking an argument JSA did not make.

Although the JSA and SURA Oppositions challenge the applicability of *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274 (4th Cir. 2000), and *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510 (4th Cir. 2006), Plaintiff takes a different approach in the JSA Opp. than in the SURA Opp. *Compare* ECF No. 50 at p. 8, *with* ECF No. 48 at p. 8. In the SURA Opp., Plaintiff argues that "[n]either *Hawkins* . . . nor *Warch* . . . holds that a plaintiff must plead the decisionmaker's subjective state of mind, and neither holds that an employer's own contemporaneous evaluations are irrelevant." ECF No. 48 at p. 8. By contrast, the JSA Opp. argues that JSA "insist[s] that the FAC must plead facts showing satisfactory performance 'as assessed by the relevant decisionmaker.' Neither *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274 (4th Cir. 2000), nor *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510 (4th Cir. 2006), supports that pleading rule." ECF No. 50 at p. 8. However, neither argument accurately reflects the positions taken by JSA and SURA in their respective memoranda. Critically, JSA cited to *Hawkins* for the *well-established* Fourth Circuit principle that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff," *Hawkins*, 203 F.3d at 280, and *Warch*, 435 F.3d at 514–15, for the separate proposition that the court should not second-guess an employer's business judgment. *See* ECF No. 43 at p. 4-5. JSA's stated pleading standard was that the FAC must contain "sufficient factual allegations from which the court can reasonably infer that the plaintiff was meeting the employer's legitimate job expectations at the time of the alleged adverse employment actions" —

a factual-sufficiency requirement, not a demand to plead Dilling's subjective mental state. ECF No. 43 at p. 4.

JSA never stated that the employer's own evaluations were categorically irrelevant; rather, it argued that evaluations from prior supervisors assessing different criteria at different times did not establish that the relevant decisionmaker — Dilling — perceived Plaintiff's performance as satisfactory. The JSA Opp. further claimed that "JSA's brief asks the Court to accept as established the very fact in dispute: that Dilling's stated reason was his real one." ECF No. 50 at p. 8. But JSA's memorandum did not ask the Court to accept Dilling's reason as genuine on faith; it argued that the FAC's own allegations — including that Dilling concluded Plaintiff's leadership was "not aligned with the direction of the organization" — demonstrated a negative assessment from the relevant decisionmaker, and that performance evidence from different evaluators could not substitute for that assessment. ECF No. 43 at p. 6. By inflating JSA's factual-sufficiency argument into a demand to plead Dilling's subjective mental state, the JSA Opp. constructed a straw man and then attacked it as "an impossible burden." ECF No. 50 at p. 7. This rhetorical maneuver allowed the JSA Opp. to avoid engaging with the actual standard JSA invoked: that favorable evaluations from a predecessor supervisor and objective metrics do not, without more, override the relevant decisionmaker's contemporaneous assessment at the time of the adverse action. In sum, the JSA Opp. goes beyond merely challenging the applicability of *Hawkins* and *Warch* — it affirmatively mischaracterizes what JSA argued those cases stand for, constructs a broader target than what JSA actually presented, and uses that inflated target as a springboard for its pretext argument.

Plaintiff's reliance on *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 224–25 (4th Cir. 2019), fares no better — and, in fact, undercuts her position. In *Haynes*, the evidence that supported

an inference of satisfactory performance was specific, contemporaneous, and attributable to the relevant decisionmaker: the plaintiff's supervisor told him *mere weeks* before his termination that "everything looks good" and there was "nothing to worry about" regarding his upcoming performance review, and the plaintiff received bonuses for the period in question. *Id.* at 224–25. The Fourth Circuit held that this evidence raised a reasonable inference that the employee was performing satisfactorily — not because any favorable evaluation at any point in time would suffice, but because the employer's *own* supervisor gave the plaintiff an affirmative assessment *immediately before* the adverse action. *Id.* That is the opposite of what the FAC alleges here. Plaintiff does not point to an assessment by the decisionmaker who terminated her, weeks before the termination, confirming satisfactory performance. She points to a prior evaluation by a different supervisor at an earlier time — precisely the gap in timing and identity that distinguishes *Haynes* from this case.

