**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **DR. CYNTHIA E. KEPPEL,**<br><br>**PLAINTIFF,**<br><br>**V.**<br><br>**JEFFERSON SCIENCE ASSOCIATES, LLC, ET AL.,**<br><br>**DEFENDANTS.** | **Case No.: 4:26-CV-00112** |

**DEFENDANT SOUTHEASTERN UNIVERSITIES RESEARCH ASSOCIATION, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant Southeastern Universities Research Association, Inc. ("SURA"), respectfully submits this Reply Memorandum in further support of its Motion to Dismiss the First Amended Complaint ("FAC"):

## INTRODUCTION

The Opposition ("Opp.") replaces SURA's actual arguments from its Memorandum in Support with mischaracterizations of SURA's positions. The Opp. asks the Court to disregard gaps in her pleadings and accept conclusory allegations instead of facts. Unequivocally, a complaint cannot survive by repeating conclusions and aggregating deficient allegations. For these reasons, and for the reasons set forth in the opening Memorandum in Support, SURA's motion should be granted and all claims asserted against SURA dismissed.

## ARGUMENT

### I. The FAC does not plausibly allege that SURA was Plaintiff's employer.

Although Plaintiff attempts to principally rely on *Butler v. Drive Automotive Industries of*

*America, Inc.*, 793 F.3d 404 (4th Cir. 2015) , the opinion does not assist her. [12] *Butler* involved evidence that the putative joint employer supervised the plaintiff on the factory floor and that its request for her removal was effectively implemented by the staffing agency. *Id.* at 415–16. The FAC identifies no comparable day-to-day supervision by SURA; and its express allegation that SURA and Hearne directed and approved her termination requires analysis, not an assumption that SURA's participation was necessarily only routine governance. FAC ¶ 71.

First, the 1995 hiring allegation does not establish who employed Plaintiff during the challenged 2025 decisions. The FAC says that "JSA/SURA" hired her in approximately 1995. FAC ¶ 41. If JSA did not yet exist, that chronology supports an inference that SURA had a role in her original appointment but it does not establish that SURA continued to hire, pay, supervise, or possess authority to fire her after JSA took over laboratory operations. Indeed, the FAC identifies JSA as the issuer of her W-2s, and the termination notice expressly identifies JSA as the entity terminating her employment. FAC ¶¶ 23, 71. Plaintiff's contrary assertion that *nothing* shows SURA relinquished the original relationship reverses the inquiry as the correct issue is what facts plausibly establish SURA's current control. An alleged role in selecting one leader does not, without more, establish that SURA retained authority over her ensuing supervision and discharge.

Second, the alleged authority over senior personnel must be connected to Plaintiff's employment. The FAC says that SURA retained authority over senior personnel decisions, specifically identifying appointment of the Laboratory Director and points to the selection Dilling.

---

[1] In the Memorandum in Support, undersigned Counsel inadvertently attributed quoted language to *Butler*, that does not appear in that decision. Undersigned Counsel has filed a Notice of Correction addressing the *Butler* citation. *See* ECF No. 54.

[2] Plaintiff's Opp. also takes issue with *Magnuson v. Peak Technical Services, Inc.,* 808 F. Supp. 500 (E.D. Va. 1992). The Court *granted* summary judgment for purported joint employers Peak and Volkswagen on the Title VII claim. *Id.* at 317. As here, there is not enough factual support to show that SURA is a joint employer.

FAC ¶¶ 29, 31–32. These allegations concern authority over Dilling, not a pleaded practice of SURA supervising Plaintiff, assigning her work, evaluating her performance, or disciplining her. A board's control over the subsidiary's chief executive is not, without an adequately pleaded link, control over each employee whom that executive supervises. If appointing executive leadership to a subsidiary were enough to establish joint-employer liability, every parent corporation that selects a CEO would become the joint employer of every person that executive supervises. That is not the law. The entire point of the corporate form is that a parent may choose who runs the subsidiary without thereby assuming direct employment obligations to the subsidiary's workforce. Plaintiff's theory would collapse the parent-subsidiary distinction into a *per se* rule of joint liability.

