**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **DR. CYNTHIA E. KEPPEL,**<br>**PLAINTIFF,**<br>**V.**<br>**JEFFERSON SCIENCE ASSOCIATES, LLC, ET. AL,**<br>**DEFENDANTS.** | **Case No.: 4:26-CV-00112-MSD-LRL** |

**DEFENDANT JENS DILLING'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Jens Dilling ("Dilling") respectfully submits this Answer to Plaintiff Cynthia E. Keppel's ("Plaintiff") First Amended Complaint ("FAC").

Except as expressly admitted below, Dilling denies each and every allegation in the FAC, including any allegations contained in headings, subheadings, footnotes, unnumbered paragraphs, and the Prayer for Relief. The headings of the FAC are repeated below solely for ease of reference, and to the extent any heading is construed to contain factual allegations, Dilling denies them. Where Dilling states that a document speaks for itself, Dilling refers the Court to that document for its complete and accurate contents and denies any allegation inconsistent with it. Where the FAC references a document that Plaintiff did not attach, Dilling notes the omission. Allegations directed to defendants other than Dilling require no response from Dilling; to the extent a response is required, Dilling denies them.

## PRELIMINARY STATEMENT

1. Paragraph 1 is a jury demand to which no response is required.

2. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore denies them.

3. Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 3, including the length of Plaintiff's tenure and her career progression, and therefore denies them. To the extent Paragraph 3 alleges that SURA operated Jefferson Lab or employed Plaintiff, it states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it.

4. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 and therefore denies them.

5. Dilling denies any remaining allegations in Paragraph 5.

6. Dilling denies the allegations in Paragraph 6.

7. Paragraph 7 purports to quote a written termination notice, which Plaintiff did not attach to the FAC. Dilling notes Plaintiff's failure to attach the document, states that the document speaks for itself, and denies any allegation inconsistent with its contents. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding SURA and therefore denies them, and denies any remaining allegations in Paragraph 7.

8. Paragraph 8 purports to quote a document that Plaintiff did not attach to the FAC; Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Dilling denies the remaining allegations in Paragraph 8, including that the stated reason was false, pretextual, or rooted in discriminatory animus.

9. Dilling denies that any action was taken as a result of discriminatory hostility and denies the remaining allegations in Paragraph 9.

10. Dilling admits that on or about December 18, 2025, he participated in a Town Meeting in the laboratory's auditorium that was also made available online. Dilling lacks

knowledge or information sufficient to form a belief about the truth of the allegations regarding the timing of any challenge by Plaintiff's counsel and the composition of the audience, and therefore denies them. Dilling denies that he retaliated against or defamed Plaintiff and denies the remaining allegations in Paragraph 10.

11. Dilling denies the allegations in Paragraph 11.

12. Dilling denies the allegations in Paragraph 12 as to himself. Dilling had no role in the provision of COBRA notices or the administration of retirement funds and lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding JSA and SURA, and therefore denies them.

13. Paragraph 13 describes Plaintiff's claims and the relief she seeks and states legal conclusions to which no response is required. To the extent a response is required, Dilling admits only that Plaintiff purports to bring this action under the cited statutes, denies that he violated any law, and denies that Plaintiff is entitled to any relief from him.

## PARTIES

14. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff's residence and citizenship and therefore denies them. Dilling admits that Plaintiff worked at Jefferson Lab, 12000 Jefferson Avenue, Newport News, Virginia. The allegation that Plaintiff was employed by JSA and SURA states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it.

15. Dilling admits, upon information and belief, that JSA is a Virginia limited liability company with its principal place of business at 12000 Jefferson Avenue, Newport News, Virginia 23606. Dilling denies any remaining allegations in Paragraph 15.

16. Dilling admits that, during the relevant period, JSA managed and operated Jefferson

Lab under a contract with the DOE. Paragraph 16 references a contract with DOE that Plaintiff did not attach to the FAC; Dilling notes the omission and states that the contract speaks for itself.

17. The allegations in Paragraph 17 state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about JSA's headcount and therefore denies the allegations, and specifically denies that JSA was an "employer" of Plaintiff within the meaning of the DCHRA.

18. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 and therefore denies them. The term "successor in interest" also states a legal conclusion to which no response is required.

19. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 and therefore denies them.

20. The allegation in Paragraph 20 that JSA is a "subsidiary" of SURA states a legal conclusion to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about JSA's ownership structure and therefore denies the allegation.

21. The allegations in Paragraph 21 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

22. The allegations in Paragraph 22 that SURA and JSA operated as a "single, integrated enterprise" state legal conclusions to which no response is required; to the extent a response is required, Dilling denies them. Paragraph 22 also references JSA's Administrative Manual, which Plaintiff did not attach to the FAC; Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining

allegations in Paragraph 22, including those concerning JSA's formation, SURA's membership interest, and the appointment of JSA's board, and therefore denies them.

23. Paragraph 23 references Plaintiff's employment documents, W-2 wage statements, and TIAA retirement plan documents, none of which Plaintiff attached to the FAC. Dilling notes the omission and states that the documents speak for themselves, and denies any characterization inconsistent with its contents. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 and therefore denies them.

24. Paragraph 24 references and purports to quote Forms 5500 filed with the U.S. Department of Labor, which Plaintiff did not attach to the FAC. Dilling notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations regarding plan sponsorship and administration state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 and therefore denies them.

