**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **DR. CYNTHIA E. KEPPEL,**<br><br>**PLAINTIFF,**<br><br>**V.**<br><br>**JEFFERSON SCIENCE ASSOCIATES, LLC, ET. AL,**<br><br>**DEFENDANTS.** | **Case No.: 4:26-CV-00112-MSD-LRL** |

**DEFENDANT SEAN HEARNE'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Sean Hearne ("Hearne") respectfully submits this Answer to Plaintiff Cynthia E. Keppel's ("Plaintiff") First Amended Complaint ("FAC").

Except as expressly admitted below, Hearne denies each and every allegation in the FAC, including any allegations contained in headings, subheadings, footnotes, unnumbered paragraphs, and the Prayer for Relief. The headings of the FAC are repeated below solely for ease of reference, and to the extent any heading is construed to contain factual allegations, Hearne denies them. Where Hearne states that a document speaks for itself, Hearne refers the Court to that document for its complete and accurate contents and denies any allegation inconsistent with it. Where the FAC references a document that Plaintiff did not attach, Hearne notes the omission. The only claim asserted against Hearne is Count XI. Allegations directed to defendants other than Hearne require no response from Hearne; to the extent a response is required, Hearne denies them.

## PRELIMINARY STATEMENT

1. Paragraph 1 is a jury demand to which no response is required.

2. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore denies them.

3. Hearne admits that, at all times relevant to the FAC before June 1, 2026, Jefferson Lab was managed and operated by JSA, and admits, upon information and belief, that before November 21, 2025, Plaintiff was employed by JSA as Associate Director for Experimental Nuclear Physics and that she was also identified as a Co-Director of the Biomedical Research & Innovation Center ("BRIC"). Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 3, including the length of Plaintiff's tenure and her career progression, and therefore denies them. To the extent Paragraph 3 alleges that SURA operated Jefferson Lab or employed Plaintiff, it states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it.

4. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 and therefore denies them.

5. Hearne admits Dilling was appointed as Laboratory Director of Jefferson Lab in or about May and President of JSA. The allegation that Dilling was appointed "by JSA/SURA" states a legal conclusion regarding the employment relationship to which no response is required; to the extent a response is required, Hearne denies it. Hearne denies any remaining allegations in Paragraph 5.

6. Hearne denies that he directed, participated in, or approved any gender-based discrimination against Plaintiff, and denies that the Operations Audit was discriminatory, was implemented "under the direction of SURA" for any discriminatory purpose, or was "targeted" at Plaintiff because of her sex. Hearne states that, after Jefferson Lab self-identified four operational events between August 25 and September 12, 2025, three of which involved the Physics Division, the Operations & Safety Committee of the JSA Board requested an external review of Experimental Nuclear Physics Division operations, which was conducted November 4–7, 2025.

Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6 concerning Dilling's day-to-day interactions with Plaintiff and her direct reports and at Directors' Council meetings, which Hearne did not attend, and therefore denies them. Hearne denies any remaining allegations in Paragraph 6.

7. Paragraph 7 purports to quote a written termination notice, which Plaintiff did not attach to the FAC. Hearne notes Plaintiff's failure to attach the document, states that the document speaks for itself, and denies any allegation inconsistent with its contents. The allegation that "JSA/SURA" terminated Plaintiff states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies that SURA terminated Plaintiff. Hearne admits, upon information and belief, that Plaintiff's leadership role ended on or about November 21, 2025. Hearne denies any remaining allegations in Paragraph 7, including the characterization "without warning."

8. Paragraph 8 purports to quote a document that Plaintiff did not attach to the FAC; Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Hearne denies the remaining allegations in Paragraph 8, including that the stated reason was false, pretextual, or rooted in discriminatory animus.

9. Hearne denies that any action was taken as a result of discriminatory hostility. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 9 and therefore denies them.

10. The allegations in Paragraph 10 that Defendants retaliated against and defamed Plaintiff state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them, and specifically denies that he retaliated against or defamed

Plaintiff. Hearne admits, upon information and belief, that a Jefferson Lab User Organization ("JLUO") Townhall took place on December 18, 2025. Hearne did not host, speak at, or plan the content of that meeting, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 10, including the composition of the audience and the timing of any challenge by Plaintiff's counsel, and therefore denies them.

11. Hearne denies the allegations in Paragraph 11, including any allegation that he intended to harm Plaintiff's reputation, relationships, or employment prospects.

12. Hearne denies the allegations in Paragraph 12 to the extent they are directed at him. The allegations in Paragraph 12 regarding COBRA notices and retirement funds are directed at JSA, SURA, and Dilling and state legal conclusions to which no response is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

13. Paragraph 13 describes Plaintiff's claims and the relief she seeks and states legal conclusions to which no response is required. To the extent a response is required, Hearne admits only that Plaintiff purports to bring this action under the cited statutes, states that the only claim asserted against him is under the DCHRA (Count XI), denies that he violated any law, and denies that Plaintiff is entitled to any relief from him.

## PARTIES

14. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff's residence and citizenship and therefore denies them. Hearne admits, upon information and belief, that Plaintiff was employed by JSA at Jefferson Lab, 12000 Jefferson Avenue, Newport News, Virginia. The allegation that Plaintiff was employed by JSA and SURA states a legal conclusion to which no response is required; to the extent a response is

required, Hearne denies that Plaintiff was employed by SURA.

15. Hearne admits that JSA is a limited liability company organized under the laws of the Commonwealth of Virginia with a primary place of business at 12000 Jefferson Avenue, Newport News, Virginia 23606. Hearne denies any remaining allegations in Paragraph 15.

16. Hearne admits that, from June 1, 2006 through May 31, 2026, JSA managed and operated Jefferson Lab under a Management and Operating contract with the DOE, Contract No. DE-AC05-06OR23177. Paragraph 16 references a contract with DOE that Plaintiff did not attach to the FAC; Hearne notes the omission and states that the contract speaks for itself.

17. The allegations in Paragraph 17 state legal conclusions to which no response is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about JSA's headcount and therefore denies the allegations, and specifically denies that JSA was an "employer" of Plaintiff within the meaning of the DCHRA.