The JSA Opp.'s mischaracterizations do not end there. Plaintiff also contends that JSA's Memorandum in Support offers "shifting explanations" for her termination. ECF No. 50 at pp. 7-8. While Plaintiff is correct that the argument does not derive from Paragraphs 55 through 57 of the FAC, she conveniently ignores her own allegations. Paragraph 8 of the FAC states that "JSA/SURA's stated justification" was that her "ability to lead the division is not aligned with the direction of the organization." Paragraph 72 repeats the same language verbatim: "the Lab Director (Dilling) determined that your ability to lead the division is not aligned with the direction of the organization." Those are Plaintiff's own words, quoting the termination notice. The Memorandum in Support's reference to "restructuring" describes precisely the same concept — a determination that the incumbent's leadership was not aligned with the organization's direction is, by definition,

a restructuring of the leadership of the division.[1]

### B. Plaintiff Fails to Plead Circumstances Giving Rise to an Inference of Gender Discrimination.

The JSA Opp. attempts to recharacterize JSA's argument by asserting that JSA read the FAC as resting "entirely" on comparators. *See* ECF No. 50 at p. 11 Rather, JSA argued that the FAC's comparator allegations are conclusory — and they are. That is exactly the deficiency the FAC presents. With the exception of naming David Dean and identifying his job title, the FAC does not specifically identify individuals whom Plaintiff claims are appropriate comparators, does not state how such individuals were similar, does not describe anything regarding such individuals' conduct, and does not explain how Defendants treated those individuals differently. Absent such allegations, the Complaint's assertions of discrimination are mere speculation. *See Wei Jiang v. Duke Univ.*, No. 1:22CV101, 2023 U.S. Dist. LEXIS 28914, at *8, *10 (M.D.N.C. Feb. 22, 2023).

The JSA Opp.'s strategy is to survive dismissal through listing numerous allegations across four categories and hoping their cumulative weight substitutes for the plausibility each individually lacks. *See* ECF No. 50 at pp. 8–18. But *Iqbal* requires examination of each allegation, stripping away conclusions and labels to determine whether the remaining factual content plausibly supports an inference of discrimination. Each category falls short. First, the JSA Opp. points to Plaintiff's replacement by a male who was allegedly the "least budget-experienced available candidate," while a female deputy was passed over. FAC ¶¶ 82, 84. Glaringly, budget experience is only one

---

[1] There is no shift - there is simply a synonym. Plaintiff's "shifting explanations" theory depends on treating two words for the same thing as evidence of inconsistency — a rhetorical maneuver, not a legal argument. The wordplay is transparent: Plaintiff carefully avoids quoting the termination notice and the brief side by side, because doing so would reveal that the two say the same thing in slightly different language. That is not a legal argument; it is an advocacy technique designed to manufacture a contradiction where none exists. If the termination notice says the plaintiff's leadership is "not aligned with the direction of the organization," and the brief describes that decision as a "restructuring," the only reasonable reading is that both refer to the same personnel decision. Plaintiff does not identify any substantive inconsistency between the two because there is none.

facet of whether a candidate is qualified. It fails to take into account any other experience required for the job. In addition, the FAC's specific budget-experience comparison is between the male successor and the female deputy, not between the successor and Dr. Keppel. It does not identify who selected the successor or explain how budget experience bears on the termination notice's stated assessment that Keppel's ability to lead was not aligned with the organization's direction. FAC ¶¶ 71–72. The replacement's budget experience is therefore irrelevant to the stated basis for the employment decision. The FAC does not allege that budget management was the qualification at issue or that the replacement lacked the leadership-alignment qualities the termination notice identified. As for *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, Plaintiff tries to distinguish it by claiming her allegations are more specific, but *McCleary-Evans*'s core holding — that conclusory allegations about a replacement's qualifications do not state a plausible claim — applies with full force here. 780 F.3d 582 (4th Cir. 2015). The FAC alleges a single conclusory label ("least budget-experienced") without pleading the basis for the comparison or connecting budget experience to the termination decision. A claim cannot proceed by substituting the conclusion of discriminatory intent for facts from which that intent may reasonably be inferred.