Third, the allegations regarding the agreement and benefits do not establish the control attributed to them. The FAC describes a leadership agreement under which JSA committed to retain Plaintiff in her role, while SURA committed to furnish equipment and materials. FAC ¶ 27. Furnishing equipment is a relevant *Butler* factor, and SURA does not ask the Court to ignore it. However, the FAC does not say what SURA supplied, how much was supplied, whether it supplied Plaintiff's workplace, or whether it controlled where or how her scientific work was done. Furnishing unspecified equipment does not establish the kind of workplace control *Butler* treats as probative. Likewise, SURA's sponsorship and administration of group benefit plans bear consideration, but the FAC does not identify SURA as the issuer of Keppel's wages, the custodian of her personnel file, or the decisionmaker on her individual payroll, insurance enrollment, or tax records. The asserted control-group representation concerns the entities' relationship for plan-reporting purposes; it does not itself decide whether SURA was this individual's joint employer under *Butler*.

Fourth, the audit, severance, and termination allegations must be assessed for what they

actually allege. Ordering and receiving an operational review does not by itself allege that SURA assigned Keppel's daily work, managed her performance appraisal, or instructed JSA to terminate her. The FAC alleges that Hearne participated, *on information and belief*, in the post-termination severance decision and that a position was maintained with TIAA concerning her employment status. FAC ¶ 28(c). Those allegations implicate benefits and separation but identify no particular act by SURA exercising authority over her ongoing job or the basis for attributing the TIAA position to a SURA employment decision. The most consequential allegation is Paragraph 71's assertion, also on information and belief, that SURA and Hearne directed and approved termination. Here, Paragraph 71 supplies no comparable account of who requested termination, who received or implemented a direction from SURA, when approval was sought, or what authority SURA exercised over JSA's decision. Read with the specific allegations, the assertion that SURA "directed and approved" is an inference to be tested for plausibility—not an additional described event that automatically resolves *Butler*'s most important factor.

Finally, thirty years with a succession of laboratory operators is not thirty years of demonstrated joint employment with both present entities. Keppel's 100% laboratory assignment tends to identify where she performed her work, not an assignment solely to SURA; the agreement's signature does not by itself establish that she and SURA intended to form a separate employment relationship.

Plaintiff also invokes a label akin to single, integrated enterprise. FAC ¶ 22. Labels, however, do not substitute for pleaded facts establishing a basis to disregard separate corporate forms. And Plaintiff cannot convert a claim that JSA employed her into a claim against SURA merely by alleging that SURA participated in corporate governance or shared employee-benefit arrangements with JSA. Because the FAC does not plausibly allege the control required for joint-

employer liability, Counts II, IV, VI, VIII, and X should be dismissed as against SURA. The same defect independently forecloses the employment-based portions of Count XI.

## II. The FAC does not state a Title VII discrimination claim against SURA.

Even assuming an employment relationship, Plaintiff has not plausibly alleged that SURA discriminated against her because of her sex.

### A. Plaintiff Fails to Plead Satisfactory Job Performance as Assessed by the Relevant Decisionmaker.

The Opp. contends that SURA "acknowledges that a prima facie case need not be pleaded, SURA Mem. 8, and then demands one to dismiss the FAC." *See* ECF No. 48 at p. 8. This characterization of SURA's argument is incorrect. What SURA's Memorandum in Support actually stated was: "[a] plaintiff alleging employment discrimination need not plead a prima facie case to survive a motion to dismiss, but the complaint must contain sufficient factual allegations from which the court can reasonably infer that the plaintiff was meeting the employer's legitimate job expectations at the time of the alleged adverse actions." ECF No. 39 at p. 8. SURA expressly acknowledged — in so many words — that no prima facie case is required at the pleading stage.

What SURA then articulated was the correct *Iqbal*/*Twombly* plausibility standard: a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. That is the baseline requirement for a federal complaint after *Iqbal*/*Twombly* — not a prima facie case, but sufficient factual content to make the discrimination inference plausible rather than merely possible. What SURA asserted is not that proof of the *McDonnell Douglas* framework's second element is required, but rather factual allegations — as opposed to conclusions — from which the Court can reasonably infer that Plaintiff was meeting SURA's legitimate expectations at the time of the alleged adverse employment action. That distinction is elementary, and Plaintiff's refusal to engage with it is

telling. It is not a novel or aggressive position — it is the governing standard post-*Iqbal* and *Twombly*.