25. Paragraph 25 references and purports to quote audited financial statements filed with a Form 5500, which Plaintiff did not attach to the FAC. Dilling notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegation that SURA "determined and administered a material term and condition" of Plaintiff's employment states a legal conclusion to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 and therefore denies them.

26. Paragraph 26 references a Form 5500 and insurance contracts that Plaintiff did not attach to the FAC. Dilling notes the omission, states that the documents speak for themselves, and

denies any characterization inconsistent with their contents. The allegations concerning the legal significance of SURA's certification and 29 C.F.R. § 2520.101-2 state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 and therefore denies them.

27. Paragraph 27 references and characterizes a Leadership Participation Agreement dated April 7, 2022, which Plaintiff did not attach to the FAC. Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The agreement predates Dilling's appointment, and Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding its execution and therefore denies them. The allegation that the agreement is "direct documentary evidence" that SURA co-determined the terms of Plaintiff's employment states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it.

28. Paragraph 28 references an Operations Audit, a Review Team scope or deliverable document, and a written audit report, none of which Plaintiff attached to the FAC. Dilling notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents, including the characterization that the audit "confirm[ed]" that Plaintiff's division met all performance expectations and safety standards. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Hearne's and SURA's conduct and therefore denies them, and denies any remaining allegations in Paragraph 28.

29. The allegations in Paragraph 29 that SURA "exercised joint control" over and "co-determined" Plaintiff's terms and conditions of employment state legal conclusions to which no

response is required; to the extent a response is required, Dilling denies them. Paragraph 29 references the DOE Management and Operating contract and JSA's governing documents, which Plaintiff did not attach to the FAC; Dilling notes the omission and states that the documents speak for themselves. Dilling admits that he was appointed Laboratory Director in or about May 2025 following a search process chaired by Hearne and reports to the Board of Directors. Dilling denies any remaining allegations in Paragraph 29.

30. Dilling denies that SURA's Washington, D.C. offices functioned as the hub for the management of Jefferson Lab. Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 30 and therefore denies them.

31. Dilling admits that Hearne chaired the search committee that selected him as Laboratory Director. Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 31 and therefore denies them.

32. The allegations in Paragraph 32 do not clarify which period in time or which Laboratory Director is referred to and Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 and therefore denies them. The remaining allegations in Paragraph 32, including that SURA "supervised" the Laboratory Director and "effected" Plaintiff's termination, state legal conclusions to which no response is required; to the extent a response is required, Dilling denies them.

33. The allegations in Paragraph 33 state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about SURA's headcount and denies the allegations.

34. Dilling admits that he is a natural person and that, since in or about May 2025, he has served as Laboratory Director of Jefferson Lab. Dilling denies that he is the "primary

perpetrator" of, or engaged in, gender discrimination, a hostile work environment, retaliation, or defamation. Dilling admits only that Plaintiff purports to sue him individually and in his official capacity, and denies that he is liable in either capacity. The allegation that Dilling's position is "held under appointment by JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it. Dilling denies any remaining allegations in Paragraph 34.

35. The allegations in Paragraph 35 are not directed at Dilling, and no response from Dilling is required. To the extent a response is required, Dilling denies that any discriminatory or retaliatory treatment of Plaintiff occurred and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 35, and therefore denies them.

**JURISDICTION AND VENUE**

36. The allegations in Paragraph 36 state legal conclusions to which no response is required. To the extent a response is required, Dilling states that no Title VII claim is asserted against him and denies that he violated Title VII.

37. The allegations in Paragraph 37 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them and reserves the right to ask the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c).

38. The allegations in Paragraph 38 state legal conclusions to which no response is required. To the extent a response is required, Dilling does not contest venue in this District but denies that any unlawful employment practice was committed. Notably, Paragraph 38 concedes that the alleged practices were committed principally in this District, i.e., in Virginia, not the District of Columbia.

39. Paragraph 39 references EEOC charges, a Notice of Right to Sue, and a

Determination and Notice of Rights, none of which Plaintiff attached to the FAC. Dilling notes the omission and states that the documents speak for themselves. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 and therefore denies them. Dilling further states that, as alleged, the charges were filed against JSA and SURA only, and not against Dilling.

40. The allegations in Paragraph 40 state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the dates of Plaintiff's receipt of any EEOC notice and therefore denies the allegations, including that all administrative prerequisites have been satisfied.

## FACTUAL ALLEGATIONS

### A. Dr. Keppel's Thirty-Year Career at Jefferson Laboratory

41. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41, which concern events approximately thirty years before his appointment, and therefore denies them.

42. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42 and therefore denies them.

43. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43 and therefore denies them.

44. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44 concerning the period before his appointment and therefore denies them. Dilling denies that Plaintiff performed her duties without deficiency during the period he served as Laboratory Director.

45. Dilling lacks knowledge or information sufficient to form a belief about the truth

of the allegations in Paragraph 45 and therefore denies them.

46. Paragraph 46 references and purports to quote an April 23, 2024 merit-increase communication, a fiscal year 2024 Annual Performance Appraisal, JSA's published performance scale and policies, the Leadership Participation Agreement, and the Operations Audit, none of which Plaintiff attached to the FAC. Dilling notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning events before his appointment and therefore denies them. The allegations that Plaintiff's rating "exceeded the … contractual retention threshold" and that her performance met her employer's legitimate expectations state legal conclusions to which no response is required; to the extent a response is required, Dilling denies them. Dilling denies the characterization of the Operations Audit and any remaining allegations in Paragraph 46.