18. Hearne admits that SURATech, LLC is a joint venture between SURA and Virginia Tech, and that, June 1, 2026, SURATech became fully responsible for the management and operation of Jefferson Lab under the DOE. The term "successor in interest" states a legal conclusion to which no response is required. To the extent a response is required, Hearne denies the remaining allegations in Paragraph 18.

19. Hearne admits that SURA is a Virginia nonstock corporation and a 501(c)(3) organization that, during the relevant period, maintained its headquarters at 1201 New York Avenue, NW, Suite 430, Washington, D.C. 20005.Hearne denies any remaining allegations in Paragraph 19.

20. The allegation in Paragraph 20 that JSA is a "subsidiary" of SURA states a legal conclusion to which no response is required. To the extent a response is required, Hearne admits

that JSA was formed in 2005 by SURA and CSC/ATD (later acquired by PAE), that SURA acquired PAE's interest in JSA in or about September 2021, and that SURA has since been JSA's sole member, and Hearne denies any remaining allegations in Paragraph 20.

21. The allegations in Paragraph 21 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

22. The allegations in Paragraph 22 that SURA and JSA operated as a "single, integrated enterprise" state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them. Paragraph 22 also references JSA's Administrative Manual, which Plaintiff did not attach to the FAC; Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Hearne admits that JSA was formed to hold the DOE Management and Operating contract for Jefferson Lab; that SURA, JSA's sole member, appoints JSA's Board of Directors through SURA's Chief Executive Officer under the JSA Operating Agreement; and that, under that agreement, SURA's Chief Executive Officer serves as Chair of the JSA Board, a position Hearne held during the relevant period. The JSA Operating Agreement speaks for itself, and Hearne denies any characterization inconsistent with its contents. Hearne denies any remaining allegations in Paragraph 22.

23. Paragraph 23 references Plaintiff's employment documents, W-2 wage statements, and TIAA retirement plan documents, none of which Plaintiff attached to the FAC. Hearne notes the omission and states that the documents speak for themselves. The allegation that the documents reflect Plaintiff's "employment by both entities" states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 23

and therefore denies them.

24. Paragraph 24 references and purports to quote Forms 5500 filed with the U.S. Department of Labor, which Plaintiff did not attach to the FAC. Hearne notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations regarding plan sponsorship and administration state legal conclusions to which no response is required. To the extent a response is required, Hearne admits that SURA is the adopting (signatory) entity of the SURA/Jefferson Science Associates 401(k) Plan and that JSA participates in that plan as a participating employer, and Hearne denies any remaining allegations in Paragraph 24.

25. Paragraph 25 references and purports to quote audited financial statements filed with a Form 5500, which Plaintiff did not attach to the FAC. Hearne notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations that the statements treat SURA and JSA "together as a single sponsoring employer" and that SURA "determined and administered a material term and condition" of Plaintiff's employment state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them and denies any remaining allegations in Paragraph 25.

26. Paragraph 26 references a Form 5500 and insurance contracts that Plaintiff did not attach to the FAC. Hearne notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations concerning the legal significance of SURA's certification and 29 C.F.R. § 2520.101-2 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 26, and therefore denies them.

27. Paragraph 27 references and characterizes a Leadership Participation Agreement dated April 7, 2022, which Plaintiff did not attach to the FAC. Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegation that Hearne's execution of the agreement is "direct documentary evidence" that SURA co-determined the essential terms and conditions of Plaintiff's employment states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne denies any remaining allegations in Paragraph 27.

28. The allegations in Paragraph 28 that SURA "participated directly in the employment decisions concerning Dr. Keppel" state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them. Paragraph 28 references an Operations Audit, a Review Team scope or deliverable document, and a written audit report, none of which Plaintiff attached to the FAC. Hearne notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents, including the characterization that the audit "confirm[ed]" that Plaintiff's division met all performance expectations and safety standards. As to subparagraph (a), Hearne states that the Operations & Safety Committee of the JSA Board requested and sponsored an independent review of Experimental Nuclear Physics Division operations, conducted November 4–7, 2025, following Jefferson Lab's self-identification of four operational events between August 25 and September 12, 2025, three of which involved the Physics Division, and that Hearne, as JSA Board Chair, reported to the JSA Board on November 14, 2025 the appointment of a task force to assess Physics Division safety challenges; Hearne denies that he ordered the review on behalf of SURA or for any discriminatory purpose. As to subparagraph (b), Hearne states that, as of the November 14, 2025 JSA Board meeting, the Operations & Safety Committee was reviewing a draft report to be

provided to laboratory leadership when finalized, and denies the remaining allegations of subparagraph (b). As to subparagraph (c), Hearne denies that he participated in any decision to withhold severance from Plaintiff and denies that he maintained any position to TIAA regarding Plaintiff's employment status. Hearne denies any remaining allegations in Paragraph 28.

29. The allegations in Paragraph 29 that SURA "exercised joint control" over and "co-determined" Plaintiff's terms and conditions of employment, and that SURA "retained authority over senior personnel decisions," state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them. Paragraph 29 references the DOE Management and Operating contract and JSA's governing documents, which Plaintiff did not attach to the FAC; Hearne notes the omission and states that the documents speak for themselves. Hearne admits that Dilling assumed the role of JSA President and Laboratory Director on June 30, 2025, after being identified as the proposed Laboratory Director through a search for which Hearne chaired the search committee, and admits that the Laboratory Director reports to the JSA Board of Directors, which Hearne chaired during the relevant period. Hearne denies any remaining allegations in Paragraph 29.

30. Hearne denies that SURA's Washington, D.C. offices functioned as the administrative and governance hub for the management of Jefferson Lab. Hearne states that, during the relevant period, JSA Board meetings were held at Jefferson Lab in Newport News, Virginia, virtually, and, on occasion, at SURA's offices in Washington, D.C. Hearne denies any remaining allegations in Paragraph 30.

31. Hearne admits that he chaired the search committee for a Laboratory Director candidate in connection with the SURATech proposal for the Jefferson Lab Management and Operating contract, and that, as SURA's President and CEO, he extended a contingent offer to

Dilling on August 16, 2024. Hearne denies any remaining allegations in Paragraph 31.