Second, the JSA Opp. points to a pattern of conduct, alleging that Dilling bypassed, interrupted, and dismissed Plaintiff at Council meetings and did not do the same to men. *See* ECF No. 50 at pp. 13–14. The JSA Opp. does not explain how Dilling's alleged interpersonal behavior at Council meetings establishes that JSA discriminated against Plaintiff on the basis of sex. Once again, Plaintiff fails to identify male comparators who allegedly received more favorable treatment. The FAC's allegations about Dilling's treatment of another female manager, FAC ¶¶ 61–62, suffer the same defect — they describe alleged individual interpersonal slights, not

institutional conduct attributable to SURA. The post-removal count of three women among approximately thirty senior supervisors provides context but, without a meaningful baseline or allegations about the decisions producing that composition, adds limited support to that connection. The statistic that "three women" remained among "roughly thirty senior supervisors," FAC ¶ 82(d), is a raw number without context — it does not allege what the gender composition was before, what the expected composition should be, or that the ratio resulted from discriminatory decisions by JSA. Without such factual detail, the allegation amounts to the kind of conclusory comparator assertion that fails under *Iqbal*/*Twombly*.

Third, the JSA Opp. cites the non-compete and outside-work restriction, alleging that Hearne invoked an expired non-compete against Plaintiff in 2023 that was never invoked against a man. *See* ECF No. 50 at pp. 14–15. The weakness of this argument is the absence of facts showing a man sought to participate in a competing bid for the laboratory-management contract, had an equivalent agreement, and received different treatment. The FAC simply does not allege who the male comparators are, what their outside-work activities were, whether they had non-compete agreements, or whether their circumstances were comparable to Plaintiff's. The allegation that no similarly situated male leader was treated comparably "is conclusory and lacks factual detail concerning the proposed comparators or their circumstances." That is precisely the kind of conclusory comparator assertion that fails under *Iqbal*.

Fourth, the JSA Opp. lists several alleged procedural departures under the heading of irregular process: an audit of Plaintiff's division alone, no corrective action, no completed 2025 appraisal, a one-business-day ultimatum, and the exclusion of female board members from the termination decision. But the policy alleged here says corrective action normally precedes dismissal for a performance deficiency; the FAC does not identify a mandatory corrective-action

or trustee-consultation procedure applicable to the stated leadership-alignment decision.

The JSA Opp.'s reliance on *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977), does not resolve this pleading issue. ECF No. 50 at pp. 11–12. *Arlington Heights* recognizes that a departure from the *normal procedural sequence* may be evidence of improper purpose; it does not make every unusual personnel decision evidence of sex discrimination. 429 U.S. at 267. The FAC alleges that corrective action *normally* precedes dismissal for a performance deficiency, but it does not identify a mandatory corrective-action or appraisal procedure governing the leadership-alignment decision stated in Keppel's termination notice. Nor does it allege that JSA ordinarily consulted the two trustees identified in the JSA Opp. before comparable personnel decisions. Although the FAC alleges that no male-led division received a comparable audit, it supplies little about the circumstances of other divisions against which to assess why this audit was ordered. FAC ¶¶ 46, 64–69, 74–83. It does not allege facts showing that any male Associate Director's division was comparable, whether that division was subject to the same audit criteria, or otherwise link the decision to audit the Physics Division to sex.

The JSA Opp. also points to severance disparity, alleging that a male Deputy Director received severance, approximately eighty employees separated in a reduction in force received severance, and Plaintiff did not. *See* ECF No. 50 at pp. 12–13. But these comparators are not similarly situated — and the JSA Opp. does not argue otherwise. A departure, which implies voluntary separation, by the Deputy Director, a reduction in force involving eighty employees, and a termination for leadership misalignment are three materially different employment events. Different separation circumstances routinely produce different severance outcomes for legitimate, nondiscriminatory reasons. The FAC does not allege facts showing the comparators' circumstances were materially similar or that any decision was made because of Plaintiff's sex. A

claim cannot proceed by substituting the conclusion of discriminatory intent for facts from which that intent may reasonably be inferred. The FAC does not allege that any male employee terminated for the same stated reason — leadership misalignment — received severance, and that is the relevant comparison. *See* FAC ¶¶ 85–86.

Examined individually, each of the JSA Opp.'s four categories rely on conclusory comparator assertions without establishing that the proposed comparators were similarly situated, conflates correlation with causation, or asks the Court to draw speculative inferences that *Iqbal* does not permit. Volume is not a substitute for plausibility. The Court should evaluate the FAC's factual content — not its labels or its length — and dismiss the sex discrimination claims against JSA.