Furthermore, SURA did not argue that *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274 (4th Cir. 2000) and *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510 (4th Cir. 2006) hold that a plaintiff must plead the decisionmaker's subjective state of mind. ECF No. 48 at p. 8. To the contrary, regarding *Hawkins*, the Memorandum in Support simply states: "The Fourth Circuit has made clear that "it is the perception of the decision maker [at the time of termination] which is relevant, not the self-assessment of the plaintiff." ECF No. 39 at p. 9 (quoting *Hawkins*, 203 F.3d at 280). That is a statement about whose perspective matters and when — not a demand that Plaintiff plead anyone's subjective mental state. Nor does any part of the Memorandum in Support argue "that an employer's own contemporaneous evaluations are irrelevant." *Compare* ECF No. 39 at p. 9, *with* ECF No. 48 at p. 8. The Opp. constructs an argument, attributes it to SURA, and then refutes its own invention, which misses the point entirely. Plaintiff's reliance on a prior performance evaluation by a different decision maker is not a reflection of her job performance at the time of the alleged adverse employment action. To borrow Plaintiff's own terminology, such an evaluation is not a "contemporaneous evaluation" — it is neither contemporaneous with the adverse action nor rendered by the decisionmaker whose perception *Hawkins* holds relevant. Plaintiff's attempt to pass off a stale review by a different supervisor as evidence of satisfactory performance at the time of termination is precisely the kind of "self-assessment" substitute that Hawkins rejected.

Plaintiff's reliance on *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 224–25 (4th Cir. 2019), fares no better — and, in fact, undercuts her position. ECF No. 48 at pp. 12–13. In *Haynes*, the evidence that supported an inference of satisfactory performance was specific, contemporaneous, and attributable to the relevant decisionmaker: the plaintiff's supervisor told

him *mere weeks* before his termination that "everything looks good" and there was "nothing to worry about" regarding his upcoming performance review, and the plaintiff received bonuses for the period in question. *Id.* at 224–25. The Fourth Circuit held that this evidence raised a reasonable inference that the employee was performing satisfactorily — not because any favorable evaluation at any point in time would suffice, but because the employer's *own* supervisor gave the plaintiff an affirmative assessment *mere weeks before* the adverse action. *Id.* at 225. That is the opposite of what the FAC alleges here. Plaintiff does not point to an assessment by the decisionmaker who terminated her, weeks before the termination, confirming satisfactory performance. She points to a prior evaluation by a different supervisor at an earlier time — precisely the gap in timing and identity that distinguishes *Haynes* from this case.

The Opp.'s mischaracterizations do not end there. Plaintiff also contends that SURA's Memorandum in Support offers "shifting explanations" for her termination. *See* ECF No. 48 at pp. 13–14. While Plaintiff is correct that the argument does not derive from Paragraphs 55 through 57 of the FAC, she conveniently ignores her own allegations. Paragraph 8 of the FAC states that "JSA/SURA's stated justification" was that her "ability to lead the division is not aligned with the direction of the organization." Paragraph 72 repeats the same language verbatim: "the Lab Director (Dilling) determined that your ability to lead the division is not aligned with the direction of the organization." Those are Plaintiff's own words, quoting the termination notice. The Memorandum in Support's reference to "restructuring" describes precisely the same concept — a determination that the incumbent's leadership was not aligned with the organization's direction is, by definition, a restructuring of the leadership of the division.[3]

[3] There is no shift - simply a synonym. Plaintiff's "shifting explanations" theory depends on treating two words for the same thing as evidence of inconsistency — a rhetorical maneuver, not a legal argument. The wordplay is transparent: Plaintiff carefully avoids quoting the termination notice and the brief side by side, because doing so would reveal that the two say the same thing in slightly different language. That is not a legal argument; it is an advocacy

### B. Plaintiff Fails to Plead Circumstances Giving Rise to an Inference of Gender Discrimination.

The Opp. attempts to recharacterize SURA's argument by asserting that SURA read the FAC as resting "entirely" on comparators. ECF No. 48 at pp. 14–15. Rather, SURA argued that the FAC's comparator allegations are conclusory — and they are. *See* ECF No. 39 at pp. 11-12. That is exactly the deficiency the FAC presents. With the exception of naming David Dean and identifying his job title, the FAC does not specifically identify individuals whom Plaintiff claims are appropriate comparators, does not state how such individuals were similar, does not describe anything regarding such individuals' conduct, and does not explain how Defendants treated those individuals differently. Absent such allegations, the Complaint's assertions of discrimination are mere speculation. *See Wei Jiang v. Duke Univ.*, No. 1:22CV101, 2023 U.S. Dist. LEXIS 28914, at *8, *10 (M.D.N.C. Feb. 22, 2023).