47. Dilling admits that, as Associate Director for Experimental Physics, Plaintiff was a member of the Directors' Council. The remaining allegations in Paragraph 47 do not clarify which period in time is referred to and Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations including the gender makeup of the council in Paragraph 47 and therefore denies them. Dilling denies the characterization of the Directors' Council as "the principal governing and policy-making body" and denies any remaining allegations in Paragraph 47.

**B. Customary Outside Scientific Engagement; Defendants' Selective Restriction of Dr. Keppel**

48. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48 regarding the customs and norms of laboratory leadership over time and therefore denies them.

49. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 and therefore denies them.

50. Dilling denies that he sought to restrict or limit Plaintiff's outside professional engagement because of her sex or treated her differently than similarly situated male leaders. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50 as to other Defendants and therefore denies them.

51. The allegations in Paragraph 51 concern events in or about 2023, before Dilling's appointment, and are not directed at Dilling. Dilling lacks knowledge or information sufficient to form a belief about their truth and therefore denies them.

52. The allegations in Paragraph 52 are not directed at Dilling. Paragraph 52 references a "purported non-compete document," which Plaintiff did not attach to the FAC; Dilling notes the omission and states that the document speaks for itself. The allegation that the instrument was "expired" states a legal conclusion to which no response is required. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52 and therefore denies them.

53. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53 and therefore denies them.

54. The allegations in Paragraph 54 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

### C. Dilling's Appointment and Immediate Creation of a Gender-Based Hostile Work Environment

55. Dilling admits that he was appointed Laboratory Director of Jefferson Lab in or about May 2025 by JSA. Dilling denies any remaining allegations in Paragraph 55.

56. Dilling denies the allegations in Paragraph 56.

57. Dilling denies the allegations in Paragraph 57.

58. Dilling admits that he participated in Directors' Council meetings. Dilling denies the remaining allegations in Paragraph 58.

59. Dilling denies the allegations in Paragraph 59.

60. Dilling denies the allegations in Paragraph 60 as to himself, including that he engaged in discriminatory behavior that was observed or emulated by others. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning David Dean's statements and conduct and therefore denies them.

61. Dilling denies the allegations in Paragraph 61.

62. Dilling denies that he engaged in scornful or discriminatory belittling of Dr. Boehnlein. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning what Plaintiff witnessed and therefore denies them.

63. Dilling denies the allegations in Paragraph 63.

64. Dilling admits that an operations review of the Experimental Physics Division was conducted in or about November 2025. Dilling denies that the review was discriminatory and denies the remaining allegations in Paragraph 64.

**D. JSA and Dilling Attempt to Manufacture Pretextual Reasons for a False Basis for Dr. Keppel's Termination**

65. Dilling denies that he sought to manufacture any justification for Plaintiff's termination and denies that any accusation he made was false or baseless. Dilling denies the remaining allegations in Paragraph 65.

66. Dilling admits that an operations review of the Experimental Physics Division was conducted in or about November 2025. Dilling denies the remaining allegations in Paragraph 66.

67. Dilling denies that the review was discriminatory or pretextual. Paragraph 67

references a DOE annual operations "report card," which Plaintiff did not attach to the FAC; Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 67, including whether the audit was the first of its kind at Jefferson Lab, and therefore denies them.

68. Dilling denies that the review had a discriminatory purpose or was intended to tarnish Plaintiff's reputation or supply a pretextual rationale. Paragraph 68 characterizes the audit's results, but Plaintiff did not attach the audit report to the FAC; Dilling notes the omission, states that the report speaks for itself, and denies any characterization inconsistent with its contents. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding audits ordered before his appointment and therefore denies them.

69. Dilling notes the allegations in Paragraph 69 appear to have duplicative language and are thus not entirely clear in meaning. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69 regarding Hearne's decision and therefore denies them.

70. The allegations in Paragraph 70 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

**E. Dr. Keppel's Unlawful Termination on November 21, 2025**

71. Paragraph 71 purports to quote a written Termination Notice, which Plaintiff did not attach to the FAC. Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Dilling admits that JSA issued Plaintiff a written notice dated November 21, 2025. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding SURA's and Hearne's direction or

approval and therefore denies them.

72. Paragraph 72 purports to quote the Termination Notice, which Plaintiff did not attach to the FAC. Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Dilling admits that it was determined Plaintiff's leadership of the division was not aligned with the direction of the organization.

73. Dilling denies the allegations in Paragraph 73.

74. Dilling denies the allegations in Paragraph 74.

75. The allegations in Paragraph 75 state legal conclusions to which no response is required. Paragraph 75 also references the Jefferson Laboratory Code of Conduct, the Administrative Manual, and "standard Human Resource practices," none of which Plaintiff attached to the FAC or identified with specificity; Dilling notes the omission and states that the documents speak for themselves. To the extent a response is required, Dilling denies the allegations in Paragraph 75.

76. Dilling admits Plaintiff's departure from the facility and disabling of her badge on November 21, 2025 were consistent with Company procedure. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff was not given adequate time to collect her belongings and therefore denies it.

77. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77 concerning statements made by the head of JSA Human Resources and therefore denies them. The characterization of the termination as "immediate and irreversible" states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it.

78. Paragraph 78 references and purports to quote an unsigned letter dated November

21, 2025, offering Plaintiff an individual contributor role, which Plaintiff did not attach to the FAC. Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents, including the characterization of the non-disparagement provision as "sweeping."

79. Dilling denies the allegations in Paragraph 79.

80. Dilling admits that Plaintiff did not accept the individual contributor role offered on November 21, 2025. Dilling denies the remaining allegations in Paragraph 80, including that acceptance would have required any false statement or that the offered terms were discriminatory or retaliatory.

81. The allegations in Paragraph 81 state legal conclusions to which no response is required. Paragraph 81 also references unidentified "federal government contract regulations." To the extent a response is required, Dilling denies the allegations in Paragraph 81.

82. Dilling denies that any decision was discriminatory. Dilling denies that Plaintiff's replacement was less qualified and denies the remaining allegations in Paragraph 82.

83. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Hearne and regarding the Board of Trustees positions held by Drs. Gao and Seestrom and therefore denies them. Dilling denies that he had any obligation to consult individual trustees on the SURA Board of Trustees.

84. Dilling denies the allegations in Paragraph 84.

85. The allegations in Paragraph 85 regarding discrimination and a "pattern and practice" state legal conclusions to which no response is required; to the extent a response is required, Dilling denies them. Dilling lacks knowledge or information sufficient to form a belief about the severance offered to other departing executives and therefore denies the remaining

allegations in Paragraph 85.

86. Dilling denies that departing executives of comparable seniority and employees impacted by a reduction in force were similarly situated to Plaintiff and denies the remaining allegations in Paragraph 86.

87. The allegations in Paragraph 87 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

**F. Dilling's Post-Termination Retaliatory and Defamatory Statements to the Scientific Community That Dr. Keppel Had Served with Distinction for Thirty Years**

88. The allegation in Paragraph 88 that Plaintiff engaged in protected activity states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it. Dilling lacks knowledge or information sufficient to form a belief about when Plaintiff retained counsel and therefore denies the remaining allegations in Paragraph 88.

89. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 89 and therefore denies them. Plaintiff did not attach any November 26, 2025 communication to the FAC, and Dilling notes the omission.

90. Paragraph 90 references and purports to quote a December 3, 2025 letter from Plaintiff's counsel to JSA's General Counsel, which Plaintiff did not attach to the FAC. Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Dilling denies that the letter's assertions are accurate. Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 90, including what SURA or Hearne knew, and therefore denies them.

91. Dilling admits that on or about December 18, 2025, he participated in a Town Meeting in the laboratory's auditorium. Dilling denies that the Town Meeting was retaliatory, discriminatory, or defamatory. Dilling lacks knowledge or information sufficient to form a belief

about the truth of the allegations regarding the number, identity, and employment of attendees and their prior work with Plaintiff, and therefore denies them. Dilling denies the remaining allegations in Paragraph 91.

92. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 92 and therefore denies them.

93. Paragraph 93 purports to quote selected excerpts of Dilling's remarks at the Town Meeting. Plaintiff did not attach any recording or transcript of the Town Meeting to the FAC; Dilling notes the omission, states that the recording or transcript speaks for itself, and denies any characterization inconsistent with it, including any quotation taken out of context. Dilling denies that any statement was false, and denies the remaining allegations in Paragraph 93.

94. The allegations in Paragraph 94 that the statement was "defamatory" state a legal conclusion to which no response is required. To the extent a response is required, Dilling denies the allegations in Paragraph 94.

95. The allegations in Paragraph 95 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies that he stated that Plaintiff was responsible for safety or budget failures and denies the remaining allegations in Paragraph 95.

96. Dilling denies the allegations in Paragraph 96 and lacks knowledge or information sufficient to form a belief about what each member of the audience understood.

97. Dilling denies the allegations in Paragraph 97.

98. Dilling denies the allegations in Paragraph 98.

99. Paragraph 99 characterizes the November 2025 Operations Audit, which Plaintiff did not attach to the FAC; Dilling notes the omission, states that the audit report speaks for itself, and denies any characterization inconsistent with its contents. Dilling denies that the audit was

pretextual, denies that he knew any statement to be false or acted with reckless disregard for the truth, and denies the remaining allegations in Paragraph 99.

100. Dilling denies that his statements were false and denies that they carried the implication alleged. As to subparagraphs (a) through (f), Paragraph 100 references efficiency measurements, an external review report, the Operations Audit, and divisional budget allocations, none of which Plaintiff attached to the FAC; Dilling notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. Dilling denies the remaining allegations in Paragraph 100.

101. Dilling denies the allegations in Paragraph 101. Paragraph 101 references the Operations Audit results and the external review report, neither of which Plaintiff attached to the FAC; Dilling notes the omission and states that the documents speak for themselves.

102. Dilling denies the allegations in Paragraph 102.

103. The allegations in Paragraph 103 regarding scope of employment, authorization, and ratification state legal conclusions to which no response is required; to the extent a response is required, Dilling denies them, except Dilling admits that he participated in the Town Meeting in his capacity as Laboratory Director]. Paragraph 103 also references the Operations Audit report and Review Team deliverable, which Plaintiff did not attach to the FAC; Dilling notes the omission and states that the documents speak for themselves. Dilling denies that he or anyone knew statements to be false and denies the remaining allegations in Paragraph 103.