32. Hearne admits that, during the relevant period, the Laboratory Director served as JSA's President, reported to the JSA Board of Directors, and was subject to the oversight of the JSA Board Chair under the JSA Operating Agreement. The remaining allegations in Paragraph 32, including that SURA "selected, supervised, and evaluated" the Laboratory Director and that the Laboratory Director "effected" Plaintiff's termination on SURA's behalf, state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them.

33. The allegations in Paragraph 33 state legal conclusions to which no response is required. To the extent a response is required, Hearne admits, upon information and belief, that SURA employed more than fifteen persons during the relevant period, and Hearne denies that SURA was an "employer" of Plaintiff within the meaning of Title VII, the VHRA, or the DCHRA.

34. The allegations in Paragraph 34 are not directed at Hearne. Hearne admits that Dilling is a natural person who served as Laboratory Director of Jefferson Lab and President of JSA beginning June 30, 2025, and who has served as SURATech's President and Laboratory Director since June 1, 2026. The allegation that Dilling's position is "held under appointment by JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne denies that Dilling engaged in gender discrimination, a hostile work environment, retaliation, or defamation, and denies any remaining allegations in Paragraph 34.

35. Hearne admits that he is a natural person and that, at all relevant times, he served as President and Chief Executive Officer of SURA, a position he has held since February 14, 2022. Hearne denies that he participated in or approved any discriminatory treatment of Plaintiff or any post-termination retaliatory conduct. Hearne admits only that Plaintiff purports to sue him

individually and in his official capacity, and denies that he is liable in either capacity. Hearne denies any remaining allegations in Paragraph 35.

**JURISDICTION AND VENUE**

36. The allegations in Paragraph 36 state legal conclusions to which no response is required. To the extent a response is required, Hearne states that no Title VII claim is asserted against him and denies that he violated Title VII.

37. The allegations in Paragraph 37 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them and reserves the right to ask the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c).

38. The allegations in Paragraph 38 state legal conclusions to which no response is required. To the extent a response is required, Hearne does not contest venue in this District but denies that any unlawful employment practice was committed. Notably, Paragraph 38 concedes that the alleged practices were committed principally in this District, i.e., in Virginia, not the District of Columbia.

39. Paragraph 39 references EEOC charges, a Notice of Right to Sue, and a Determination and Notice of Rights, none of which Plaintiff attached to the FAC. Hearne notes the omission and states that the documents speak for themselves. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 and therefore denies them. Hearne further states that, as alleged, the charges were filed against JSA and SURA only, and not against Hearne.

40. The allegations in Paragraph 40 state legal conclusions to which no response is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the dates of Plaintiff's receipt of any EEOC notice and therefore denies the

allegations, including that all administrative prerequisites have been satisfied.

## FACTUAL ALLEGATIONS

### A. Dr. Keppel's Thirty-Year Career at Jefferson Laboratory

41. The allegation that Plaintiff was hired "by JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 41 and therefore denies them.

42. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42 and therefore denies them.

43. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43 concerning the merger of experimental halls and Plaintiff's performance and therefore denies them. Plaintiff was appointed Associate Director for Experimental Physics in 2021. not addressed in the SURA Hearne docs reviewed:, whether Hearne interviewed her in Washington, D.C., and who made the appointment decision.] Hearne denies any remaining allegations in Paragraph 43.

44. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44 and therefore denies them. The allegation that Plaintiff was employed "by JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it.

45. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45 and therefore denies them.

46. Paragraph 46 references and purports to quote an April 23, 2024 merit-increase communication, a fiscal year 2024 Annual Performance Appraisal, JSA's published performance

scale and policies, the Leadership Participation Agreement, and the Operations Audit, none of which Plaintiff attached to the FAC. Hearne notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations that Stuart Henderson was an "employee of SURA," that Plaintiff's rating "exceeded the … contractual retention threshold," and that Plaintiff's performance met her employer's legitimate expectations state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them. Hearne denies that the Operations Audit was "ordered by SURA's own chief executive," incorporates his response to Paragraph 28, and denies the characterization of the audit's findings. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 46, including Plaintiff's appraisal history and any counseling or corrective action, and therefore denies them.

47. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 concerning the size and gender composition of the Directors' Council and therefore denies them. Hearne denies the characterization of the Directors' Council as "the principal governing and policy-making body" at Jefferson Lab.

**B. Customary Outside Scientific Engagement; Defendants' Selective Restriction of Dr. Keppel**

48. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48 regarding the customs and norms of laboratory leadership over time and therefore denies them.

49. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 and therefore denies them.

50. Hearne denies that he sought to restrict or limit Plaintiff's outside professional engagement because of her sex or treated her differently than any similarly situated male leader.

Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50 as to other Defendants and therefore denies them.

51. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff's communications with potential competing bidders and therefore denies them. Hearne denies any remaining allegations in Paragraph 51, including the characterization of Plaintiff's conduct as transparent and professional.

52. Hearne denies that he responded to Plaintiff with hostility and denies that he made the statement attributed to him in quotation marks. Paragraph 52 references a "purported non-compete document," which Plaintiff did not attach to the FAC; Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegation that the instrument was "expired" and "never been renewed" states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne denies that laboratory management and staff were "pressured" to sign any document and denies any remaining allegations in Paragraph 52.

53. Hearne denies the allegations in Paragraph 53 as to himself. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 53 and therefore denies them.

54. The allegations in Paragraph 54 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

### C. Dilling's Appointment and Immediate Creation of a Gender-Based Hostile Work Environment

55. Hearne admits that Dilling entered into an Employment Agreement dated April 29, 2025 to serve as Laboratory Director of Jefferson Lab and President of JSA, and that he assumed those roles on June 30, 2025. The allegation that the appointment was made "by JSA/SURA" states

a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it.

56. Hearne denies that Dilling created a hostile work environment for Plaintiff based on her gender. Hearne was not present for Dilling's day-to-day interactions with Plaintiff and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56 and therefore denies them.

57. The allegations in Paragraph 57 are not directed at Hearne. Hearne was not present for the interactions described and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57, and therefore denies them. Hearne specifically denies that any conduct described was based on Plaintiff's sex.

58. The allegations in Paragraph 58 are not directed at Hearne. Hearne was not present for the interactions described and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58, and therefore denies them. Hearne specifically denies that any conduct described was based on Plaintiff's sex.