**II. Count III Should Be Dismissed Because Plaintiff Fails to Plead a Plausible Hostile-Work-Environment Claim.**

JSA does not dispute that *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993), instructs courts to evaluate hostile-work-environment claims under a totality-of-the-circumstances analysis. But the JSA Opp. fundamentally mischaracterizes the argument from the Memorandum in Support of the Motion to Dismiss. A totality-of-the-circumstances inquiry does not disregard the obligation under *Iqbal* to strip away legal conclusions, labels, and formulaic recitations of the elements before assessing whether the remaining factual content states a plausible claim. The JSA Opp.'s real complaint is not that JSA improperly "parsed" the allegations — it is that JSA examined each allegation as *Iqbal* requires and demonstrated that, individually and collectively, the FAC's allegations do not plausibly establish conduct that occurred "because of sex." *See* ECF No. 50 at pp. 14–15. Stacking conclusory allegations does not create severity or pervasiveness that the individual allegations lack. A court considering the totality of the circumstances must still consider all the circumstances, and conclusory characterizations dressed up as factual allegations do not

become factual simply because they are numerous.

The fatal deficiency in the FAC's hostile-environment theory is the "because of sex" element. The FAC alleges that Dilling interrupted Plaintiff in meetings, bypassed her authority, and dismissed her contributions — and that he did not do the same to men. But those are conclusions, not facts. The FAC does not describe what was said in any particular meeting, what the context of any alleged interruption was, what the male comparators said or did differently, or why the alleged differential treatment was attributable to Plaintiff's sex rather than to management style, personality conflicts, or legitimate supervisory disagreements. *See* FAC ¶¶ 57–62. The JSA Opp. concedes that no gendered epithets were used. *See* ECF No. 50 at p. 15.

The sex-based character of the alleged conduct is asserted by label — "because of sex" — not by factual content. The Opp. invokes *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), for the proposition that discriminatory motive can be inferred from disparate treatment without gendered language. The Opposition's reliance on *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–81 (1998), is a significant overextrapolation of that decision. *Oncale* held that Title VII's prohibition on discrimination "because of sex" extends to conduct even where the plaintiff and the alleged harasser are of the same sex. *See Oncale*, 523 U.S. at 80-81. The FAC's allegation that men were treated differently is itself the conclusion — and the FAC must plead facts making that conclusion plausible, which it does not.

Plaintiff's attempts to distinguish the cases cited in JSA's Memorandum in Support fail on their own terms. JSA cited *Buchhagen* for the proposition that allegations of yelling, unfair scrutiny, and snide comments are "largely conclusory" when they lack factual content connecting the conduct to a protected characteristic — and that is exactly what the FAC alleges here. The JSA Opp. responds that the *Buchhagen* court reversed dismissal of separate discrimination and

retaliation claims. *See* ECF No. 50 at pp. 15–16. Again, true and irrelevant. The hostile-environment theory was the claim the court found deficient — which is why JSA cited it and proves JSA's point: the hostile-environment theory was the claim the court found deficient, and the claims that survived rested on different allegations entirely. JSA cited *DeCoster* for the holding that allegations centered on a difficult supervisory relationship and criticisms the plaintiff believed were unfair, supported only by a conclusory allegation of discriminatory motive, do not state a hostile-environment claim. The JSA Opp.'s attempted distinction — that Plaintiff received a favorable appraisal and was actually terminated — does not address the proposition for which the case was cited. *See* ECF No. 50 at p. 16. JSA did not cite *DeCoster* for anything related to appraisals or terminations. JSA cited it for the principle that workplace friction, absent non-conclusory allegations of discriminatory motive, is not actionable harassment. A favorable appraisal and subsequent termination may be relevant to a disparate-treatment theory, but they do not transform conclusory allegations of workplace friction into a plausible hostile-environment claim. Plaintiff's pattern is consistent across all three cases: she identifies a factual distinction that has nothing to do with the legal principle JSA invoked, declares the case "distinguishable," and moves on — without ever confronting the rule that applies. Plaintiff's "distinctions" do not engage with the propositions for which these cases were cited; they engage with propositions JSA never advanced.

## III. Count V Should Be Dismissed Because Plaintiff Fails to Plead a Plausible Title VII Retaliation Claim.

### A. Adverse Employment Action

Plaintiff clarifies that her Amended Complaint seeks to establish post-termination adverse actions. *See* ECF No. 50 at pp. 16–18. However, the JSA Opp. does not overcome an inconvenient truth; Plaintiff did not suffer a post-termination material adverse action. *See Dean v. Philadelphia*

*Gas Works,* No. 19-4266 (E.D. Pa. June 28, 2021); *Herman v. Port of Astoria,* No. 3:15-cv-276 (D. Or. Nov. 28, 2015) (allegedly speaking negatively about an employee, without more, is not an adverse action).