The Opp.'s strategy is to survive dismissal through listing numerous allegations across five categories and hoping their cumulative weight substitutes for the plausibility each individually lacks. But *Iqbal* requires an examination of each allegation, stripping away conclusions and labels, and determining whether the remaining factual content plausibly supports an inference of discrimination. Examined that way, each of the Opp.'s five categories falls short.

First, the Opp. points to Plaintiff's replacement by a male who was allegedly the "least budget-experienced available candidate," while a female deputy was passed over. FAC ¶¶ 82, 84. Glaringly, budget experience is only one facet of whether a candidate is qualified. It fails to take into account any other experience required for the job. In addition, the FAC's specific budget-

---

technique designed to manufacture a contradiction where none exists. If the termination notice says the plaintiff's leadership is "not aligned with the direction of the organization," and the brief describes that decision as a "restructuring," the only reasonable reading is that both refer to the same personnel decision. Plaintiff does not identify any substantive inconsistency between the two because there is none.

experience comparison is between the male successor and the female deputy, not between the successor and Dr. Keppel. It does not identify who selected the successor or explain how budget experience bears on the termination notice's stated assessment that Keppel's ability to lead was not aligned with the organization's direction. FAC ¶¶ 71–72. The replacement's budget experience is therefore irrelevant to the stated basis for the employment decision. The FAC does not allege that budget management was the qualification at issue or that the replacement lacked the leadership-alignment qualities the termination notice identified.

As for *McCleary-Evans v. Maryland Department of Transportation*, 780 F.3d 582 (4th Cir. 2015), Plaintiff tries to distinguish it by claiming her allegations are more specific, but *McCleary-Evans*'s core holding — that conclusory allegations about a replacement's qualifications do not state a plausible claim — applies with full force here. The FAC alleges a single conclusory label ("least budget-experienced") without pleading the basis for the comparison or connecting budget experience to the termination decision. A claim cannot proceed by substituting the conclusion of discriminatory intent for facts from which that intent may reasonably be inferred.

Second, the Opp. points to a pattern of conduct, alleging that Dilling bypassed, interrupted, and dismissed Plaintiff at Council meetings and did not do the same to men. ECF No. 48 at pp. 15–17; *see also* FAC ¶¶ 57–60. These are allegations about Dilling's conduct — not SURA's. The Opp. does not explain how Dilling's alleged interpersonal behavior at Council meetings establishes that SURA discriminated against Plaintiff on the basis of sex. The FAC's allegations about Dilling's treatment of another female manager, FAC ¶¶ 61–62, suffer the same defect — they describe alleged individual interpersonal slights, not institutional conduct attributable to SURA. The FAC does not connect SURA to Dilling's alleged interpersonal slights. The post-removal count of three women among approximately thirty senior supervisors provides context but, without

a meaningful baseline or allegations about the decisions producing that composition, adds limited support to that connection. The statistic that "three women" remained among "roughly thirty senior supervisors," FAC ¶ 82(d), is a raw number without context — it does not allege what the gender composition was before, what the expected composition should be, or that the ratio resulted from discriminatory decisions by SURA. Without such factual detail, the allegation amounts to the kind of conclusory comparator assertion that fails under *Iqbal*/*Twombly*.

Third, the Opp. cites the non-compete and outside-work restriction, alleging that Hearne invoked an expired non-compete against Plaintiff in 2023 that was never invoked against a man. *See* ECF No. 48 at pp. 17–18. The weakness of this argument is the absence of facts showing a man sought to participate in a competing bid for the laboratory-management contract, had an equivalent agreement, and received different treatment. The FAC simply does not allege who the male comparators are, what their outside-work activities were, whether they had non-compete agreements, or whether their circumstances were comparable to Plaintiff's. The allegation that no similarly situated male leader was treated comparably "is conclusory and lacks factual detail concerning the proposed comparators or their circumstances." That is precisely the kind of conclusory comparator assertion that fails under *Iqbal*.