104. Paragraph 104 purports to quote excerpts of Dilling's remarks at the Town Meeting, for which no recording or transcript is attached to the FAC; Dilling notes the omission, states that the recording speaks for itself, and denies any characterization inconsistent with it.

105. Paragraph 105 references a December 22, 2025 offer of a "Nuclear Physics Special

Advisor" position, which Plaintiff did not attach to the FAC; Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Dilling admits that on or about December 22, 2025, JSA offered Plaintiff a Nuclear Physics Special Advisor position. Dilling denies that his December 18 remarks were "crafted for audience consumption," denies that the offer was discriminatory or retaliatory, and denies the remaining allegations in Paragraph 105.

106. The allegations in Paragraph 106 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

107. Dilling denies that he made false or defamatory statements and denies that Plaintiff was "forced" to take any action. Paragraph 107 references an email issued by Plaintiff, which Plaintiff did not attach to the FAC; Dilling notes the omission and states that the document speaks for itself. Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 107 and therefore denies them.

**G. Dilling's Private Defamatory Statements to Leaders of the Field**

108. Dilling denies the allegations in Paragraph 108. Dilling further states that Paragraph 108 fails to identify the speakers' audience, the dates, the words used, or the manner of any alleged publication with the particularity required to respond, and on that additional basis Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations and denies them.

109. Dilling denies the allegations in Paragraph 109.

**H. Continued Retaliation: The December 22, 2025, Demotion Offer**

110. Paragraph 110 references a December 22, 2025 "conversion position" offer, which Plaintiff did not attach to the FAC; Dilling notes the omission, states that the document speaks for

itself, and denies any characterization inconsistent with its contents. The allegation that the offer was retaliatory states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it. Dilling denies the remaining allegations in Paragraph 110.

111. Dilling admits that Plaintiff did not accept the Nuclear Physics Special Advisor position. Dilling denies the remaining allegations in Paragraph 111.

112. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 112 and therefore denies them.

113. Paragraph 113 references a January 5, 2026 email, which Plaintiff did not attach to the FAC; Dilling notes the omission and states that the document speaks for itself. The allegation that the email was a "protected act" states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it. Dilling denies that Plaintiff experienced discrimination or retaliation and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 113, and therefore denies them.

**I. JSA/SURA Retaliate Against Dr. Keppel by Failing to Timely Provide COBRA Notices**

114. The allegations in Paragraph 114 are not directed at Dilling, and no response from Dilling is required. To the extent a response is required, Dilling incorporates his responses to Paragraphs 7 and 71 and denies any remaining allegations in Paragraph 114.

115. The allegations in Paragraph 115 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

116. The allegations in Paragraph 116 are not directed at Dilling. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116 and therefore denies them.

117. The allegations in Paragraph 117 state legal conclusions and are not directed at

Dilling; no response is required. To the extent a response is required, Dilling denies them.

118. Paragraph 118 references a Form 5500, which Plaintiff did not attach to the FAC; Dilling notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegations regarding plan sponsorship and administrator status state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 118 and therefore denies them.

119. The allegations in Paragraph 119 describing COBRA's requirements state legal conclusions to which no response is required; the statute speaks for itself. The remaining allegations are not directed at Dilling, and Dilling lacks knowledge or information sufficient to form a belief about their truth and therefore denies them.

120. The allegations in Paragraph 120 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about their truth and therefore denies them.

121. The allegations in Paragraph 121 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

122. The allegations in Paragraph 122 are not directed at Dilling. Dilling lacks knowledge or information sufficient to form a belief about their truth and therefore denies them.

123. The allegations in Paragraph 123 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

124. The allegations in Paragraph 124 are not directed at Dilling. The allegation that the

conduct is evidence of discrimination and retaliation states a legal conclusion to which no response is required; to the extent a response is required, Dilling denies it. Dilling lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 124, including the unnamed male comparator, and therefore denies them.

**J. JSA/SURA Retaliate Against Dr. Keppel by Denying Access to Her Retirement Funds**

125. The allegations in Paragraph 125 are not directed at Dilling and state legal conclusions regarding plan status, sponsorship, administration, and fiduciary status to which no response is required. Paragraph 125 also references the plan's participant communications, which Plaintiff did not attach to the FAC; Dilling notes the omission. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 125 and therefore denies them.

126. Paragraph 126 references the terms of the 401(k) Plan and audited financial statements, which Plaintiff did not attach to the FAC; Dilling notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations regarding Plaintiff's entitlement to distributions state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 126 and therefore denies them.

127. The allegations in Paragraph 127 are not directed at Dilling. To the extent a response is required, Dilling denies that he denied Plaintiff access to her retirement funds and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 127, and therefore denies them.

128. The allegations in Paragraph 128 are not directed at Dilling. Plaintiff did not attach

any withdrawal request or TIAA denial to the FAC, and Dilling notes the omission. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 128 and therefore denies them.

129. The allegations in Paragraph 129 are not directed at Dilling. Plaintiff did not attach any withdrawal request or TIAA denial to the FAC, and Dilling notes the omission. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 129 and therefore denies them.

130. The allegations in Paragraph 130 are not directed at Dilling. Plaintiff did not attach any withdrawal request or TIAA denial to the FAC, and Dilling notes the omission. Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 130 and therefore denies them.