59. The allegations in Paragraph 59 are not directed at Hearne. Hearne was not present for the interactions described and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 59, and therefore denies them. Hearne specifically denies that any conduct described was based on Plaintiff's sex.

60. The allegations in Paragraph 60 are not directed at Hearne. Hearne denies that Dilling engaged in discriminatory behavior and lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Directors' Council meetings and David Dean's statements and conduct, and therefore denies them.

61. The allegations in Paragraph 61 are not directed at Hearne. Hearne was not present

at the referenced meeting and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61, and therefore denies them.

62. The allegations in Paragraph 62 are not directed at Hearne. Hearne denies that Dilling engaged in discriminatory conduct and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62, and therefore denies them.

63. The allegations in Paragraph 63 are not directed at Hearne. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63 and therefore denies them, and specifically denies that any presenter selection was based on sex.

64. Hearne denies that the Operations Audit was discriminatory and denies that he directed Dilling to implement any audit for a discriminatory purpose. Hearne incorporates his response to Paragraph 28, and further states that Jefferson Lab conducted extended operational safety pauses in 2023 and 2024 and that, in 2025, a technical review of the CEBAF restart delay was also conducted. The allegation that the audit was a "voluntary action" states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne denies any remaining allegations in Paragraph 64.

**D. JSA and Dilling Attempt to Manufacture Pretextual Reasons for a False Basis for Dr. Keppel's Termination**

65. The allegations in Paragraph 65 are not directed at Hearne. Hearne denies that any Defendant sought to manufacture a justification for terminating Plaintiff. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 65, including the substance of Dilling's directive and any request by the Chief Communications Officer, and therefore denies them.

66. Hearne denies that he ordered any audit "in an effort to manufacture a non-discriminatory justification for terminating Dr. Keppel" and denies that the audit lacked legitimate

justification. Hearne states that the review of Experimental Nuclear Physics Division operations was requested by the JSA Board's Operations & Safety Committee after Jefferson Lab self-identified four operational events between August 25 and September 12, 2025, three of which involved the Physics Division and followed a Physics stand-down on September 15, 2025, and that the review was conducted November 4–7, 2025. Hearne denies any remaining allegations in Paragraph 66.

67. Hearne denies that the audit was discriminatory or pretextual. Paragraph 67 references a DOE annual operations "report card," which Plaintiff did not attach to the FAC; Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents, including the attribution of the ratings to work "largely performed" by Plaintiff's division. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 67, including whether the audit was the first of its kind at Jefferson Lab, and therefore denies them.

68. Hearne denies that the audit had a discriminatory purpose or was intended to tarnish Plaintiff's reputation or supply a pretextual rationale for her termination. Paragraph 68 characterizes the audit's results, but Plaintiff did not attach the audit report to the FAC; Hearne notes the omission, states that the report speaks for itself, and denies any characterization inconsistent with its contents. Hearne incorporates his response to Paragraph 64. Hearne denies any remaining allegations in Paragraph 68.

69. Hearne incorporates his responses to Paragraphs 28 and 64, and states that the JSA Board's Operations & Safety Committee also sponsored an independent Supplier Engagement Assist Visit, completed in April 2026. Hearne denies that the selection of the Physics Division for review was based on the sex of its leader and denies any remaining allegations in Paragraph 69.

70. The allegations in Paragraph 70 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them. Hearne specifically denies that any audit he ordered or authorized was gender-based discrimination or an attempt to manufacture a pretextual basis for Plaintiff's termination.

**E. Dr. Keppel's Unlawful Termination on November 21, 2025**

71. Paragraph 71 purports to quote a written Termination Notice, which Plaintiff did not attach to the FAC. Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Hearne admits, upon information and belief, that on or about November 21, 2025, the Laboratory Director provided Plaintiff with written notice removing her from her Associate Director role Hearne denies that he or SURA directed or approved any discriminatory termination and denies any remaining allegations in Paragraph 71.

72. Paragraph 72 purports to quote the Termination Notice, which Plaintiff did not attach to the FAC. Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents.

73. Hearne denies the allegations in Paragraph 73, including that Dilling's evaluation of Plaintiff's leadership was discriminatory or infected by gender bias.

74. The allegations in Paragraph 74 are not directed at Hearne. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74 concerning communications between Dilling and Plaintiff and therefore denies them.

75. The allegations in Paragraph 75 state legal conclusions to which no response is required. Paragraph 75 also references the Jefferson Laboratory Code of Conduct, the Administrative Manual, and "standard Human Resource practices," none of which Plaintiff attached to the FAC or identified with specificity; Hearne notes the omission and states that the

documents speak for themselves. To the extent a response is required, Hearne denies the allegations in Paragraph 75.

76. The allegations in Paragraph 76 are not directed at Hearne, and no response from Hearne is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76 and therefore denies them.

77. The allegations in Paragraph 77 are not directed at Hearne. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77 concerning statements made by the head of JSA Human Resources and therefore denies them. The characterization of the termination as “immediate and irreversible” states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it.

78. Paragraph 78 references and purports to quote an unsigned letter dated November 21, 2025, offering Plaintiff an individual contributor role, which Plaintiff did not attach to the FAC. Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents, including the characterization of the non-disparagement provision as “sweeping.”

79. Hearne denies the allegations in Paragraph 79.

80. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff rejected the offer and therefore denies it. Hearne denies the remaining allegations in Paragraph 80, including that acceptance would have required any false statement or that the offered terms were discriminatory or retaliatory.

81. The allegations in Paragraph 81 state legal conclusions to which no response is required. Paragraph 81 also references unidentified “federal government contract regulations.” To

the extent a response is required, Hearne denies the allegations in Paragraph 81.

82. Hearne denies that any decision was discriminatory and denies that Plaintiff's replacement was less qualified. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 82, including the qualifications of Plaintiff's deputy and the composition of the Directors' Council and senior supervisors, and therefore denies them.

83. Hearne denies that Dr. Haiyan Gao and Dr. Susan Seestrom served on a SURA Board of Trustees during the relevant period. Hearne admits that Dr. Seestrom served on the JSA Board of Directors and as Chair of its Science & Technology Mission Committee, and that Dr. Gao served as an advisory member of that committee. Hearne denies that he or Dilling had any obligation to consult or inform individual board or committee members regarding a JSA personnel decision and denies any implication that the absence of such consultation evidences discrimination. Hearne denies any remaining allegations in Paragraph 83.