Plaintiff attempts to recharacterize the FAC's allegations as those describing demotion. ECF No. 50 at 17. However, Plaintiff's allegations both in her Amended Complaint and EEOC Charge state that she was terminated on November 21, 2025. FAC ¶¶ 7, 71. It is illogical for Plaintiff to both be terminated and demoted. The post termination employment role was merely an offer and was not a potential recission of the termination decision. FAC ¶ 80 (letter with termination decision was only an offer). For the Town Hall, FAC alleges reputational displeasure and generalized professional harm, not a materially adverse action. FAC ¶ 172. Moreover, Plaintiff offers nothing more than a conclusory allegations. A former employer's alleged criticism, even if unwelcome or allegedly false does not become actionable retaliation merely because it was made to persons within the plaintiff's professional field. The alleged COBRA violation does not plausibly establish Title VII retaliation. The governing notice deadlines arose from the November 21 termination, not from plaintiff's later protected activity. The Amended Complaint pleads no facts showing that any responsible plan official knew of the December 3 letter or acted because of it. Temporal sequence alone cannot transform an alleged benefits-administration failure into retaliatory conduct.

**B. Causal Connection**

The JSA Opp. fails to address that the FAC does not allege facts demonstrating that any decision maker was aware of her protected activity at the time of the adverse action. *See* ECF No. 50 at pp. 17–18. Without knowledge of protected activity, there can be no retaliatory motive. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). The

FAC's conclusory assertion that the adverse action was retaliatory is precisely the type of "naked assertion" that *Iqbal* and *Twombly* prohibit.

**IV. Counts VII and IX Should Be Dismissed Because the VHRA Claims Are Precluded.**

Plaintiff does not identify a basis for preserving the VHRA claims. *See* ECF No. 50 at pp. 19–20. Those claims rely on the same alleged employer relationship, the same alleged discrimination and hostile environment, and the same alleged retaliation. They should be dismissed for the reasons stated above.

**V. Count XI Should Be Dismissed Because the DCHRA Does Not Apply Extraterritorially.**

The DCHRA is not an extraterritorial employment statute. [2] *See Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284–85 (D.D.C. 2012). The FAC alleges a Virginia employment relationship with Virginia-based effects: Plaintiff worked at Jefferson Lab in Newport News, Virginia; Dilling terminated her there; she was escorted from the Virginia facility; and the consequences of the termination were experienced in Virginia. FAC ¶¶ 71–77, 82. The FAC does not plausibly allege that any employment consequence was felt in the District. SURA's D.C. headquarters and its corporate-governance activities do not convert a Virginia employment decision into a District-based act. Under *Cole v. Boeing Co.*, 845 F. Supp. 2d 277 (D.D.C. 2012), and *Monteilh v. AFSCME*, 982 A.2d 301 (D.C. 2009), where an employee does not work in the District, the DCHRA applies only if the adverse employment decision was made in, or its effects were felt in, the District. Neither prong is satisfied here: the termination decision was communicated and implemented in Virginia, and all effects alleged in the FAC were experienced there. The FAC's

---

[2] In the Memorandum in Support, undersigned Counsel inadvertently cited *Nat'l R.R.Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) for a proposition each discrete discriminatory act is independently actionable in the jurisdiction where it occurs). Undersigned Counsel has filed a Notice of Correction addressing the *Morgan* citation. *See* ECF No. 55.

conclusory allegation that the challenged decisions were made "in substantial part" in the District is unsupported by factual content identifying what specific discriminatory decision was made there, when it was made, or who made it. Because neither the decision nor its effects occurred in the District, the DCHRA does not reach the Virginia employment actions alleged in the FAC. Count XI should be dismissed with prejudice as to JSA.