Fourth, the Opp. lists several alleged procedural departures under the heading of irregular process: an audit of Plaintiff's division alone, no corrective action, no completed 2025 appraisal, a one-business-day ultimatum, and the exclusion of female board members from the termination decision. *See* ECF No. 48 at pp. 18–19. But the policy alleged here says corrective action normally precedes dismissal for a performance deficiency; the FAC does not identify a mandatory corrective-action or trustee-consultation procedure applicable to the stated leadership-alignment decision or provide examples of prior examples establishing it as the norm.

The Opp.'s reliance on *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252 (1977), does not resolve this pleading issue. *Arlington Heights* recognizes that a departure from the *normal procedural sequence* may be evidence of improper purpose; it does not make every unusual personnel decision evidence of sex discrimination. ECF No. 48 at p. 18. The FAC alleges that corrective action *normally* precedes dismissal for a performance deficiency, but it does not identify a mandatory corrective-action or appraisal procedure governing the leadership-alignment decision stated in Keppel's termination notice. Nor does it allege that SURA ordinarily consulted the two trustees identified in the Opp. before comparable personnel decisions.

Although the FAC alleges that no male-led division received a comparable audit, it supplies little about the circumstances of other divisions against which to assess why this audit was ordered. FAC ¶¶ 46, 64–69, 74–83. It does not allege facts showing that any male Associate Director's division was comparable, whether that division was subject to the same audit criteria, or otherwise link the decision to audit the Physics Division to sex.

Fifth, the Opp. points to severance disparity, alleging that a male Deputy Director received severance, approximately eighty employees separated in a reduction in force received severance, and Plaintiff did not. *See* ECF No. 48 at pp. 19–20. But these comparators are not similarly situated — and the Opp. does not argue otherwise. A departure, which implies voluntary separation, by the Deputy Director, a reduction in force involving eighty employees, and a termination for leadership misalignment are three materially different employment events. Different separation circumstances routinely produce different severance outcomes for legitimate, nondiscriminatory reasons. The FAC does not allege facts showing the comparators' circumstances were materially similar or that any decision was made because of sex. A claim cannot proceed by substituting facts with conclusory allegations. The FAC does not allege that any male employee terminated for the

same stated reason — leadership misalignment — received severance, and that is the relevant comparison. *See* FAC ¶¶ 85–86.

Examined individually, each of the Opp.'s five categories either concerns Dilling rather than SURA, relies on conclusory comparator assertions without establishing that the proposed comparators were similarly situated, conflates correlation with causation, or asks the Court to draw speculative inferences that *Iqbal* does not permit. The Court should evaluate the FAC's factual content — not its labels or its length — and dismiss the sex discrimination claims against SURA.

**III. The FAC does not plead an actionable hostile work environment against SURA.**

SURA does not dispute that *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993), instructs courts to evaluate hostile-work-environment claims under a totality-of-the-circumstances analysis. But the Opp. fundamentally mischaracterizes the argument from the Memorandum in Support of the Motion to Dismiss. A totality-of-the-circumstances inquiry does not disregard the obligation under *Iqbal* to strip away legal conclusions, labels, and formulaic recitations of the elements before assessing whether the remaining factual content states a plausible claim. The Opp.'s real complaint is not that SURA improperly "parsed" the allegations — it is that SURA examined each allegation as *Iqbal* requires and demonstrated that, individually and collectively, the FAC's allegations do not plausibly establish conduct that occurred "because of sex." Stacking conclusory allegations does not create severity or pervasiveness that the individual allegations lack. A court considering the totality of the circumstances must still consider all the circumstances, and conclusory characterizations dressed up as factual allegations do not become factual simply because they are numerous.

The fatal deficiency in the FAC's hostile-environment theory is the "because of sex" element. The FAC alleges that Dilling interrupted Plaintiff in meetings, bypassed her authority,

and dismissed her contributions — and that he did not do the same to men. But those are conclusions, not facts. The FAC does not describe what was said in any particular meeting, what the context of any alleged interruption was, what the male comparators said or did differently, or why the alleged differential treatment was attributable to Plaintiff's sex rather than to management style, personality conflicts, or legitimate supervisory disagreements. The Opp. concedes that no gendered epithets were used. *See* ECF No. 48 at p. 17.