131. The allegations in Paragraph 131 are not directed at Dilling. Dilling incorporates his response to Paragraph 71 regarding the Termination Notice and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 131, and therefore denies them.

132. The allegations in Paragraph 132 state legal conclusions to which no response is required. To the extent the allegations are directed at Dilling as one of the "Defendants," Dilling denies that he made any assertion to TIAA and denies the allegations in Paragraph 132.

133. The allegations in Paragraph 133 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

134. The allegations in Paragraph 134 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling denies

them.

135. The allegations in Paragraph 135 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them and lacks knowledge or information sufficient to form a belief about the treatment of other employees' retirement funds.

**K. Dr. Keppel's Separation from JSA/SURA and Ongoing Harm**

136. Dilling denies the allegations in Paragraph 136.

## CAUSES OF ACTION

### COUNT I
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant JSA)**

137. In response to Paragraph 137, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

138–142. Count I is asserted against JSA only. The allegations in Paragraphs 138 through 142 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them, including any allegation that he engaged in discriminatory conduct, and denies that Plaintiff is entitled to any relief.

### COUNT II
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant SURA)**

143. In response to Paragraph 143, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

144–148. Count II is asserted against SURA only. The allegations in Paragraphs 144 through 148 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

**COUNT III**
**Hostile Work Environment Based on Sex in Violation of Title VII**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant JSA)**

149. In response to Paragraph 149, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

150–153. Count III is asserted against JSA only. The allegations in Paragraphs 150 through 153 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them, specifically denies that he created a hostile work environment or engaged in malicious or reckless conduct, and states that Title VII does not provide for individual liability or punitive damages against him.

**COUNT IV**
**Hostile Work Environment Based on Sex in Violation of Title VII**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant SURA)**

154. In response to Paragraph 154, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

155–158. Count IV is asserted against SURA only. The allegations in Paragraphs 155 through 158 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them, including that he engaged in any discriminatory action.

**COUNT V**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-3(a)**
**(Against Defendant JSA)**

159. In response to Paragraph 159, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

160–165. Count V is asserted against JSA only. The allegations in Paragraphs 160 through 165 state legal conclusions to which no response is required. To the extent a response is

required, Dilling denies them, specifically denies that he engaged in retaliatory conduct or made false or defamatory statements, and denies that any protected activity was a but-for cause of any action he took.

**COUNT VI**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-3(a)**
**(Against Defendant SURA)**

166. In response to Paragraph 166, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

167–172. Count VI is asserted against SURA only. The allegations in Paragraphs 167 through 172 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them, including that he hosted the Town Meeting "on behalf of SURA" for any retaliatory purpose or made false or defamatory statements.

**COUNT VII**
**Gender Discrimination and Hostile Work Environment in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant JSA)**

173. In response to Paragraph 173, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

174–178. Count VII is asserted against JSA only. The allegations in Paragraphs 174 through 178 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them, specifically denies the alleged gender-based conduct attributed to him, and states that the VHRA does not provide for individual liability against him.

**COUNT VIII**
**Gender Discrimination and Hostile Work Environment in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant SURA)**

179. In response to Paragraph 179, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

180–184. Count VIII is asserted against SURA only. The allegations in Paragraphs 180 through 184 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

**COUNT IX**
**Retaliation in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant JSA)**

185. In response to Paragraph 185, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

186–190. Count IX is asserted against JSA only. The allegations in Paragraphs 186 through 190 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them, specifically denies that he engaged in retaliatory conduct or made false or defamatory statements, and denies that any protected activity was a but-for cause of any action he took.

**COUNT X**
**Retaliation in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant SURA)**

191. In response to Paragraph 191, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

192–196. Count X is asserted against SURA only. The allegations in Paragraphs 192 through 196 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

**COUNT XI**
**Gender Discrimination, Hostile Work Environment, and Retaliation in Violation of the District of Columbia Human Rights Law**

**D.C. Code §§ 2-1401.01 et seq.**
**(Against All Defendants)**

197. In response to Paragraph 197, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

198. The allegations in Paragraph 198 state legal conclusions to which no response is required. The DCHRA speaks for itself, and Dilling denies any characterization inconsistent with its terms. To the extent a response is required, Dilling denies the allegations in Paragraph 198 and denies that the DCHRA applies to Plaintiff's employment in Virginia.

199. The allegations in Paragraph 199 that Defendants are employers subject to the DCHRA and that the facts "giv[e] rise to claims under D.C. law" state legal conclusions to which no response is required; to the extent a response is required, Dilling denies them. Dilling denies that any discriminatory or retaliatory decision occurred, denies that the decisions concerning Plaintiff were made in or transmitted from the District of Columbia, and denies that SURA's offices functioned as the hub for the management of Jefferson Lab. Paragraph 199 references the Operations Audit report, the Leadership Participation Agreement, and SURA's benefit-plan filings, none of which Plaintiff attached to the FAC; Dilling notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. Dilling incorporates his responses to Paragraphs 29 and 31 regarding the search committee and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 199 regarding Hearne's and SURA's activities, and therefore denies them.

200. Dilling denies the allegations in Paragraph 200.

201. The allegations in Paragraph 201 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them, denies that he aided, abetted, invited, compelled, or coerced any unlawful discriminatory practice, and denies that he is

individually liable under D.C. Code § 2-1402.62.