84. Hearne denies the allegations in Paragraph 84.

85. The allegations in Paragraph 85 regarding discrimination and a "pattern and practice" state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them. Hearne states, upon information and belief, that severance at JSA is governed by JSA's contract with the DOE. Hearne lacks knowledge or information sufficient to form a belief about the severance offered to other departing executives and therefore denies the remaining allegations in Paragraph 85.

86. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86, including David Dean's departure and severance, the terms of any 2026 reduction in force, and the salary differential of the position offered to Plaintiff, and

therefore denies them. Hearne specifically denies that Plaintiff is similarly situated to employees affected by a reduction in force.

87. The allegations in Paragraph 87 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them. Hearne specifically denies that he directed any hostile work environment.

**F. Dilling's Post-Termination Retaliatory and Defamatory Statements to the Scientific Community That Dr. Keppel Had Served with Distinction for Thirty Years**

88. The allegation in Paragraph 88 that Plaintiff engaged in protected activity states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne lacks knowledge or information sufficient to form a belief about when Plaintiff retained counsel and therefore denies the remaining allegations in Paragraph 88.

89. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 89 and therefore denies them. Plaintiff did not attach any November 26, 2025 communication to the FAC, and Hearne notes the omission.

90. Paragraph 90 references and purports to quote a December 3, 2025 letter from Plaintiff's counsel to JSA's General Counsel, which Plaintiff did not attach to the FAC. Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Hearne denies that the letter's assertions are accurate, and states that the letter was addressed to JSA's General Counsel and that JSA responded by letter dated December 9, 2025. The allegations that JSA is SURA's "subsidiary" and that SURA was made aware of "protected actions" state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them. Hearne denies any remaining allegations in Paragraph 90.

91. The allegations in Paragraph 91 are directed principally at Dilling. Hearne denies

that the Town Meeting was retaliatory, discriminatory, or defamatory, and denies that he or SURA organized the Town Meeting. Hearne admits, upon information and belief, that a Jefferson Lab User Organization Townhall took place on December 18, 2025. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the number, identity, and employment of attendees and their prior work with Plaintiff, and therefore denies them. Hearne denies the remaining allegations in Paragraph 91.

92. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 92 and therefore denies them.

93. Paragraph 93 purports to quote selected excerpts of Dilling's remarks at the Town Meeting. Plaintiff did not attach any recording or transcript of the Town Meeting to the FAC; Hearne notes the omission, states that the recording or transcript speaks for itself, and denies any characterization inconsistent with it, including any quotation taken out of context. Hearne denies that the remarks "directly referred to" Plaintiff and denies that any statement was false. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 93 and therefore denies them.

94. The allegations in Paragraph 94 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

95. The allegations in Paragraph 95 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

96. The allegations in Paragraph 96 are not directed at Hearne. Hearne lacks knowledge or information sufficient to form a belief about what each member of the audience understood and

therefore denies the allegations in Paragraph 96.

97. The allegations in Paragraph 97 are not directed at Hearne. To the extent a response is required, Hearne denies them.

98. The allegations in Paragraph 98 are not directed at Hearne. To the extent a response is required, Hearne denies them.

99. Paragraph 99 characterizes the November 2025 Operations Audit, which Plaintiff did not attach to the FAC; Hearne notes the omission, states that the audit report speaks for itself, and denies any characterization inconsistent with its contents. Hearne denies that he or SURA ordered the audit "as a pretextual exercise." Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the financial management of the Physics Division and Dilling's state of mind, and therefore denies them. Hearne denies the remaining allegations in Paragraph 99.

100. The allegations in Paragraph 100 are not directed at Hearne. Paragraph 100 references efficiency measurements, an external review report, the Operations Audit, and divisional budget allocations, none of which Plaintiff attached to the FAC; Hearne notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. Hearne denies that the Operations Audit was "ordered by Defendant Hearne/SURA" and incorporates his response to Paragraph 28. As to subparagraph (f), Hearne denies that SURA sets the laboratory's overhead rate, and states that the laboratory's indirect cost rates were reviewed by the JSA Board's Finance Committee and subject to DOE approval. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 100 and therefore denies them.

101. The allegations in Paragraph 101 are not directed at Hearne. Paragraph 101

references the Operations Audit results and the external review report, neither of which Plaintiff attached to the FAC; Hearne notes the omission and states that the documents speak for themselves. Hearne states that an outbrief of the Physics review was presented at the November 14, 2025 JSA Board meeting and that the Operations & Safety Committee was then reviewing a draft report to be provided to laboratory leadership when finalized. Hearne denies the remaining allegations in Paragraph 101.

102. The allegations in Paragraph 102 are not directed at Hearne. To the extent a response is required, Hearne denies them.

103. The allegations in Paragraph 103 regarding scope of employment, authorization, and ratification state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them, and specifically denies that he or SURA authorized or ratified any false or defamatory statement. Paragraph 103 also references the Operations Audit report and Review Team deliverable, which Plaintiff did not attach to the FAC; Hearne notes the omission and states that the documents speak for themselves. Hearne denies that he knew any statement to be false and denies the remaining allegations in Paragraph 103, including that the audit was "ordered by Hearne" or "reported in writing to SURA and Hearne," and incorporates his responses to Paragraphs 28 and 101.

104. Paragraph 104 purports to quote excerpts of Dilling's remarks at the Town Meeting, for which no recording or transcript is attached to the FAC; Hearne notes the omission, states that the recording speaks for itself, and denies any characterization inconsistent with it. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 104 and therefore denies them.

105. Paragraph 105 references a December 22, 2025 offer of a "Nuclear Physics Special

Advisor" position, which Plaintiff did not attach to the FAC; Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. Hearne states, upon information and belief, that employment options offered to Plaintiff in December 2025 were extended by JSA through its General Counsel. Hearne denies that the offer was discriminatory or retaliatory and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 105, and therefore denies them.

106. The allegations in Paragraph 106 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

107. The allegations in Paragraph 107 are not directed at Hearne. Paragraph 107 references an email issued by Plaintiff, which Plaintiff did not attach to the FAC; Hearne notes the omission and states that the document speaks for itself. Hearne denies that Plaintiff was "forced" to take any action and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 107, and therefore denies them.