## VI. Count XII Should Be Dismissed Because Plaintiff Fails to Plead a Plausible Defamation Per Se Claim.

The Town Meeting statements are not pleaded as actionable defamation. To state a Virginia defamation claim, a plaintiff must allege publication of a false and defamatory statement concerning her, and the Court decides as a threshold legal matter whether the words are reasonably capable of the alleged defamatory meaning. *See Schaecher v. Bouffault*, 290 Va. 83, 91–92, 94 (2015). The FAC does not reproduce what Dilling actually said; it splices together fragments—a phrase about "safety related issues," a result that "was not positive," reserve figures, and "plans and hopes"—separated by ellipses that conceal the connective tissue of the speech. FAC ¶ 93. The term "line management," on which the entire "of and concerning" theory depends, does not appear within the quoted fragments but surfaces three paragraphs later as the FAC's characterization. FAC ¶¶ 95–96. Read in their ordinary sense, these are institutional statements by a Lab Director about institutional conditions: Dilling did not name Dr. Keppel, did not say she mismanaged a budget, and did not say she was responsible for any safety issue. Unlike the direct, specific accusations against named physicians in *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132–33 (2003), nothing Dilling said constitutes a provably false accusation of personal misconduct. Under *Schaecher*, the statements lack the defamatory "sting" needed to "render one odious, infamous, or ridiculous"—they are hedged, evaluative characterizations of complex institutional conditions no different from the "not totally truthful" statement *Schaecher* held non-actionable. 290 Va. at 101–

02. Plaintiff's attempt to distinguish *Dean v. Dearing*, 263 Va. 485, 489–90 (2002), likewise fails: "line management" at a national laboratory is at least as broad a group as a municipal police department, and the FAC pleads neither the small-group size nor the framing required by *Ewell v. Boutwell*, 138 Va. 402 (1924). The conclusory allegation that "every member of the audience understood" the reference to mean Dr. Keppel (FAC ¶ 96) is precisely the kind of unwarranted inference the Court need not accept. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

The FAC also fails to plead facts overcoming the qualified privilege apparent from its own allegations. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc), permits resolution on the pleadings where the complaint's own allegations establish the defense—and here they do, describing a Lab Director addressing the laboratory community about institutional conditions at a meeting that community itself requested. *See* FAC ¶ 91. On knowledge of falsity, the JSA Opp. (ECF No. 50 at pp. 22–23) theorizes that the Operations Audit and external review "said the opposite" of what Dilling told the room, but the FAC does not quote either document, describe their findings with specificity, or allege what either actually said; possession of a document is not knowledge of its contents, much less knowledge that one's evaluative characterization of a different document is "false." *See Schaecher*, 290 Va. at 101–02; *Iqbal*, 556 U.S. at 678 (2009). On excessive publication, every scientist who uses a DOE national laboratory has a professional interest in its safety and budget conditions, and the FAC's own allegations confirm the meeting was "convened at the request of the scientific user community" (FAC ¶ 91)—extending the privilege to responsive communications on subjects bearing on that audience's professional work is the ordinary operation of the privilege. *See Cashion v. Smith*, 286 Va. 327, 337 (2013). On improper purpose, the allegation that statements were made "for the specific

purpose of punishing Dr. Keppel for retaining counsel" (FAC ¶ 102) is a legal conclusion, not a factual allegation, and bare assertions of malice are insufficient to overcome a qualified privilege. *See Echtenkamp v. Loudoun County Public Schools*, 263 F. Supp. 2d 1043, 1061–63 (E.D. Va. 2003). *Cashion* requires "personal spite or ill will" or a "purpose other than the one the privilege protects," 286 Va. at 338–39, and the FAC does not allege that Dilling harbored personal animus or that the Town Meeting served any purpose other than the one the user community requested.

Finally, the purported private statements to Shepherd, Napolitano, and Milner are not pleaded with sufficient specificity. The FAC identifies these individuals by last name only, without titles, institutional affiliations, or any description of when, where, or in what context each communication occurred. FAC ¶¶ 108, 209. Plaintiff relies on *Hatfill v. New York Times Co.*, 416 F.3d 320, 329–30 (4th Cir. 2005), but *Hatfill* predates *Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 556 U.S. 662 (2009), and whatever inferences it permitted under the now-abrogated *Conley v. Gibson* standard must today satisfy *Iqbal*'s plausibility threshold—a standard the JSA Opp. (ECF No. 50 at pp. 23–24) makes no effort to reconcile with the case on which it relies. Even under Rule 8, the FAC fails to provide the minimum factual content needed for the Court to evaluate any element of the defamation claim as to these three individuals: without knowing who they are, the Court cannot assess whether the statements were "of and concerning" Dr. Keppel; without any context, it cannot evaluate privilege; without knowing what was actually said, it cannot determine whether the statement was a provably false assertion of fact or an evaluative opinion; and without any factual basis for the assertion that "no privilege of any kind attached" (FAC ¶ 209), the Court cannot accept that legal conclusion as anything more than what *Iqbal* warns against—a label dressed up as an allegation.