The sex-based character of the alleged conduct is asserted by label — "because of sex" — not by factual content. The Opp. invokes *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), for the proposition that discriminatory motive can be inferred from disparate treatment without gendered language. The Opposition's reliance on *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–81 (1998), is a significant overextrapolation of that decision. *Oncale* held that Title VII's prohibition on discrimination "because of sex" extends to conduct even where the plaintiff and the alleged harasser are of the same sex. *See Oncale*, 523 U.S. at 80-81 ("But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimination* . . . because of . . . sex.'") (emphasis in original). The FAC's allegation that men were treated differently is itself the conclusion — and the FAC must plead facts making that

conclusion plausible, which it does not.

Plaintiff's attempts to distinguish the cases cited in SURA's Memorandum in Support fail on their own terms. SURA cited *Sunbelt* for the principle that a hostile-environment claim requires conduct attributable to a protected characteristic — not merely unpleasant workplace interactions. The Opp.'s response is to note that *Sunbelt* reversed the employer's judgment. *See* ECF No. 48 at p. 16. That is true and irrelevant. SURA did not cite *Sunbelt* for its outcome; SURA cited it for its rule. And the rule defeats Plaintiff's argument: the FAC does not allege the kind of conduct *Sunbelt* held necessary. SURA cited *Buchhagen* for the proposition that allegations of yelling, unfair scrutiny, and snide comments are "largely conclusory" when they lack factual content connecting the conduct to a protected characteristic — and that is exactly what the FAC alleges here. The Opp. responds that the *Buchhagen* court reversed dismissal of separate discrimination and retaliation claims. *See* ECF No. 48 at p. 16. Again, true and irrelevant. The hostile-environment theory was the claim the court found deficient — which is why SURA cited it and supports SURA's point: the hostile-environment theory was the claim the court found deficient, and the claims that survived rested on different allegations entirely.

SURA cited *DeCoster* for the holding that allegations centered on a difficult supervisory relationship and criticisms the plaintiff believed were unfair, supported only by a conclusory allegation of discriminatory motive, do not state a hostile-environment claim. The Opp.'s attempted distinction — that Plaintiff received a favorable appraisal and was actually terminated — does not address the proposition for which the case was cited. SURA did not cite *DeCoster* for anything related to appraisals or terminations. SURA cited it for the principle that workplace friction, absent non-conclusory allegations of discriminatory motive, is not actionable harassment. A favorable appraisal and subsequent termination may be relevant to a disparate-treatment theory,

but they do not transform conclusory allegations of workplace friction into a plausible hostile-environment claim. Plaintiff's pattern is consistent across all three cases: she identifies a factual distinction that has nothing to do with the legal principle SURA invoked, declares the case "distinguishable," and moves on — without ever confronting the rule that applies. Plaintiff's "distinctions" do not engage with the propositions for which these cases were cited; they engage with propositions SURA never advanced.

The Opp.'s *Vance* argument is circular. *See* ECF No. 48 at pp. 17–18. The framework presupposes that the harasser is a supervisor *of the defendant employer*. Dilling was employed by JSA, not SURA. The Opp. acknowledges this threshold problem and dismisses it as "the joint-employer question again, addressed in Part I." *See* ECF No. 48 at pp. 17–18. But that is not a rebuttal — it is a concession that the *Vance* argument depends entirely on a predicate the FAC has not established. If SURA is not Plaintiff's employer, then Dilling is not SURA's supervisor, and the *Ellerth*/*Faragher* strict-liability framework has no application to SURA. The Opp. cannot assume the conclusion of joint employment in order to invoke a doctrine that only applies if joint employment has already been established. That is bootstrapping. Nor do the remaining allegations save the argument. The Opp. conflates corporate oversight with employer liability.

## IV. The retaliation claims do not plausibly allege SURA's knowledge, a materially adverse action by SURA, or causation.

Plaintiff fundamentally misunderstands SURA's argument in its Memorandum in Support. Every alleged adverse action the Opp. identifies — the Town Meeting statements, the special advisor offer, the TIAA position, the COBRA omission — flowed from the termination. They are the administrative, communicative, and transitional consequences of a personnel decision that was made before any protected activity occurred. The termination set in motion a leadership transition that required a community briefing, a separation negotiation, an employment-status determination

for benefits purposes, and benefits-administration processing. Those acts are downstream incidents of a decision already made. *Breeden* is squarely on point: employers need not suspend previously planned actions upon discovering that the employee engaged in protected activity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). Plaintiff cannot transform the ordinary consequences of her termination into independent acts of retaliation simply by noting that they occurred after she retained counsel. If that were the rule, every post-termination administrative step — every severance communication, every benefits determination, every community announcement — would become an independently actionable retaliatory event whenever the terminated employee engages in protected activity between the termination and its implementation.