202. Dilling denies the allegations in Paragraph 202 and denies that Plaintiff is entitled to any relief from him.

**COUNT XII**
**Post-Employment Defamation Per Se**
**(Virginia Common Law)**
**(Against Defendants Dilling, JSA, and SURA)**

203. In response to Paragraph 203, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

204. Dilling incorporates his responses to Paragraphs 10, 91, and 92. Dilling admits that on or about December 18, 2025, he participated in a Town Meeting in the laboratory's auditorium that was also made available online. The allegations that Dilling acted within the scope of his authority and on behalf of JSA and SURA state legal conclusions to which no response is required; to the extent a response is required, Dilling denies them. Dilling lacks knowledge or information sufficient to form a belief about the identity of the attendees and their prior work with Plaintiff and therefore denies the remaining allegations in Paragraph 204.

205. Dilling denies the allegations in Paragraph 205. Dilling further states that the FAC does not elsewhere allege any statement concerning safety "yellow card" warnings, that Plaintiff has not attached any recording or transcript of the Town Meeting to the FAC, and that Dilling denies that he identified Plaintiff as the "line management" responsible for any safety or budget matter.

206. Dilling denies the allegations in Paragraph 206, including that he "commissioned" the Operations Audit. Paragraph 206 references the written audit report and the external review report, neither of which Plaintiff attached to the FAC; Dilling notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents.

207. The allegations in Paragraph 207 state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them.

208. The allegation in Paragraph 208 that Dilling acted with "actual malice" states a legal conclusion to which no response is required. To the extent a response is required, Dilling denies the allegations in Paragraph 208.

209. The allegations in Paragraph 209 regarding privilege state legal conclusions to which no response is required. To the extent a response is required, Dilling denies them. Dilling further states that Paragraph 209 references alleged "private publications to Shepherd, Napolitano, and Milner," individuals who are not identified anywhere else in the FAC, without alleging the date, content, or manner of any such publication. Dilling denies that he made any defamatory statement to those individuals and otherwise lacks knowledge or information sufficient to form a belief about the truth of those allegations, and therefore denies them.

210. The allegations in Paragraph 210 regarding vicarious liability, authorization, and ratification state legal conclusions to which no response is required. To the extent a response is required, Dilling denies the allegations in Paragraph 210.

211. Dilling denies the allegations in Paragraph 211 and denies that Plaintiff is entitled to compensatory, presumed, or punitive damages.

**COUNT XIII**
**Failure to Provide Timely COBRA Notice**
**29 U.S.C. § 1166; 29 U.S.C. § 1132(c)**
**(Against Defendants JSA and SURA)**

212. In response to Paragraph 212, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

213–219. Count XIII is asserted against JSA and SURA only. The allegations in Paragraphs 213 through 219 are not directed at Dilling and state legal conclusions to which no

response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the factual allegations and therefore denies them, and denies the remaining allegations.

**COUNT XIV**
**Interference with ERISA Rights in Violation of ERISA § 510**
**29 U.S.C. § 1140; 29 U.S.C. § 1132(a)(3)**
**(Against Defendant JSA)**

220. In response to Paragraph 220, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

221–226. Count XIV is asserted against JSA only. The allegations in Paragraphs 221 through 226 are not directed at Dilling and state legal conclusions to which no response is required. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the factual allegations and therefore denies them, and denies the remaining allegations.

**COUNT XV**
**Interference with and Denial of ERISA Rights in Violation of ERISA**
**29 U.S.C. §§ 1104(a)(1), 1140, 1132(a)(1)(B), 1132(a)(3)**
**(Against Defendant SURA)**

227. In response to Paragraph 227, Dilling incorporates his responses to all preceding paragraphs as if fully set forth herein.

228–233. Count XV is asserted against SURA only. The allegations in Paragraphs 228 through 233 are not directed at Dilling and state legal conclusions to which no response is required. Paragraph 229 references a February 26, 2026 TIAA service notification and Form 5500 returns, which Plaintiff did not attach to the FAC; Dilling notes the omission and states that the documents speak for themselves. To the extent a response is required, Dilling lacks knowledge or information sufficient to form a belief about the truth of the factual allegations and therefore denies them, and denies the remaining allegations.

## PRAYER FOR RELIEF

234. Dilling denies that Plaintiff is entitled to any of the relief requested in Paragraph 234, including subparagraphs (a) through (l), and denies that Plaintiff is entitled to any relief whatsoever from him.

## DEMAND FOR JURY TRIAL

235. Paragraph 235 is a jury demand to which no response is required.

## GENERAL DENIAL

Dilling denies each and every allegation in the FAC not expressly admitted above, and denies that Plaintiff is entitled to judgment or any relief against Dilling.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof he would not otherwise bear, Dilling asserts the following defenses and reserves the right to amend this Answer to assert additional defenses as they become known through discovery.

1. The FAC fails, in whole or in part, to state a claim against Dilling upon which relief can be granted.

2. Any claim against Dilling in his "official capacity" is duplicative of the claims against JSA and SURA and should be dismissed.

3. Plaintiff's claims are barred to the extent they rest on statements or acts occurring outside the applicable limitations periods, and to the extent claims or new allegations in the FAC do not relate back to the original complaint.