**G. Dilling's Private Defamatory Statements to Leaders of the Field**

108. The allegations in Paragraph 108 are not directed at Hearne. Paragraph 108 fails to identify the recipients, the dates, the words used, or the manner of any alleged publication with the particularity required to respond, and on that basis Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 108 and therefore denies them.

109. Hearne denies the allegations in Paragraph 109. Hearne specifically denies that he directed Dilling, or anyone else, to seek out leaders in the nuclear physics community or to make any statement about Plaintiff.

**H. Continued Retaliation: The December 22, 2025, Demotion Offer**

110. Paragraph 110 references a December 22, 2025 "conversion position" offer, which Plaintiff did not attach to the FAC; Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegation that the offer was retaliatory states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 110 and therefore denies them.

111. Hearne lacks knowledge or information sufficient to form a belief about whether Plaintiff rejected the offer and therefore denies that allegation. Hearne denies the remaining allegations in Paragraph 111, including that the offer was discriminatory, retaliatory, or punitive.

112. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 112 and therefore denies them.

113. Paragraph 113 references a January 5, 2026 email, which Plaintiff did not attach to the FAC; Hearne notes the omission and states that the document speaks for itself. The allegation that the email was a "protected act" states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne denies that Plaintiff experienced discrimination or retaliation and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 113, and therefore denies them.

## I. JSA/SURA Retaliate Against Dr. Keppel by Failing to Timely Provide COBRA Notices

114. The allegations in Paragraph 114 are not directed at Hearne and state a legal conclusion to which no response is required. To the extent a response is required, Hearne incorporates his responses to Paragraphs 7 and 71, denies that SURA terminated Plaintiff, and denies any remaining allegations in Paragraph 114.

115. The allegations in Paragraph 115 state legal conclusions to which no response is

required. To the extent a response is required, Hearne denies them.

116. The allegations in Paragraph 116 are not directed at Hearne, and no response from Hearne is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116 and therefore denies them.

117. The allegations in Paragraph 117 are not directed at Hearne and state legal conclusions to which no response is required; the statute speaks for itself. To the extent a response is required, Hearne denies them.

118. Paragraph 118 references a Form 5500, which Plaintiff did not attach to the FAC; Hearne notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegations regarding plan sponsorship and administrator status state legal conclusions to which no response is required. To the extent a response is required, Hearne states that SURA and JSA participated in a Multiple Employer Welfare Arrangement for health and welfare benefits, and Hearne denies any remaining allegations in Paragraph 118.

119. The allegations in Paragraph 119 describing COBRA's requirements state legal conclusions to which no response is required; the statute speaks for itself. The remaining allegations are not directed at Hearne. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

120. The allegations in Paragraph 120 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about their truth and therefore denies them.

121. The allegations in Paragraph 121 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

122. The allegations in Paragraph 122 are not directed at Hearne, and no response from Hearne is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 122 and therefore denies them.

123. The allegations in Paragraph 123 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

124. The allegations in Paragraph 124 are not directed at Hearne. The allegation that the conduct is evidence of discrimination and retaliation states a legal conclusion to which no response is required; to the extent a response is required, Hearne denies it. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 124, including those concerning the unnamed male comparator, and therefore denies them.

**J. JSA/SURA Retaliate Against Dr. Keppel by Denying Access to Her Retirement Funds**

125. The allegations in Paragraph 125 are not directed at Hearne and state legal conclusions regarding plan status, sponsorship, administration, and fiduciary status to which no response is required. Paragraph 125 also references the plan’s participant communications, which Plaintiff did not attach to the FAC; Hearne notes the omission. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 125 and therefore denies them.

126. Paragraph 126 references the terms of the 401(k) Plan and audited financial

statements, which Plaintiff did not attach to the FAC; Hearne notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations regarding Plaintiff's entitlement to distributions state legal conclusions to which no response is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 126 and therefore denies them.

127. The allegations in Paragraph 127 are not directed at Hearne. To the extent a response is required, Hearne denies that he denied Plaintiff access to her retirement funds and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 127, and therefore denies them.

128. The allegations in Paragraph 128 are not directed at Hearne. Plaintiff did not attach any withdrawal request or TIAA denial to the FAC, and Hearne notes the omission. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 128 and therefore denies them.

129. The allegations in Paragraph 129 are not directed at Hearne. Plaintiff did not attach any withdrawal request or TIAA denial to the FAC, and Hearne notes the omission. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 129 and therefore denies them.

130. The allegations in Paragraph 130 are not directed at Hearne. Plaintiff did not attach any withdrawal request or TIAA denial to the FAC, and Hearne notes the omission. Hearne lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 130 and therefore denies them.

131. The allegations in Paragraph 131 are not directed at Hearne. Hearne incorporates

his response to Paragraph 71 regarding the Termination Notice. Hearne lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 131 and therefore denies them.

132. The allegations in Paragraph 132 state legal conclusions to which no response is required. To the extent the allegations are directed at Hearne as one of the "Defendants," Hearne denies that he made any assertion to TIAA regarding Plaintiff's employment status and denies the allegations in Paragraph 132.

133. The allegations in Paragraph 133 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

134. The allegations in Paragraph 134 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

135. The allegations in Paragraph 135 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them and lacks knowledge or information sufficient to form a belief about the treatment of other employees' retirement funds.

### K. Dr. Keppel's Separation from JSA/SURA and Ongoing Harm

136. Hearne denies the allegations in Paragraph 136, including that any conduct by Hearne caused Plaintiff any harm.

## CAUSES OF ACTION

### COUNT I
### Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e-2(a)
### (Against Defendant JSA)

137. In response to Paragraph 137, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

138–142. Count I is asserted against JSA only. The allegations in Paragraphs 138 through 142 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, and denies that Plaintiff is entitled to any relief from him.

**COUNT II**
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant SURA)**

143. In response to Paragraph 143, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

144–148. Count II is asserted against SURA only. The allegations in Paragraphs 144 through 148 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, specifically denies that he responded with hostility to, or selectively restricted, Plaintiff’s outside professional engagement or invoked any non-compete against her because of her sex, and states that Title VII does not provide for individual liability against him, and denies that Plaintiff is entitled to any relief from him.