Because the FAC does not plead a provably false statement about Plaintiff, does not satisfy

the "of and concerning" requirement, and does not plead facts overcoming qualified privilege, Count XII should be dismissed with prejudice.

## VII. Count XIII Should Be Dismissed Because JSA Is Not the Proper Defendant for the COBRA Beneficiary-Notice Obligation.

Plaintiff's JSA Opp. asks the Court to read Count XIII as stating a viable claim against "one or both" Defendants because the notice-related communications are exclusively within Defendants' control. *See* ECF No. 50 at pp. 24–25. That argument does not survive the text of the statute. Count XIII seeks a statutory penalty under 29 U.S.C. § 1132(c)(1) for an alleged failure to provide timely COBRA continuation-coverage notice under 29 U.S.C. § 1166. FAC ¶¶ 118–127. Section 1132(c)(1), however, does not create the undifferentiated penalty claim against JSA that Plaintiff describes.

COBRA's notice framework imposes two separate obligations on two separate entities. Under 29 U.S.C. § 1166(a)(2), the *employer* must notify the *plan administrator* of a qualifying event. The *plan administrator* must then notify the *qualified beneficiary* of her right to elect continuation coverage under § 1166(a)(4). The § 1132(c)(1) penalty, in turn, applies only to an "administrator" that fails to satisfy § 1166(1) or (4), that is, the beneficiary-notice obligation, not to an employer's separate notice duty to the administrator under § 1166(a)(2). *See Underwood v. Fluor Daniel, Inc.*, 1997 U.S. App. LEXIS 1410, at *10, *14-*15 (4th Cir. Jan. 28, 1997) (unpublished). The FAC's own allegations confirm which entity Congress made subject to that penalty. The FAC identifies SURA, not JSA, as the plan administrator, as reflected in Form 5500 filings, and expressly seeks § 1132(c)(1) penalties from "SURA, as plan administrator." FAC ¶¶ 24–26, 118, 125. JSA's alleged failure to timely notify SURA may implicate § 1166(a)(2), but it is not the administrator's § 1166(a)(4) beneficiary-notice failure for which § 1132(c)(1) authorizes a participant penalty. The JSA Opp. elides that statutory distinction when it argues that Count XIII

states a penalty claim against "one or both" Defendants; the penalty provision does not name JSA as a potential obligor at all.

Nor does Rule 8(d) rescue Count XIII. The JSA Opp. responds that internal communications between JSA and SURA concerning the notice are exclusively within Defendants' control, and that alternative pleading is therefore appropriate. *See* ECF No. 50 at pp. 24–25 . Whatever the state of Defendants' internal communications, that discovery-related concern does not alter the statutory allocation Plaintiff herself pleaded: JSA is alleged to be the employer, and SURA is alleged to be the named administrator. An undifferentiated penalty claim against a party outside § 1132(c)(1)'s specified class is not a permissible "alternative theory"; it is a claim the statute does not authorize.

The JSA Opp. also overstates the consequences of the alleged notice failure. *See* ECF No. 50 at pp. 24–25. The FAC alleges that Plaintiff was "forced to obtain health insurance on her own" and suffered "exposure to uninsured medical expenses," but it does not identify an actual uncovered medical expense, a lost election right caused by JSA, or any fact tying a specific monetary loss to JSA's alleged § 1166(a)(2) failure. Plaintiff's assertion that her rights "remained unresolved" is not a substitute for pleading causation or actual damages.

For these reasons, Count XIII should be dismissed as to JSA. The FAC and Plaintiff's own JSA Opp. confirm that Plaintiff has directed a plan administrator's statutory obligation, and the corresponding § 1132(c)(1) penalty, at the wrong Defendant.