The Opp. also does not meaningfully respond to SURA's knowledge argument. *See* ECF No. 48 at pp. 19–20. The FAC alleges "on information and belief" that JSA's General Counsel reported the assertion of Title VII claims to SURA's leadership "in the ordinary course." FAC ¶ 90. But the FAC provides no factual basis for the belief — no reporting protocol, no prior pattern of escalation, no identified communication between JSA's General Counsel and any SURA officer. The allegations in the FAC are premised on nothing more than speculation. Allegations made on information and belief, without supporting factual detail, are insufficient to satisfy *Iqbal*'s plausibility standard. The retaliation claim against SURA should be dismissed.

**V. The VHRA claims fail for the same reasons.**

Plaintiff does not identify a VHRA-specific basis for preserving Counts VIII and X. Those claims rely on the same alleged employer relationship, the same alleged discrimination and hostile environment, and the same alleged retaliation. *See* ECF No. 48 at pp. 21–22. They should be dismissed for the reasons stated above.

## VI. The DCHRA does not reach the alleged Virginia employment relationship or the challenged acts.

The DCHRA is not an extraterritorial employment statute. *See Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284–85 (D.D.C. 2012).[4] The FAC alleges a Virginia employment relationship with Virginia-based effects: Plaintiff worked at Jefferson Lab in Newport News, Virginia; Dilling terminated her there; she was escorted from the Virginia facility; and the consequences of the termination were experienced in Virginia. FAC ¶¶ 71–77, 82. The FAC does not plausibly allege that any employment consequence was felt in the District. SURA's D.C. headquarters and its corporate-governance activities do not convert a Virginia employment decision into a District-based act. Under *Cole v. Boeing Co.*, 845 F. Supp. 2d 277 (D.D.C. 2012), and *Monteilh v. AFSCME*, 982 A.2d 301 (D.C. 2009), where an employee does not work in the District, the DCHRA applies only if the adverse employment decision was made in, or its effects were felt in, the District. Neither prong is satisfied here: neither prong is satisfied because the termination decision was communicated and implemented in Virginia, and all effects alleged in the FAC were experienced there. The FAC's conclusory allegation that the challenged decisions were made "in substantial part" in the District is unsupported by factual content identifying what specific discriminatory decision was made there, when it was made, or who made it. See *Iqbal*, 556 U.S. at 678–79. The DCHRA does not have that extraterritorial reach and Count XI should be dismissed as against SURA.

## VII. The FAC does not state a defamation claim against SURA.

The Opp. contends that Dilling's Town Meeting statements were provably false assertions

---

[4] In the Memorandum in Support, undersigned Counsel inadvertently cited *Elyazidi v. SunTrust Bank* with the wrong reporter volume and page — "780 F. Supp. 2d 1" — for a proposition about the DCHRA's territorial reach; that citation in fact belongs to *Wade v. District of Columbia*. Undersigned Counsel has filed a Notice of Correction addressing the *Elyazidi* citation. *See* ECF No. 54.

of fact because the audit and external review contradicted them. But whether a safety review was "not positive" and whether "plans and hopes hadn't worked out" are subjective characterizations, not provably false facts. *Schaecher v. Bouffault*, 290 Va. 83, 101–02 (2015). The FAC therefore does not transform institutional commentary into a defamation claim merely by alleging that Plaintiff disagrees with the characterization or that other materials could be read differently. The Opp. also argues that the statements were "of and concerning" Plaintiff because the audience understood "line management" to refer to her. *See* ECF No. 48 at p. 23. But "line management" is a generic organizational term that encompasses multiple supervisors; it is not a statement identifying Plaintiff. *Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985). The FAC's conclusory assertion that every audience member understood the phrase to mean Plaintiff cannot supply the missing factual basis for an actionable reference.

Nor does the FAC plausibly allege that any qualified privilege was abused. Its allegation that the statements were made "for the specific purpose of punishing [Plaintiff] for retaining counsel" is conclusory and does not identify facts showing malice, knowledge of falsity, or reckless disregard. *See* FAC ¶ 102; *see also* ECF No. 48 at pp. 24–25. SURA's alleged failure to include a complete malice analysis in the opening brief is immaterial: qualified privilege is an affirmative defense, and Plaintiff bears the burden of pleading facts that overcome it. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc), confirms that dismissal on an affirmative defense is proper where the defense appears on the face of the complaint.