4. Dilling did not commit, direct, or knowingly assist any discriminatory or retaliatory practice prohibited by the DCHRA. His corporate title or supervisory position, standing alone, does not establish that he engaged in conduct giving rise to individual liability.

5. Plaintiff's DCHRA claims against Dilling are barred, in whole or in part, to the extent they rest on alleged discriminatory or retaliatory conduct attributable to him that occurred outside the District of Columbia, where neither the challenged decisions nor their effects occurred in the District. Dilling denies that any challenged discriminatory or retaliatory decision attributable to him was made in the District. Plaintiff lived and worked in Virginia, JSA is a Virginia company whose principal place of business is in Newport News, and the decisions affecting Plaintiff's employment were made and felt in Virginia, not the District of Columbia. Plaintiff cannot create a D.C. nexus by pointing to the location of a separate entity's offices.

6. Plaintiff's aiding-and-abetting claim fails to the extent Plaintiff cannot establish an underlying unlawful discriminatory practice or conduct by Dilling constituting aiding, abetting, inviting, compelling, coercing, or attempting to bring about a practice prohibited by the DCHRA.

7. Dilling's challenged employment-related actions were based on legitimate, nondiscriminatory and nonretaliatory business reasons. Dilling denies that Plaintiff's sex or protected activity caused any challenged action under the causation standard applicable to the particular claim, and denies that the stated business reasons were a pretext for unlawful discrimination or retaliation.

8. Plaintiff was not subjected to unwelcome sex-based harassment attributable to Dilling that, considered in its totality, was sufficiently severe or pervasive to create an objectively and subjectively hostile or abusive work environment. Dilling denies that he knowingly assisted any other defendant in creating or maintaining such an environment.

9. Dilling did not take or knowingly assist any materially adverse action because of Plaintiff's protected activity.

10. To the extent a challenged decision was made before Dilling learned of Plaintiff's

alleged protected activity, there is no causal connection between the alleged protected activity and subsequent adverse employment action.

11. Plaintiff's claims are barred to the extent that the alleged defamatory statements were true or substantially true.

12. Plaintiff's claims are barred to the extent that the alleged defamatory statements were statements about laboratory-wide operations rather than statements of fact of and concerning Plaintiff.

13. Plaintiff's claims are barred to the extent that the alleged defamatory statements were expressions of opinion that cannot be proven true or false.

14. Plaintiff's claims are barred to the extent that the alleged defamatory statements are protected by a qualified privilege and Plaintiff cannot overcome that privilege by clear and convincing evidence of common-law malice.

15. To the extent applicable, Dilling is immune from liability under Va. Code Ann. § 8.01-223.2 for statements regarding matters of public concern, including the safety and budgetary operation of a federally funded national laboratory, and is entitled to recover his reasonable attorney's fees and costs.

16. Plaintiff may not recover presumed or punitive damages absent clear and convincing proof of actual malice, and any punitive damages award is subject to the limit in Va. Code Ann. § 8.01-38.1.

17. Dilling did not know any statement to be false and did not act with reckless disregard for the truth or with negligence. Plaintiff therefore cannot recover presumed or punitive damages.

18. Plaintiff's defamation claim fails to the extent it is based on alleged private

statements to unidentified "leaders in the nuclear physics community," or to "Shepherd, Napolitano, and Milner," because the FAC does not identify the exact words spoken, when, where, and to whom they were published.

19. Plaintiff's damages, if any, are barred or must be reduced to the extent she failed to make reasonable efforts to mitigate them, including by declining the positions offered to her on November 21, 2025 and December 22, 2025.

20. Plaintiff has not suffered damages caused by Dilling. Any reputational or economic harm was caused by Plaintiff's own conduct, including her own public communications, or by the conduct of third parties for whom Dilling is not responsible, and any claimed damages are speculative.

21. Plaintiff is not entitled to punitive damages because Dilling did not act with malice, ill will, or reckless indifference.

22. Any award of punitive damages is subject to the limitations of Va. Code Ann. § 8.01-38.1 and the Due Process Clause of the United States Constitution.

23. Plaintiff may not recover duplicative damages for the same alleged injury under multiple counts or against multiple Defendants, and any recovery must be reduced by amounts received from any other source, including any other Defendant.

24. Plaintiff's claim is barred to the extent it was not the subject of a timely administrative charge naming Hearne, or to the extent Plaintiff elected to pursue her DCHRA claims before the D.C. Office of Human Rights.

25. Dilling reserves the right to amend this Answer to assert additional defenses as they become known through discovery or further investigation.

WHEREFORE, Defendant Jens Dilling respectfully requests that the Court dismiss the

FAC as to him with prejudice, enter judgment in his favor on all claims, award him his costs and reasonable attorney's fees as permitted by law, and grant such other relief as the Court deems just and proper.

Date: October 15, 2026

**JENS DILLING**

By: ________________/s/____________
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Jens Dilling*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including

Ronald J. Kim, Esq.
SOLOMON LAW FIRM, PLLC
300 Great Oaks Blvd, Suite 312
Albany, NY 12203
rkim@fedemploylaw.com

Dawn C. Stewart, Esq
SOLOMON LAW FIRM, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, D.C. 20036
dstewart@fedemploylaw.com

*Counsel for Plaintiff*

**JENS DILLING**

By: ______________/s/________________

Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com

*Counsel for Defendant Jens Dilling*

4936-3297-4553, v. 2