**COUNT III**
**Hostile Work Environment Based on Sex in Violation of Title VII**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant JSA)**

149. In response to Paragraph 149, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

150–153. Count III is asserted against JSA only. The allegations in Paragraphs 150 through 153 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, and denies that Plaintiff is entitled to any

relief from him.

**COUNT IV**
**Hostile Work Environment Based on Sex in Violation of Title VII**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant SURA)**

154. In response to Paragraph 154, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

155–158. Count IV is asserted against SURA only. The allegations in Paragraphs 155 through 158 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, specifically denies that he authorized or ratified any hostile work environment or ordered any discriminatory or pretextual audit, and denies that Plaintiff is entitled to any relief from him.

**COUNT V**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-3(a)**
**(Against Defendant JSA)**

159. In response to Paragraph 159, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

160–165. Count V is asserted against JSA only. The allegations in Paragraphs 160 through 165 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, and denies that Plaintiff is entitled to any relief from him.

**COUNT VI**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-3(a)**
**(Against Defendant SURA)**

166. In response to Paragraph 166, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

167–172. Count VI is asserted against SURA only. The allegations in Paragraphs 167 through 172 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, specifically denies that he authorized or ratified any retaliatory conduct, and denies that any protected activity was a but-for cause of any action he took, and denies that Plaintiff is entitled to any relief from him.

**COUNT VII**
**Gender Discrimination and Hostile Work Environment in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant JSA)**

173. In response to Paragraph 173, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

174–178. Count VII is asserted against JSA only. The allegations in Paragraphs 174 through 178 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, and denies that Plaintiff is entitled to any relief from him.

**COUNT VIII**
**Gender Discrimination and Hostile Work Environment in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant SURA)**

179. In response to Paragraph 179, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

180–184. Count VIII is asserted against SURA only. The allegations in Paragraphs 180 through 184 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, specifically denies that he invoked an expired non-compete against Plaintiff or selectively restricted her outside engagement because of her sex, and states that the VHRA does not provide for individual liability against him,

and denies that Plaintiff is entitled to any relief from him.

**COUNT IX**
**Retaliation in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant JSA)**

185. In response to Paragraph 185, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

186–190. Count IX is asserted against JSA only. The allegations in Paragraphs 186 through 190 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, and denies that Plaintiff is entitled to any relief from him.

**COUNT X**
**Retaliation in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant SURA)**

191. In response to Paragraph 191, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

192–196. Count X is asserted against SURA only. The allegations in Paragraphs 192 through 196 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, and denies that Plaintiff is entitled to any relief from him.

**COUNT XI**
**Gender Discrimination, Hostile Work Environment, and Retaliation in Violation of the District of Columbia Human Rights Law**
**D.C. Code §§ 2-1401.01 et seq.**
**(Against All Defendants)**

197. In response to Paragraph 197, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

198. The allegations in Paragraph 198 state legal conclusions to which no response is

required. The DCHRA speaks for itself, and Hearne denies any characterization inconsistent with its terms. To the extent a response is required, Hearne denies the allegations in Paragraph 198 and denies that the DCHRA applies to Plaintiff's employment in Virginia.

199. The allegations in Paragraph 199 that Defendants are employers subject to the DCHRA and that the facts "giv[e] rise to claims under D.C. law" state legal conclusions to which no response is required; to the extent a response is required, Hearne denies them, and specifically denies that he was Plaintiff's employer. Hearne admits that, during the relevant period, SURA maintained its headquarters at 1201 New York Avenue, NW, Washington, D.C., and that Hearne is SURA's President and CEO. Hearne denies that any discriminatory or retaliatory decision occurred, denies that the decisions concerning Plaintiff "originated" in or were "transmitted from" the District of Columbia, denies that SURA's offices functioned as the hub for the management of Jefferson Lab, and denies that he participated in any decision to terminate Plaintiff, and states that JSA's May 15, 2026 termination letter was issued by Dilling as JSA President and Laboratory Director. Paragraph 199 references the Operations Audit report, the Leadership Participation Agreement, and SURA's benefit-plan filings, none of which Plaintiff attached to the FAC; Hearne notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. Hearne incorporates his responses to Paragraphs 27, 28, 29, and 31 regarding the Leadership Participation Agreement, the Operations Audit, and the search committee, and denies the remaining allegations in Paragraph 199.

200. The allegations in Paragraph 200 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them.

201. The allegations in Paragraph 201 state legal conclusions to which no response is required. To the extent a response is required, Hearne denies them, denies that he aided, abetted,

invited, compelled, or coerced any unlawful discriminatory practice, and denies that he is individually liable under D.C. Code § 2-1402.62.

202. Hearne denies the allegations in Paragraph 202 and denies that Plaintiff is entitled to any relief from him.

**COUNT XII**
**Post-Employment Defamation Per Se**
**(Virginia Common Law)**
**(Against Defendants Dilling, JSA, and SURA)**

203. In response to Paragraph 203, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

204–211. Count XII is asserted against Dilling, JSA, and SURA only. The allegations in Paragraphs 204 through 211 are not directed at Hearne and state legal conclusions to which no response is required. Paragraphs 205 and 206 reference the Town Meeting remarks, the written audit report, and the external review report, none of which Plaintiff attached to the FAC; Hearne notes the omission and states that the documents speak for themselves. To the extent a response is required, Hearne denies the allegations in Paragraphs 204 through 211, incorporates his response to Paragraph 101 regarding the status of the written report, denies that he made, authorized, or ratified any defamatory statement, and denies that Plaintiff is entitled to any relief from him.

**COUNT XIII**
**Failure to Provide Timely COBRA Notice**
**29 U.S.C. § 1166; 29 U.S.C. § 1132(c)**
**(Against Defendants JSA and SURA)**

212. In response to Paragraph 212, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

213–219. Count XIII is asserted against JSA and SURA only. The allegations in Paragraphs 213 through 219 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne lacks knowledge or information

sufficient to form a belief about the truth of the factual allegations and therefore denies them, and denies the remaining allegations.