## VIII. The JSA Opp. Confirms—Rather Than Cures—the Pleading Defects in Count XIV's ERISA § 510 Claim Against JSA.

Count XIV alleges that JSA violated ERISA § 510 by engaging in "affirmative, repeated, post-termination interference" with Plaintiff's retirement benefits, undertaken with "specific intent." FAC ¶¶ 130–140. First, § 510 requires a plausible factual basis for specific intent to

interfere with ERISA rights; an alleged adverse benefit result alone is insufficient. *See Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 238–39 (4th Cir. 1991); 29 U.S.C. § 1140.[3] The FAC labels the alleged employment-status representation "affirmative," "repeated," and undertaken with "specific intent," but it alleges no nonconclusory facts identifying who at JSA made the representation, when it was made, what was communicated, or how JSA controlled TIAA's processing of Plaintiff's benefit requests. Allegations that TIAA "purportedly" relied on what "JSA/SURA" maintained do not plausibly attribute the allegedly unlawful action, or the required intent, to JSA specifically. Reciting the elements of specific intent is not the same as pleading facts that support it.

Second, the JSA Opp. improperly conflates opposition to employment discrimination with the exercise of an ERISA-protected right. Section 510 protects a participant who exercises rights "under the plan" or under ERISA and separately prohibits conduct designed to interfere with plan rights. 29 U.S.C. § 1140; *see Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482–86 (4th Cir. 1996). Count XIV says the challenged conduct followed Plaintiff's "protected activities and [her] challenge[] [to] her unlawful termination," defining "protected rights" to include opposition to discrimination. FAC ¶¶ 130–140. Opposing discrimination may support a Title VII retaliation theory, but it is not an ERISA-plan right, and the JSA Opp. does not identify any ERISA right Plaintiff exercised before the challenged conduct. Absent that showing, the "exercise of rights" clause of § 510 cannot carry Count XIV.

Third, the JSA Opp. is correct, as a legal proposition, that § 510 is not limited to pre-vesting discharge decisions and that a participant may assert § 510 rights even where the benefit at issue

[3] In the Memorandum in Support, undersigned Counsel cited *Dooley v. Liberty Mutual Insurance Co.*, 307 F. Supp. 2d 234, 241 (D. Mass. 2004). Undersigned Counsel has filed a Notice of Correction addressing the *Dooley* citation. *See* ECF No. 55.

is an already-vested, existing right. *See Conkwright*, 933 F.2d at 236–39; *Stiltner*, 74 F.3d at 1481–86. JSA does not dispute that premise. But conceding the premise does not answer the Amended Complaint's failure to plead facts linking any JSA decisionmaker to TIAA's handling of Plaintiff's benefit requests, or facts plausibly showing that interference with plan rights, rather than an alleged administrative status dispute, was a motivating purpose. Recasting the benefit as "existing" rather than prospective does not supply the actor-specific intent that § 510 still requires.

Finally, even if Count XIV survived dismissal, the monetary recovery Plaintiff seeks must be confined to the relief ERISA permits. Count XIV invokes 29 U.S.C. § 1132(a)(3), which authorizes equitable relief; it does not authorize free-standing legal damages under that subsection. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 255–58 (1993). Count XIV nonetheless seeks "financial loss and other damages" while invoking only § 1132(a)(3). Any surviving version of Count XIV should be dismissed to the extent it seeks compensatory damages, and limited to the equitable relief § 1132(a)(3) authorizes, relief that is, in any event, distinct from Count XV's separate § 1132(a)(1)(B) theory against SURA, which is not at issue on this Motion.

For these reasons, Count XIV should be dismissed as to JSA. At a minimum, the demand for compensatory "financial loss and other damages" under § 1132(a)(3) should be dismissed or narrowed to the equitable relief that subsection permits.

## CONCLUSION

For these reasons and as set forth in more detail in the Memorandum in Support of the Motion to Dismiss, the Court should grant JSA's motion and dismiss all claims asserted against it. Furthermore, the Court should deny Plaintiff's request to file a second amended complaint. For the reasons set forth above, any attempts to cure would be futile. In addition, Plaintiff has already had an opportunity to correct the above-deficiencies from her initial Complaint and failed to do

so.

Date: September 28, 2026

**JEFFERSON SCIENCE ASSOCIATES, LLC**

Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jefferson Science Associates, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including

Ronald J. Kim, Esq.
SOLOMON LAW FIRM, PLLC
300 Great Oaks Blvd, Suite 312
Albany, NY 12203
rkim@fedemploylaw.com

Dawn C. Stewart, Esq
SOLOMON LAW FIRM, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, D.C. 20036
dstewart@fedemploylaw.com

*Counsel for Plaintiff*

**JEFFERSON SCIENCE ASSOCIATES, LLC**

By: ______________/s/________________

Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com

Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jefferson Science Associates, LLC*