Finally, SURA cannot be held vicariously liable for Dilling's statements on the allegations pleaded. Dilling was employed by JSA, not SURA. The FAC's assertion that SURA "authorized and ratified" the statements is a legal conclusion; it does not identify any SURA officer who directed, knew of, or endorsed Dilling's specific statements. The defamation claim against SURA

should therefore be dismissed.

## VIII. The COBRA count alleges that the statutory notice period as to SURA was never triggered.

Plaintiff's Opp. confirms the defect in Count XIII. Under 29 U.S.C. § 1166(a)(2), the employer must notify the plan administrator of a qualifying event. The administrator's obligation to notify the qualified beneficiary arises only after it receives that employer notice; the statutory period is fourteen days from that notice. 29 U.S.C. § 1166(a)(4), (c). The FAC expressly alleges that JSA did not notify SURA, the alleged plan administrator, of Plaintiff's qualifying event. FAC ¶¶ 119–20, 216. Plaintiff cannot simultaneously allege the absence of the statutory prerequisite and seek penalties against SURA for failing to meet a deadline that, by her own allegations, was never triggered. Her allegation that SURA and JSA were affiliated entities does not rewrite the statutory allocation of notice responsibilities. Count XIII should be dismissed as to SURA.

## IX. The FAC does not state an ERISA claim against SURA.

Notably missing from the Opp. is any discussion of SURA's argument regarding Section 510's specific-intent requirement or *Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 238–39 (4th Cir. 1991). As courts have consistently stated, "a party who fails to address an issue has conceded the issue." *See E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 728 (E.D. Va. 2012); *Kinetic Concepts, Inc. v. ConvaTec, Inc.*, No. 1:08CV00918, 2010 U.S. Dist. LEXIS 40240, at *29–32 (M.D.N.C. Apr. 23, 2010) (enumerating a list of cases which stand for this principle).

The Opp.'s attempt to recast SURA as an ERISA fiduciary based on its communication of Plaintiff's employment status to TIAA fundamentally conflates an employer function with a plan-administration function. The issue is not whether the FAC mentions an act by SURA, but whether it pleads facts showing that SURA performed the particular plan-administration function on which the benefits and fiduciary-breach theories depend.

Under *Custer v. Sweeney*, fiduciary status is activity-specific: the inquiry concerns the authority exercised in the challenged conduct, not a party's title alone. 89 F.3d 1156, 1162–63 (4th Cir. 1996). SURA's identification as administrator on the Form 5500 matters does not automatically establish liability. The FAC alleges that the plan permits withdrawals upon termination and that TIAA relied on a status position attributed to SURA and JSA. It does not identify who at SURA conveyed that position, whether SURA controlled the eligibility information supplied to TIAA, whether it could correct that information, or which entity had authority under the plan to resolve a disputed termination date. Those omissions leave open a material distinction between reporting an employment fact and exercising authority over a plan-benefit determination. FAC ¶¶ 125–31, 229–30. If merely communicating employment-status information to a benefits administrator were sufficient to confer ERISA fiduciary status, every employer would be a fiduciary with respect to every benefits plan it sponsors, because every employer communicates employment-status information to plan recordkeepers.

## CONCLUSION

For these reasons and as set forth in more detail in the Memorandum in Support of the Motion to Dismiss, the Court should grant SURA's motion and dismiss all claims asserted against it. Furthermore, the Court should deny Plaintiff's request to file a second amended complaint. For the reasons set forth above, any attempts to cure would be futile. In addition, Plaintiff has already had an opportunity to correct the above-deficiencies from her initial Complaint and failed to do so.

Date: September 28, 2026

**SOUTHEASTERN UNIVERSITIES RESEARCH ASSOCIATION, INC.**

By: __________/s/__________
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)

N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant SURA*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including

Ronald J. Kim, Esq.
SOLOMON LAW FIRM, PLLC
300 Great Oaks Blvd, Suite 312
Albany, NY 12203
rkim@fedemploylaw.com

Dawn C. Stewart, Esq
SOLOMON LAW FIRM, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, D.C. 20036
dstewart@fedemploylaw.com

**SOUTHEASTERN UNIVERSITIES RESEARCH ASSOCIATION, INC.**

By: /s/
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant SURA*