**COUNT XIV**
**Interference with ERISA Rights in Violation of ERISA § 510**
**29 U.S.C. § 1140; 29 U.S.C. § 1132(a)(3)**
**(Against Defendant JSA)**

220. In response to Paragraph 220, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

221–226. Count XIV is asserted against JSA only. The allegations in Paragraphs 221 through 226 are not directed at Hearne and state legal conclusions to which no response is required. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of the factual allegations and therefore denies them, and denies the remaining allegations.

**COUNT XV**
**Interference with and Denial of ERISA Rights in Violation of ERISA**
**29 U.S.C. §§ 1104(a)(1), 1140, 1132(a)(1)(B), 1132(a)(3)**
**(Against Defendant SURA)**

227. In response to Paragraph 227, Hearne incorporates his responses to all preceding paragraphs as if fully set forth herein.

228–233. Count XV is asserted against SURA only. The allegations in Paragraphs 228 through 233 are not directed at Hearne and state legal conclusions to which no response is required. Paragraph 229 references a February 26, 2026 TIAA service notification and Form 5500 returns, which Plaintiff did not attach to the FAC; Hearne notes the omission and states that the documents speak for themselves. To the extent a response is required, Hearne lacks knowledge or information sufficient to form a belief about the truth of the factual allegations and therefore denies them, and denies the remaining allegations.

**PRAYER FOR RELIEF**

234. Hearne denies that Plaintiff is entitled to any of the relief requested in Paragraph 234, including subparagraphs (a) through (l), and denies that Plaintiff is entitled to any relief whatsoever from him.

## DEMAND FOR JURY TRIAL

235. Paragraph 235 is a jury demand to which no response is required.

## GENERAL DENIAL

Hearne denies each and every allegation in the FAC not expressly admitted above, and denies that Plaintiff is entitled to judgment or any relief against Hearne.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof he would not otherwise bear, Hearne asserts the following defenses and reserves the right to amend this Answer to assert additional defenses as they become known through discovery.

1. The FAC fails, in whole or in part, to state a claim against Hearne upon which relief can be granted.

2. Any claim against Hearne in his "official capacity" as President and CEO of SURA is duplicative of the claims against SURA and should be dismissed.

3. Plaintiff's claims are barred to the extent they rest on statements or acts occurring outside the applicable limitations periods, and to the extent claims or new allegations in the FAC do not relate back to the original complaint.

4. Hearne did not commit, direct, or knowingly assist any discriminatory or retaliatory practice prohibited by the DCHRA. His corporate title or supervisory position, standing alone, does not establish that he engaged in conduct giving rise to individual liability

5. Plaintiff's DCHRA claims against Hearne are barred, in whole or in part, to the

extent they rest on alleged discriminatory or retaliatory conduct attributable to him that occurred outside the District of Columbia, where neither the challenged decisions nor their effects occurred in the District. The alleged discriminatory and retaliatory acts did not occur in, and their effects were not felt in, the District of Columbia, and the location of SURA's headquarters or of Hearne's office does not extend the DCHRA to employment performed entirely in Virginia.

6. Plaintiff's aiding-and-abetting claim fails to the extent Plaintiff cannot establish an underlying unlawful discriminatory practice or conduct by Hearne constituting aiding, abetting, inviting, compelling, coercing, or attempting to bring about a practice prohibited by the DCHRA.

7. To the extent that any challenged employment-related actions are attributable to Hearne, they were based on legitimate, nondiscriminatory and nonretaliatory business reasons. Hearne denies that Plaintiff's sex or protected activity caused any challenged action under the causation standard applicable to the particular claim, and denies that the stated business reasons were a pretext for unlawful discrimination or retaliation

8. Plaintiff was not subjected to unwelcome sex-based harassment attributable to Hearne that, considered in its totality, was sufficiently severe or pervasive to create an objectively and subjectively hostile or abusive work environment. Hearne denies that he knowingly assisted any other defendant in creating or maintaining such an environment.

9. Hearne did not take or knowingly assist any materially adverse action because of Plaintiff's protected activity.

10. To the extent a challenged decision was made before Hearne learned of Plaintiff's alleged protected activity, there is no causal connection between the alleged protected activity and subsequent adverse employment action.

11. Plaintiff's claim is barred to the extent it was not the subject of a timely

administrative charge naming Hearne, or to the extent Plaintiff elected to pursue her DCHRA claims before the D.C. Office of Human Rights.

12. To the extent the FAC is construed to assert any other claim against Hearne, including defamation, such claim is not pled against him, and any claim based on statements made more than one year before the FAC is barred by Va. Code Ann. § 8.01-247.1.

13. Plaintiff's damages, if any, are barred or must be reduced to the extent she failed to make reasonable efforts to mitigate them, including by declining the positions offered to her on November 21, 2025 and December 22, 2025.

14. Plaintiff has not suffered damages caused by Hearne. Any harm was caused by Plaintiff's own conduct or by the conduct of others for whom Hearne is not responsible, and any claimed damages are speculative.

15. Plaintiff is not entitled to punitive damages because Hearne did not act with evil motive, actual malice, deliberate violation, or reckless indifference to Plaintiff's rights, and any award of punitive damages is subject to the limitations of applicable law and the Due Process Clause of the United States Constitution.

16. Plaintiff may not recover duplicative damages for the same alleged injury under multiple counts or against multiple Defendants, and any recovery must be reduced by amounts received from any other source, including any other Defendant.

17. Plaintiff's claims for damages may be barred or limited by after-acquired evidence.

18. Hearne reserves the right to amend this Answer to assert additional defenses as they become known through discovery or further investigation.

WHEREFORE, Defendant Sean Hearne respectfully requests that the Court dismiss the FAC as to him with prejudice, enter judgment in his favor on all claims, award him his costs and

reasonable attorney's fees as permitted by law, and grant such other relief as the Court deems just and proper.

Date: October 15, 2026

**SEAN HEARNE**

By: _______________/s/____________
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Sean Hearne*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including


Ronald J. Kim, Esq.
SOLOMON LAW FIRM, PLLC
300 Great Oaks Blvd, Suite 312
Albany, NY 12203
rkim@fedemploylaw.com

Dawn C. Stewart, Esq
SOLOMON LAW FIRM, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, D.C. 20036
dstewart@fedemploylaw.com


*Counsel for Plaintiff*

**SEAN HEARNE**

By: ________/s/________


Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com

*Counsel for Defendant Sean Hearne*