**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **DR. CYNTHIA E. KEPPEL,**<br><br>**PLAINTIFF,**<br><br>**V.**<br><br>**JEFFERSON SCIENCE ASSOCIATES, LLC, ET. AL,**<br><br>**DEFENDANTS.** | **Case No.: 4:26-CV-00112-MSD-LRL** |

**DEFENDANT SOUTHEASTERN UNIVERSITIES RESEARCH ASSOCIATION, INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Southeastern Universities Research Association, Inc. ("SURA") respectfully submits this Answer to Plaintiff Cynthia E. Keppel's ("Plaintiff") First Amended Complaint ("FAC").

Except as expressly admitted below, SURA denies each and every allegation in the FAC, including any allegations contained in headings, subheadings, footnotes, unnumbered paragraphs, and the Prayer for Relief. The headings of the FAC are repeated below solely for ease of reference, and to the extent any heading is construed to contain factual allegations, SURA denies them. Where SURA states that a document speaks for itself, SURA refers the Court to that document for its complete and accurate contents and denies any allegation inconsistent with it. Where the FAC references a document that Plaintiff did not attach, SURA notes the omission. The FAC's repeated use of the collective terms "JSA/SURA" and "Defendants" does not identify which entity is alleged to have taken a given action; to the extent such allegations attribute to SURA conduct of JSA, Dr. Dilling, or any other person, SURA denies them. Allegations directed to defendants other than SURA require no response from SURA; to the extent a response is required, SURA denies them.

## PRELIMINARY STATEMENT

1. Paragraph 1 is a jury demand to which no response is required.

2. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore denies them.

3. SURA admits that Jefferson Lab was operated by JSA under a contract with the DOE and that, at the time of her separation, Plaintiff held the positions of Associate Director for the Experimental Physics Division and co-Director of BRIC. SURA denies that it operated Jefferson Lab. The allegation that Jefferson Lab was operated by SURA, and any implication that SURA employed Plaintiff, state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 3, including the length of Plaintiff's tenure and her career progression, and therefore denies them.

4. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 and therefore denies them.

5. SURA admits that Dr. Dilling was appointed Laboratory Director of Jefferson Lab in or about May 2025 by JSA. The allegation that Dr. Dilling was appointed "by JSA/SURA" states a legal conclusion regarding the employment relationship to which no response is required; to the extent a response is required, SURA denies it. SURA denies any remaining allegations in Paragraph 5.

6. SURA denies that it directed, authorized, or ratified any gender-based discrimination against Plaintiff, and denies that the Operations Audit was discriminatory or was implemented "under the direction of SURA" for any discriminatory purpose. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning

Dr. Dilling's day-to-day interactions with Plaintiff and her direct reports and at Directors' Council meetings and therefore denies them. SURA denies any remaining allegations in Paragraph 6.

7. Paragraph 7 purports to quote a written termination notice, which Plaintiff did not attach to the FAC. SURA notes Plaintiff's failure to attach the document, states that the document speaks for itself, and denies any allegation inconsistent with its contents. The quoted notice, as alleged, was issued by JSA and concerned Plaintiff's employment "with Jefferson Science Associates, LLC." SURA denies that it terminated Plaintiff; the allegation that "JSA/SURA" terminated Plaintiff states a legal conclusion to which no response is required, and to the extent a response is required, SURA denies it. SURA denies any remaining allegations in Paragraph 7, including the characterization "without warning."

8. Paragraph 8 purports to quote a document that Plaintiff did not attach to the FAC; SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. SURA denies that it articulated any justification for a termination it did not make, and denies the remaining allegations in Paragraph 8, including that the stated reason was false, pretextual, or rooted in discriminatory animus.

9. SURA denies that any action was taken as a result of discriminatory hostility and denies that Plaintiff provided service "to JSA/SURA" as SURA's employee. The allegations concerning the conduct of JSA security personnel are not directed at SURA, and SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 9 and therefore denies them.

10. The allegations in Paragraph 10 that Defendants retaliated against and defamed Plaintiff state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA denies that it hosted, organized, or authorized the content of

the December 18, 2025 Town Meeting and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 10, including the composition of the audience and the timing of any challenge by Plaintiff's counsel, and therefore denies them.

11. SURA denies the allegations in Paragraph 11.

12. SURA denies the allegations in Paragraph 12 to the extent they are directed at SURA, including that it retaliated against Plaintiff, failed to provide any required COBRA notice, or barred her from accessing her retirement funds. SURA denies that Plaintiff's retirement funds were "held by JSA/SURA"; the plan's assets are held in trust or by the plan's recordkeeper/custodian. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 12 and therefore denies them.

13. Paragraph 13 describes Plaintiff's claims and the relief she seeks and states legal conclusions to which no response is required. To the extent a response is required, SURA admits only that Plaintiff purports to bring this action under the cited statutes, denies that it violated any law, and denies that Plaintiff is entitled to any relief from SURA.

**PARTIES**

14. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff's residence and citizenship and therefore denies them. SURA admits, upon information and belief, that Plaintiff worked at Jefferson Lab, 12000 Jefferson Avenue, Newport News, Virginia. The allegation that Plaintiff was employed by JSA and SURA states a legal conclusion to which no response is required; to the extent a response is required, SURA denies that it employed Plaintiff.

15. SURA admits, upon information and belief, that JSA is a Virginia limited liability company with its principal place of business at 12000 Jefferson Avenue, Newport News, Virginia

23606. SURA denies any remaining allegations in Paragraph 15.

16. SURA admits that, during the relevant period, JSA managed and operated Jefferson Lab under a contract with the DOE. Paragraph 16 references a contract with DOE that Plaintiff did not attach to the FAC; SURA notes the omission and states that the contract speaks for itself.

17. The allegations in Paragraph 17 are directed at JSA and state legal conclusions to which no response is required. To the extent a response is required, SURA lacks knowledge or information sufficient to form a belief about JSA's headcount and therefore denies the allegations, and denies that JSA was an "employer" of Plaintiff within the meaning of the DCHRA.

18. SURA admits SURATech, LLC, assumed operation of Jefferson Lab in June 2026. The term "successor in interest" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it.

19. SURA admits that it is a nonprofit corporation headquartered at 1201 New York Avenue, NW, Suite 430, Washington, D.C. 20005, and confirm its state of incorporation. SURA denies any remaining allegations in Paragraph 19.

20. The allegation in Paragraph 20 that JSA is a "subsidiary" of SURA states a legal conclusion to which no response is required. To the extent a response is required, and SURA denies that JSA is not a separate legal entity and denies any remaining allegations in Paragraph 20.

21. The allegations in Paragraph 21 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

22. The allegations in Paragraph 22 that SURA and JSA operated Jefferson Lab as a "single, integrated enterprise" and that SURA holds a "controlling" interest state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. Paragraph 22 also references JSA's Administrative Manual, which Plaintiff did not attach to the

FAC; SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. SURA denies any remaining allegations in Paragraph 22.

23. Paragraph 23 references Plaintiff's employment documents, W-2 wage statements, and TIAA retirement plan documents, none of which Plaintiff attached to the FAC. SURA notes the omission and states that the documents speak for themselves. SURA admits, upon information and belief, that Plaintiff's W-2 wage statements were issued by JSA. The allegations that Plaintiff's employment documents reflect her "employment by both entities" and that SURA is a "plan party" state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA denies any remaining allegations in Paragraph 23.

24. Paragraph 24 references and purports to quote Forms 5500 filed with the U.S. Department of Labor, which Plaintiff did not attach to the FAC. SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations regarding plan sponsorship and administration state legal conclusions to which no response is required. To the extent a response is required, SURA denies any allegation inconsistent with the Forms 5500 and denies that plan sponsorship or administration makes SURA Plaintiff's employer.

25. Paragraph 25 references and purports to quote audited financial statements filed with a Form 5500, which Plaintiff did not attach to the FAC. SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations that the statements treat SURA and JSA "together as a single sponsoring employer" and that SURA "determined and administered a material term and condition" of Plaintiff's employment state legal conclusions to which no response is required; to the extent a

response is required, SURA denies them. SURA denies any remaining allegations in Paragraph 25.

26. Paragraph 26 references a Form 5500 and insurance contracts that Plaintiff did not attach to the FAC. SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations concerning the legal significance of SURA's certification under 29 C.F.R. § 2520.101-2 and its purported representation regarding SURA's "control group" state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA denies any remaining allegations in Paragraph 26.

27. Paragraph 27 references and characterizes a Leadership Participation Agreement dated April 7, 2022, which Plaintiff did not attach to the FAC. SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegation that Hearne's execution of the agreement is "direct documentary evidence" that SURA co-determined the essential terms and conditions of Plaintiff's employment states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA denies any remaining allegations in Paragraph 27.

28. The allegations in Paragraph 28 that SURA "participated directly in the employment decisions concerning Dr. Keppel" state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. Paragraph 28 references an Operations Audit, a Review Team scope or deliverable document, and a written audit report, none of which Plaintiff attached to the FAC. SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents, including the characterization that the audit "confirm[ed]" that Plaintiff's division met all performance

expectations and safety standards. SURA denies any remaining allegations in Paragraph 28.

29. The allegations in Paragraph 29 that SURA "exercised joint control" over and "co-determined" Plaintiff's terms and conditions of employment, and that SURA "retained authority over senior personnel decisions," state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. Paragraph 29 references the DOE Management and Operating contract and JSA's governing documents, which Plaintiff did not attach to the FAC; SURA notes the omission and states that the documents speak for themselves. SURA admits that Dr. Dilling was appointed Laboratory Director in or about May 2025 following a search process chaired by Hearne; and reports to a Board of Directors. SURA denies any remaining allegations in Paragraph 29.

30. SURA denies that its Washington, D.C. offices functioned as the administrative and governance hub for the management of Jefferson Lab. SURA denies any remaining allegations in Paragraph 30.

31. SURA admits that Hearne chaired the search committee that selected Dr. Dilling as Laboratory Director. The allegations do not specify which candidate screenings, portfolio evaluations, and panel reviews are referred and as such SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 41 and therefore denies them. SURA denies any remaining allegations in Paragraph 31.

32. The allegations in Paragraph 32 do not clarify which period in time or which Laboratory Director is referred to and Dilling lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 and therefore denies them. The remaining allegations in Paragraph 32, including that SURA "selected, supervised, and evaluated" the Laboratory Director and that the Laboratory Director "effected" Plaintiff's termination on SURA's

behalf, state legal conclusions to which no response is required; to the extent a response is required, SURA denies them.

33. The allegations in Paragraph 33 state legal conclusions to which no response is required. To the extent a response is required, SURA denies that it was an "employer" of Plaintiff within the meaning of Title VII, the VHRA, or the DCHRA.

34. The allegations in Paragraph 34 are not directed at SURA. SURA admits that Dr. Dilling is a natural person who has served as Laboratory Director of Jefferson Lab since in or about May 2025. The allegation that Dr. Dilling's position is "held under appointment by JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA denies that Dr. Dilling engaged in gender discrimination, a hostile work environment, retaliation, or defamation, and denies any remaining allegations in Paragraph 34.

35. SURA admits that Hearne is a natural person and that, at all relevant times, he served as President and CEO of SURA. SURA denies that Hearne participated in or approved any discriminatory treatment of Plaintiff or any post-termination retaliatory conduct. SURA denies any remaining allegations in Paragraph 35.

**JURISDICTION AND VENUE**

36. The allegations in Paragraph 36 state legal conclusions to which no response is required. To the extent a response is required, SURA admits only that Plaintiff purports to bring claims arising under Title VII, and denies that it was Plaintiff's employer or violated Title VII.

37. The allegations in Paragraph 37 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them and reserves the right to ask the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c).

38. The allegations in Paragraph 38 state legal conclusions to which no response is

required. To the extent a response is required, SURA does not contest venue in this District but denies that any unlawful employment practice was committed. Notably, Paragraph 38 concedes that the alleged practices were committed principally in this District, i.e., in Virginia, not the District of Columbia.

39. Paragraph 39 references EEOC charges, a Notice of Right to Sue, and a Determination and Notice of Rights, none of which Plaintiff attached to the FAC. SURA notes the omission and states that the documents speak for themselves. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 39, including the dates of Plaintiff's receipt of any notice, and therefore denies them.

40. The allegations in Paragraph 40 state legal conclusions to which no response is required. To the extent a response is required, SURA lacks knowledge or information sufficient to form a belief about the dates of Plaintiff's receipt of any EEOC notice and therefore denies the allegations, including that all administrative prerequisites have been satisfied.

## FACTUAL ALLEGATIONS

### A. Dr. Keppel's Thirty-Year Career at Jefferson Laboratory

41. The allegation that Plaintiff was hired "by JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 41 and therefore denies them.

42. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42 and therefore denies them.

43. The allegation that "JSA/SURA" merged experimental halls under Plaintiff's leadership states a legal conclusion as to the employing entity to which no response is required; to

the extent a response is required, SURA denies it. Plaintiff was appointed Associate Director in 2021. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 43 and therefore denies them.

44. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44 and therefore denies them. The allegation that Plaintiff was employed by "JSA/SURA" or that SURA was her employer or joint employer states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it.

45. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45 and therefore denies them.

46. Paragraph 46 references and purports to quote an April 23, 2024 merit-increase communication, a fiscal year 2024 Annual Performance Appraisal, JSA's published performance scale and policies, the Leadership Participation Agreement, and the Operations Audit, none of which Plaintiff attached to the FAC. SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations that Stuart Henderson was an "employee of SURA," that Plaintiff's rating "exceeded the … contractual retention threshold," and that Plaintiff's performance met her employer's legitimate expectations state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA denies the characterization of the audit's findings and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 46, including Plaintiff's appraisal history and any counseling or corrective action, and therefore denies them.

47. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 concerning the size and gender composition of the Directors'

Council and therefore denies them. SURA denies the characterization of the Directors' Council as "the principal governing and policy-making body" at Jefferson Lab.

**B. Customary Outside Scientific Engagement; Defendants' Selective Restriction of Dr. Keppel**

48. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48 regarding the customs and norms of laboratory leadership over time and therefore denies them.

49. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 and therefore denies them.

50. SURA denies that it sought to restrict or limit Plaintiff's outside professional engagement because of her sex or treated her differently than any similarly situated male leader. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50 as to other Defendants and therefore denies them.

51. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff's communications with potential competing bidders and therefore denies them. SURA denies any remaining allegations in Paragraph 51.

52. SURA denies that Hearne responded to Plaintiff with hostility and denies that he made the statement attributed to him in quotation marks. Paragraph 52 references a "purported non-compete document," which Plaintiff did not attach to the FAC; SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegation that the instrument was "expired" and "never been renewed" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA denies that laboratory management and staff were "pressured" to sign any document and denies any remaining allegations in Paragraph 52.

53. SURA denies the allegations in Paragraph 53 as to SURA and Hearne. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 53 and therefore denies them.

54. The allegations in Paragraph 54 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

### C. Dilling's Appointment and Immediate Creation of a Gender-Based Hostile Work Environment

55. SURA admits that Dr. Dilling was appointed Laboratory Director of Jefferson Lab in or about May 2025, by JSA. The allegation that the appointment was made "by JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it.

56. SURA denies that Dr. Dilling created a hostile work environment for Plaintiff based on her gender. SURA was not present for Dr. Dilling's day-to-day interactions with Plaintiff and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56 and therefore denies them.

57. The allegations in Paragraph 57 are not directed at SURA. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57 and therefore denies them, and specifically denies that any conduct described was based on Plaintiff's sex. The allegation that the male executives were executives "of JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it.

58. The allegations in Paragraph 58 are not directed at SURA. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58 and therefore denies them, and specifically denies that any conduct described was based on Plaintiff's sex.

59. The allegations in Paragraph 59 are not directed at SURA. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 59 and therefore denies them, and specifically denies that any conduct described was based on Plaintiff's sex.

60. The allegations in Paragraph 60 are not directed at SURA. SURA denies that any conduct described was discriminatory and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 60, and therefore denies them.

61. The allegations in Paragraph 61 are not directed at SURA. SURA denies that any conduct described was discriminatory and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61, and therefore denies them.

62. The allegations in Paragraph 62 are not directed at SURA. SURA denies that any conduct described was discriminatory and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62, and therefore denies them.

63. The allegations in Paragraph 63 are not directed at SURA. SURA denies that any conduct described was discriminatory and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63, and therefore denies them.

64. SURA denies that the Operations Audit was discriminatory and denies that it or Hearne directed Dr. Dilling to implement any review for a discriminatory purpose. The allegation that the audit was a "voluntary action" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA denies any remaining allegations in Paragraph 64.

**D. JSA and Dilling Attempt to Manufacture Pretextual Reasons for a False Basis for Dr. Keppel's Termination**

65. The allegations in Paragraph 65 are not directed at SURA. SURA denies that any

Defendant sought to manufacture a justification for terminating Plaintiff. The allegation that the Chief Communications Officer was an officer "of JSA/SURA" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 65 and therefore denies them.

66. SURA denies that any audit was ordered "in an effort to manufacture a non-discriminatory justification for terminating Dr. Keppel" and denies that the audit lacked legitimate justification. SURA denies any remaining allegations in Paragraph 66.

67. SURA denies that the audit was discriminatory or pretextual. Paragraph 67 references a DOE annual operations "report card," which Plaintiff did not attach to the FAC; SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents, including the attribution of the ratings to work "largely performed" by Plaintiff's division. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 67, including whether the audit was the first of its kind at Jefferson Lab, and therefore denies them.

68. SURA denies that the audit had a discriminatory purpose or was intended to tarnish Plaintiff's reputation or supply a pretextual rationale for her termination. Paragraph 68 characterizes the audit's results, but Plaintiff did not attach the audit report to the FAC; SURA notes the omission, states that the report speaks for itself, and denies any characterization inconsistent with its contents. SURA denies any remaining allegations in Paragraph 68.

69. SURA notes the allegations in Paragraph 69 appear to have duplicative language and are thus not entirely clear in meaning. SURA denies that the selection of the Physics Division for review was based on the sex of its leader and denies any remaining allegations in Paragraph

69.

70. The allegations in Paragraph 70 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

**E. Dr. Keppel's Unlawful Termination on November 21, 2025**

71. Paragraph 71 purports to quote a written Termination Notice, which Plaintiff did not attach to the FAC. SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. SURA admits, upon information and belief, that JSA issued Plaintiff a written notice dated November 21, 2025. SURA denies that it or Hearne directed or approved any discriminatory termination and denies any remaining allegations in Paragraph 71.

72. Paragraph 72 purports to quote the Termination Notice, which Plaintiff did not attach to the FAC. SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents.

73. SURA denies the allegations in Paragraph 73.

74. The allegations in Paragraph 74 are not directed at SURA. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74 and therefore denies them.

75. The allegations in Paragraph 75 state legal conclusions to which no response is required. Paragraph 75 also references the Jefferson Laboratory Code of Conduct, the Administrative Manual, and "standard Human Resource practices," none of which Plaintiff attached to the FAC or identified with specificity; SURA notes the omission and states that the documents speak for themselves. To the extent a response is required, SURA denies the allegations in Paragraph 75.

76. The allegations in Paragraph 76 are directed at JSA. SURA denies that it authorized or ratified any conduct by JSA security personnel and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76, and therefore denies them.

77. The allegations in Paragraph 77 are not directed at SURA. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning statements by the head of JSA Human Resources and therefore denies them. The characterization of the termination as "immediate and irreversible" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it.

78. Paragraph 78 references and purports to quote an unsigned letter dated November 21, 2025, offering Plaintiff an individual contributor role, which Plaintiff did not attach to the FAC. SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents, including the characterization of the non-disparagement provision as "sweeping." The letter, as alleged, refers to "your termination from JSA," not SURA. SURA denes the remaining allegations in Paragraph 78.

79. SURA denies the allegations in Paragraph 79.

80. SURA lacks knowledge or information sufficient to form a belief about whether Plaintiff rejected the offer and therefore denies that allegation. SURA denies the remaining allegations in Paragraph 80, including that acceptance would have required any false statement or that the offered terms were discriminatory or retaliatory.

81. The allegations in Paragraph 81 state legal conclusions to which no response is required. Paragraph 81 also references unidentified "federal government contract regulations." To the extent a response is required, SURA denies the allegations in Paragraph 81.

82. SURA denies that any decision was discriminatory and denies that it made the

decisions described. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 82, including the qualifications of Plaintiff's replacement and deputy and the composition of the Directors' Council and senior supervisors, and therefore denies them.

83. SURA admits that Dr. Haiyan Gao and Dr. Sue Seestrom served on the SURA Board of Trustees during the relevant period. SURA denies that Dr. Dilling or Hearne had any obligation to consult or inform individual trustees regarding a JSA personnel decision and denies any implication that the absence of such consultation evidences discrimination. SURA denies any remaining allegations in Paragraph 83.

84. SURA denies the allegations in Paragraph 84.

85. The allegations in Paragraph 85 regarding discrimination and a "pattern and practice" state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA lacks knowledge or information sufficient to form a belief about the severance offered to other departing executives and therefore denies the remaining allegations in Paragraph 85.

86. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86, including David Dean's departure and severance, the terms of any 2026 reduction in force, and the salary differential of the position offered to Plaintiff, and therefore denies them. SURA specifically denies that Plaintiff is similarly situated to employees affected by a reduction in force.

87. The allegations in Paragraph 87 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

### F. Dilling's Post-Termination Retaliatory and Defamatory Statements to the Scientific Community That Dr. Keppel Had Served with Distinction for Thirty Years

88. The allegation in Paragraph 88 that Plaintiff engaged in protected activity states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA lacks knowledge or information sufficient to form a belief about when Plaintiff retained counsel and therefore denies the remaining allegations in Paragraph 88.

89. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 89 and therefore denies them. Plaintiff did not attach any November 26, 2025 communication to the FAC, and SURA notes the omission.

90. Paragraph 90 references and purports to quote a December 3, 2025 letter from Plaintiff's counsel to JSA's General Counsel, which Plaintiff did not attach to the FAC. SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. SURA denies that the letter's assertions are accurate. The allegations that JSA is SURA's "subsidiary," that the letter asserted claims "against the enterprise," and that SURA was made aware of "protected actions" state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA denies any remaining allegations in Paragraph 90.

91. SURA denies that the Town Meeting was retaliatory, discriminatory, or defamatory, and denies that it organized the Town Meeting. SURA admits, upon information and belief, that on or about December 18, 2025, Dr. Dilling participated in a Town Meeting at the laboratory. The allegation that attendees included "JSA/SURA employees" states a legal conclusion to which no response is required. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the number, identity, and employment of attendees and their prior work with Plaintiff, and therefore denies them. SURA denies the remaining allegations in Paragraph 91.

92. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 92 and therefore denies them.

93. Paragraph 93 purports to quote selected excerpts of Dr. Dilling's remarks at the Town Meeting. Plaintiff did not attach any recording or transcript of the Town Meeting to the FAC; SURA notes the omission, states that the recording or transcript speaks for itself, and denies any characterization inconsistent with it, including any quotation taken out of context. SURA denies that the remarks "directly referred to" Plaintiff, denies that any statement was false, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 93, and therefore denies them.

94. The allegation in Paragraph 94 that the statement was "defamatory" states a legal conclusion to which no response is required. To the extent a response is required, SURA denies the allegations in Paragraph 94.

95. The allegations in Paragraph 95 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them. SURA specifically denies that any statement attributed safety or budget failures to Plaintiff.

96. SURA denies the allegations in Paragraph 96 and lacks knowledge or information sufficient to form a belief about what each member of the audience understood.

97. SURA denies the allegations in Paragraph 97.

98. SURA denies the allegations in Paragraph 98.

99. Paragraph 99 characterizes the November 2025 Operations Audit, which Plaintiff did not attach to the FAC; SURA notes the omission, states that the audit report speaks for itself, and denies any characterization inconsistent with its contents. SURA denies that the audit was ordered "as a pretextual exercise," denies that any statement was knowingly or recklessly false,

and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 99, and therefore denies them.

100. SURA denies that the statements were false and denies that they carried the implication alleged. Paragraph 100 references efficiency measurements, an external review report, the Operations Audit, and divisional budget allocations, none of which Plaintiff attached to the FAC; SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. As to subparagraph (f), SURA denies that it sets the laboratory's overhead rate. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 100 and therefore denies them.

101. SURA denies the allegations in Paragraph 101. Paragraph 101 references the Operations Audit results and the external review report, neither of which Plaintiff attached to the FAC; SURA notes the omission and states that the documents speak for themselves.

102. SURA denies the allegations in Paragraph 102.

103. The allegations in Paragraph 103 regarding scope of employment, authorization, and ratification state legal conclusions to which no response is required; to the extent a response is required, SURA denies them, and specifically denies that Dr. Dilling was employed by SURA and that SURA authorized or ratified any false or defamatory statement. Paragraph 103 also references the Operations Audit report and Review Team deliverable, which Plaintiff did not attach to the FAC; SURA notes the omission and states that the documents speak for themselves. SURA denies that it knew any statement to be false and denies the remaining allegations in Paragraph 103.

104. Paragraph 104 purports to quote excerpts of Dr. Dilling's remarks at the Town Meeting, for which no recording or transcript is attached to the FAC; SURA notes the omission,

states that the recording speaks for itself, and denies any characterization inconsistent with it. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 104 and therefore denies them.

105. Paragraph 105 references a December 22, 2025 offer of a "Nuclear Physics Special Advisor" position, which Plaintiff did not attach to the FAC; SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. As alleged, the offer was transmitted by JSA. SURA denies that the offer was discriminatory or retaliatory and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 105, and therefore denies them.

106. The allegations in Paragraph 106 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

107. SURA denies that any false or defamatory statements were made and denies that Plaintiff was "forced" to take any action. Paragraph 107 references an email issued by Plaintiff, which Plaintiff did not attach to the FAC; SURA notes the omission and states that the document speaks for itself. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 107 and therefore denies them.

### G. Dilling's Private Defamatory Statements to Leaders of the Field

108. The allegations in Paragraph 108 are not directed at SURA. Paragraph 108 fails to identify the recipients, the dates, the words used, or the manner of any alleged publication with the particularity required to respond, and on that basis SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 108 and therefore denies them.

109. SURA denies the allegations in Paragraph 109, and specifically denies that SURA

or Hearne directed Dr. Dilling, or anyone else, to seek out leaders in the nuclear physics community or to make any statement about Plaintiff.

**H. Continued Retaliation: The December 22, 2025, Demotion Offer**

110. Paragraph 110 references a December 22, 2025 “conversion position” offer, which Plaintiff did not attach to the FAC; SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegations are directed at JSA. The allegation that the offer was retaliatory states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 110 and therefore denies them.

111. SURA lacks knowledge or information sufficient to form a belief about whether Plaintiff rejected the offer and therefore denies that allegation. SURA denies the remaining allegations in Paragraph 111.

112. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 112 and therefore denies them. The allegation that Plaintiff was employed by “JSA/SURA” or that SURA was her employer or joint employer states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it.

113. Paragraph 113 references a January 5, 2026 email, which Plaintiff did not attach to the FAC; SURA notes the omission and states that the document speaks for itself. The allegation that the email was a “protected act” states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA denies that Plaintiff experienced discrimination or retaliation and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 113, and therefore denies them.

## I. JSA/SURA Retaliate Against Dr. Keppel by Failing to Timely Provide COBRA Notices

114. SURA denies that it terminated Plaintiff and incorporates its responses to Paragraphs 7 and 71. The allegation that "JSA and SURA terminated Dr. Keppel" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it.

115. The allegations in Paragraph 115 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

116. The allegations in Paragraph 116 are directed at JSA. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 116 and therefore denies them.

117. The allegations in Paragraph 117 state legal conclusions to which no response is required, and COBRA speaks for itself. To the extent a response is required, SURA denies that it was Plaintiff's employer, and SURA denies any remaining allegations in Paragraph 117.

118. Paragraph 118 references a Form 5500, which Plaintiff did not attach to the FAC; SURA notes the omission, states that the document speaks for itself, and denies any characterization inconsistent with its contents. The allegations regarding plan sponsorship and administrator status under 29 U.S.C. § 1002(16)(A) state legal conclusions to which no response is required. SURA admits that it is identified on the Form 5500 for the SURA/Jefferson Science Associates, LLC Comprehensive Health and Welfare Benefit Plan, Plan No. 501, as plan sponsor and administrator. SURA denies any remaining allegations in Paragraph 118.

119. The allegations in Paragraph 119 describing COBRA's notice requirements state legal conclusions to which no response is required; the statute speaks for itself. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 119 and therefore denies them.

120. The allegations in Paragraph 120 state legal conclusions to which no response is required. To the extent a response is required, and SURA denies that it failed to comply with any obligation it had after receiving notice of a qualifying event, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 120 and therefore denies them.

121. The allegations in Paragraph 121 are directed at JSA and state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

122. The allegations in Paragraph 122 are directed at JSA. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 122 and therefore denies them.

123. The allegations in Paragraph 123 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

124. The allegation in Paragraph 124 that the alleged failure is evidence of discrimination and retaliation states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. Paragraph 124 does not identify the male comparator, and SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 124 and therefore denies them.

**J. JSA/SURA Retaliate Against Dr. Keppel by Denying Access to Her Retirement Funds**

125. The allegations in Paragraph 125 regarding plan status, sponsorship, administration, and fiduciary status state legal conclusions to which no response is required. Paragraph 125 also references the plan's participant communications, which Plaintiff did not attach to the FAC; SURA notes the omission and states that the documents speak for themselves. SURA admits that Plaintiff was a participant in the SURA/Jefferson Science Associates 401(k) Plan, Plan

No. 003, that SURA is identified as plan sponsor and administrator, and that TIAA serves as recordkeeper and custodian. SURA denies that Plaintiff was employed by SURA and denies any remaining allegations in Paragraph 125.

126. Paragraph 126 references the terms of the 401(k) Plan and audited financial statements, which Plaintiff did not attach to the FAC; SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. The allegations regarding Plaintiff's entitlement to distributions state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA denies that it asserted any "false assertion" that Plaintiff remained employed and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 126, and therefore denies them.

127. The allegations in Paragraph 127 are directed at JSA. To the extent a response is required, SURA denies that it denied Plaintiff access to her retirement funds and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 127, and therefore denies them.

128. Plaintiff did not attach any January 14, 2026 withdrawal request or TIAA denial to the FAC, and SURA notes the omission. SURA denies that it falsely maintained that Plaintiff remained employed and denies any remaining allegations in Paragraph 128.

129. Plaintiff did not attach any February 26, 2026 withdrawal request or TIAA denial to the FAC, and SURA notes the omission. SURA denies that it falsely maintained that Plaintiff remained employed and denies any remaining allegations in Paragraph 129.

130. Plaintiff did not attach any March 6, 2026 withdrawal request or TIAA denial to the FAC, and SURA notes the omission. SURA denies that it falsely maintained that Plaintiff

remained employed and denies any remaining allegations in Paragraph 130.

131. SURA denies that it asserted or maintained to TIAA that Plaintiff "remained employed." SURA incorporates its response to Paragraph 71 regarding the Termination Notice and denies any remaining allegations in Paragraph 131.

132. The allegations in Paragraph 132 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them. SURA specifically denies that it made any knowingly false assertion to TIAA or acted with intent to interfere with Plaintiff's ERISA rights.

133. The allegations in Paragraph 133 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

134. The allegations in Paragraph 134 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

135. The allegations in Paragraph 135 are directed at JSA and state legal conclusions to which no response is required. To the extent a response is required, SURA denies them and lacks knowledge or information sufficient to form a belief about the treatment of other employees' retirement funds.

**K. Dr. Keppel's Separation from JSA/SURA and Ongoing Harm**

136. SURA denies the allegations in Paragraph 136, including that any conduct by SURA caused Plaintiff any harm.

## CAUSES OF ACTION

### COUNT I
### Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e-2(a)
### (Against Defendant JSA)

137. In response to Paragraph 137, SURA incorporates its responses to all preceding

paragraphs as if fully set forth herein.

138–142. Count I is asserted against JSA only. The allegations in Paragraphs 138 through 142 are not directed at SURA and state legal conclusions to which no response is required. To the extent a response is required, SURA denies them, including any allegation that SURA engaged in, authorized, or ratified the conduct alleged.

**COUNT II**
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant SURA)**

143. In response to Paragraph 143, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

144. The allegations in Paragraph 144 state legal conclusions to which no response is required. The statute speaks for itself, and SURA denies any characterization inconsistent with its terms.

145. SURA admits, upon information and belief, that Plaintiff is a woman. The allegation that Plaintiff was "indisputably qualified" states a legal conclusion to which no response is required; to the extent a response is required, SURA lacks knowledge or information sufficient to form a belief about the truth of that allegation and therefore denies it.

146. SURA denies the allegations in Paragraph 146, including subparagraphs (a) through (i). The allegation that SURA was Plaintiff's "joint employer" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA specifically denies that it authorized or ratified any hostile work environment, imposed any pretextual audit, terminated Plaintiff, replaced her, denied her severance, demanded any false representation, or restricted her outside engagement because of her sex, and denies that Hearne responded with hostility or invoked any non-compete against Plaintiff because of her sex.

147. The allegations in Paragraph 147 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

148. The allegations in Paragraph 148 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them. SURA further denies that Plaintiff is entitled to any damages, including punitive damages under 42 U.S.C. § 1981a.

**COUNT III**
**Hostile Work Environment Based on Sex in Violation of Title VII**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant JSA)**

149. In response to Paragraph 149, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

150–153. Count III is asserted against JSA only. The allegations in Paragraphs 150 through 153 are not directed at SURA and state legal conclusions to which no response is required. To the extent a response is required, SURA denies them, including any allegation that SURA engaged in, authorized, or ratified the conduct alleged.

**COUNT IV**
**Hostile Work Environment Based on Sex in Violation of Title VII**
**42 U.S.C. § 2000e-2(a)**
**(Against Defendant SURA)**

154. In response to Paragraph 154, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

155. The allegations in Paragraph 155 state legal conclusions to which no response is required. The statute speaks for itself, and SURA denies any characterization inconsistent with its terms.

156. SURA denies the allegations in Paragraph 156. The allegation that SURA was Plaintiff's "joint employer" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA specifically denies that it authorized or ratified any

discriminatory conduct by Dr. Dilling or others, ordered any discriminatory or pretextual audit, or authorized or ratified Plaintiff's escort from the facility.

157. SURA denies the allegations in Paragraph 157, including that it knew or should have known of any hostile work environment.

158. The allegations in Paragraph 158 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them. SURA further denies that Plaintiff is entitled to any damages, including punitive damages under 42 U.S.C. § 1981a.

**COUNT V**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-3(a)**
**(Against Defendant JSA)**

159. In response to Paragraph 159, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

160–165. Count V is asserted against JSA only. The allegations in Paragraphs 160 through 165 are not directed at SURA and state legal conclusions to which no response is required. To the extent a response is required, SURA denies them, including any allegation that SURA engaged in, authorized, or ratified the conduct alleged.

**COUNT VI**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-3(a)**
**(Against Defendant SURA)**

166. In response to Paragraph 166, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

167. The allegations in Paragraph 167 state legal conclusions to which no response is required. The statute speaks for itself, and SURA denies any characterization inconsistent with its terms.

168. The allegation in Paragraph 168 that Plaintiff engaged in protected activity states a

legal conclusion to which no response is required; to the extent a response is required, SURA denies it and lacks knowledge or information sufficient to form a belief about when Plaintiff retained counsel.

169. SURA denies the allegations in Paragraph 169, including subparagraphs (a) through (d). The allegation that SURA was Plaintiff's "joint employer" states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it. SURA specifically denies that Dr. Dilling hosted the Town Meeting "on behalf of SURA," and denies that it authorized or ratified any retaliatory action.

170. SURA denies the allegations in Paragraph 170, including that any protected activity was the but-for cause of any action by SURA.

171. The allegations in Paragraph 171 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

172. The allegations in Paragraph 172 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

**COUNT VII**
**Gender Discrimination and Hostile Work Environment in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant JSA)**

173. In response to Paragraph 173, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

174–178. Count VII is asserted against JSA only. The allegations in Paragraphs 174 through 178 are not directed at SURA and state legal conclusions to which no response is required. To the extent a response is required, SURA denies them, including any allegation that SURA engaged in, authorized, or ratified the conduct alleged.

**COUNT VIII**

**Gender Discrimination and Hostile Work Environment in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant SURA)**

179. In response to Paragraph 179, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

180. The allegations in Paragraph 180 state legal conclusions to which no response is required. The statute speaks for itself, and SURA denies any characterization inconsistent with its terms.

181. The allegations in Paragraph 181 state legal conclusions to which no response is required. To the extent a response is required, and SURA denies that it was Plaintiff's employer under Va. Code Ann. § 2.2-3905.

182. SURA denies the allegations in Paragraph 182, including that it authorized or ratified any of the conduct alleged and that Hearne invoked an expired non-compete against Plaintiff because of her sex.

183. SURA denies the allegations in Paragraph 183.

184. The allegations in Paragraph 184 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them. SURA further denies that Plaintiff is entitled to punitive damages under Va. Code Ann. § 2.2-3908(B).

**COUNT IX**
**Retaliation in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant JSA)**

185. In response to Paragraph 185, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

186–190. Count IX is asserted against JSA only. The allegations in Paragraphs 186 through 190 are not directed at SURA and state legal conclusions to which no response is required.

To the extent a response is required, SURA denies them, including any allegation that SURA engaged in, authorized, or ratified the conduct alleged.

**COUNT X**
**Retaliation in Violation of the Virginia Human Rights Act**
**Va. Code Ann. §§ 2.2-3900 et seq.**
**(Against Defendant SURA)**

191. In response to Paragraph 191, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

192. The allegations in Paragraph 192 state legal conclusions to which no response is required. The statute speaks for itself, and SURA denies any characterization inconsistent with its terms.

193. SURA denies the allegations in Paragraph 193, including subparagraphs (a) through (d), and denies that it authorized or ratified any retaliatory action. The allegation that Plaintiff engaged in protected conduct under the VHRA states a legal conclusion to which no response is required; to the extent a response is required, SURA denies it.

194. SURA denies the allegations in Paragraph 194, including that any protected activity was the but-for cause of any action by SURA.

195. The allegations in Paragraph 195 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

196. The allegations in Paragraph 196 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

**COUNT XI**
**Gender Discrimination, Hostile Work Environment, and Retaliation in Violation of the District of Columbia Human Rights Law**
**D.C. Code §§ 2-1401.01 et seq.**
**(Against All Defendants)**

197. In response to Paragraph 197, SURA incorporates its responses to all preceding

paragraphs as if fully set forth herein.

198. The allegations in Paragraph 198 state legal conclusions to which no response is required. The DCHRA speaks for itself, and SURA denies any characterization inconsistent with its terms. To the extent a response is required, SURA denies the allegations in Paragraph 198 and denies that the DCHRA applies to Plaintiff's employment in Virginia.

199. The allegations in Paragraph 199 that Defendants are employers subject to the DCHRA and that the facts "giv[e] rise to claims under D.C. law" state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA admits that it maintains its headquarters at 1201 New York Avenue, NW, Washington, D.C., and that Hearne is its President and CEO. SURA denies that any discriminatory or retaliatory decision occurred, denies that the decisions concerning Plaintiff "originated" in or were "transmitted from" the District of Columbia, and denies that its offices functioned as the hub for the management of Jefferson Lab. Paragraph 199 references the Operations Audit report, the Leadership Participation Agreement, and SURA's benefit-plan filings, none of which Plaintiff attached to the FAC; SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. SURA incorporates its responses to Paragraphs 24, 27, 28, 29, and 31 and denies the remaining allegations in Paragraph 199, including that the location of plan administration makes Plaintiff's Virginia employment subject to the DCHRA.

200. The allegations in Paragraph 200 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

201. The allegations in Paragraph 201 are directed at Dr. Dilling and Hearne and state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

202. SURA denies the allegations in Paragraph 202 and denies that Plaintiff is entitled to any relief from SURA.

**COUNT XII**
**Post-Employment Defamation Per Se**
**(Virginia Common Law)**
**(Against Defendants Dilling, JSA, and SURA)**

203. In response to Paragraph 203, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

204. SURA incorporates its responses to Paragraphs 10, 91, and 92. The allegations that Dr. Dilling acted within the scope of his authority and "on behalf of JSA and SURA" state legal conclusions to which no response is required; to the extent a response is required, SURA denies them, and specifically denies that Dr. Dilling was SURA's employee or agent for purposes of the Town Meeting. SURA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 204 and therefore denies them.

205. SURA denies the allegations in Paragraph 205. SURA further states that the FAC does not elsewhere allege any statement concerning safety "yellow card" warnings, that Plaintiff has not attached any recording or transcript of the Town Meeting to the FAC, and that SURA denies that any statement identified Plaintiff as the "line management" responsible for any safety or budget matter.

206. SURA denies the allegations in Paragraph 206. SURA notes that Paragraph 206 alleges Dr. Dilling "himself commissioned" the Operations Audit, while Paragraphs 28 and 66 allege that Hearne ordered it. Paragraph 206 references the written audit report and the external review report, neither of which Plaintiff attached to the FAC; SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents.

207. The allegations in Paragraph 207 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

208. The allegations in Paragraph 208 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

209. The allegations in Paragraph 209 regarding privilege state legal conclusions to which no response is required; to the extent a response is required, SURA denies them. SURA further states that Paragraph 209 references alleged "private publications to Shepherd, Napolitano, and Milner," individuals who are not identified anywhere else in the FAC, without alleging the speaker, date, content, or manner of any such publication, and SURA therefore lacks knowledge or information sufficient to form a belief about the truth of those allegations and denies them.

210. The allegations in Paragraph 210 regarding vicarious liability, authorization, and ratification state legal conclusions to which no response is required. To the extent a response is required, SURA denies them, and specifically denies that it authorized or ratified any statement by Dr. Dilling.

211. SURA denies the allegations in Paragraph 211 and denies that Plaintiff is entitled to compensatory, presumed, or punitive damages from SURA.

**COUNT XIII**
**Failure to Provide Timely COBRA Notice**
**29 U.S.C. § 1166; 29 U.S.C. § 1132(c)**
**(Against Defendants JSA and SURA)**

212. In response to Paragraph 212, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

213. The allegations in Paragraph 213 state legal conclusions to which no response is required. The statute speaks for itself, and SURA denies any characterization inconsistent with its terms. To the extent a response is required, SURA denies that the notice deadline runs from the

date of the qualifying event where the employer has not notified the administrator, and denies any remaining allegations in Paragraph 213.

214. The allegations in Paragraph 214 state legal conclusions to which no response is required. To the extent a response is required, and SURA denies any remaining allegations in Paragraph 214, including the characterization of the plan as "JSA's group health plan."

215. The allegations in Paragraph 215 are directed at JSA and state legal conclusions to which no response is required. To the extent a response is required, SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 215 and therefore denies them.

216. SURA denies that it failed to provide any COBRA election notice it was required to provide. SURA lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding JSA's notice to the plan administrator and therefore denies them, and denies the remaining allegations in Paragraph 216.

217. The allegations in Paragraph 217 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

218. SURA denies the allegations in Paragraph 218.

219. The allegations in Paragraph 219 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them and denies that Plaintiff is entitled to statutory penalties or any other relief.

**COUNT XIV**
**Interference with ERISA Rights in Violation of ERISA § 510**
**29 U.S.C. § 1140; 29 U.S.C. § 1132(a)(3)**
**(Against Defendant JSA)**

220. In response to Paragraph 220, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

221–226. Count XIV is asserted against JSA only. The allegations in Paragraphs 221 through 226 are not directed at SURA and state legal conclusions to which no response is required. To the extent a response is required, SURA denies them, including any allegation that SURA engaged in, authorized, or ratified the conduct alleged.

**COUNT XV**
**Interference with and Denial of ERISA Rights in Violation of ERISA**
**29 U.S.C. §§ 1104(a)(1), 1140, 1132(a)(1)(B), 1132(a)(3)**
**(Against Defendant SURA)**

227. In response to Paragraph 227, SURA incorporates its responses to all preceding paragraphs as if fully set forth herein.

228. The allegations in Paragraph 228 state legal conclusions to which no response is required. The statute speaks for itself, and SURA denies any characterization inconsistent with its terms.

229. The allegations in Paragraph 229 regarding plan status, sponsorship, administrator, and fiduciary status state legal conclusions to which no response is required. Paragraph 229 references a February 26, 2026 TIAA service notification and Form 5500 returns, which Plaintiff did not attach to the FAC; SURA notes the omission, states that the documents speak for themselves, and denies any characterization inconsistent with their contents. SURA incorporates its responses to Paragraphs 24 and 125. SURA denies that it "holds" Plaintiff's retirement funds and denies any remaining allegations in Paragraph 229.

230. SURA denies the allegations in Paragraph 230.

231. The allegations in Paragraph 231 state legal conclusions to which no response is required. To the extent a response is required, SURA denies them.

232. SURA denies the allegations in Paragraph 232.

233. The allegations in Paragraph 233 state legal conclusions to which no response is

required. To the extent a response is required, SURA denies them. SURA further denies that Plaintiff is entitled to any relief under 29 U.S.C. § 1132(a)(1)(B), (a)(3), or (g).

## PRAYER FOR RELIEF

234. SURA denies that Plaintiff is entitled to any of the relief requested in Paragraph 234, including subparagraphs (a) through (l), and denies that Plaintiff is entitled to any relief whatsoever from SURA.

## DEMAND FOR JURY TRIAL

235. Paragraph 235 is a jury demand to which no response is required. SURA states that Plaintiff is not entitled to a jury trial on her claims under ERISA (Counts XIII and XV).

## GENERAL DENIAL

SURA denies each and every allegation in the FAC not expressly admitted above, and denies that Plaintiff is entitled to judgment or any relief against SURA.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof it would not otherwise bear, SURA asserts the following defenses and reserves the right to amend this Answer to assert additional defenses as they become known through discovery.

1. The FAC fails, in whole or in part, to state a claim against SURA upon which relief can be granted.

2. SURA was not Plaintiff's employer. Plaintiff was employed and paid by JSA, a separate legal entity. SURA and JSA are not a single, integrated enterprise, and SURA did not exercise the control over the terms and conditions of Plaintiff's employment necessary to be her joint employer under Title VII, the VHRA, or the DCHRA. Sponsoring or administering employee benefit plans, holding a membership interest in JSA, or participating in the selection of the

Laboratory Director does not make SURA Plaintiff's employer.

3. SURA is liable, if at all, only for its own acts. SURA is not liable for the acts, omissions, or decisions of JSA, Dr. Dilling, Dr. Dean, or JSA personnel, and SURA did not authorize or ratify any such conduct.

4. Every action SURA took with respect to Plaintiff, including, but not limited to, any request for or authorization of an operational review of the Physics Division and any communication regarding the M&O contract competition, was based on legitimate, non-discriminatory business reasons unrelated to Plaintiff's sex, and none of those reasons was a pretext for discrimination.

5. In the alternative, if Plaintiff's sex is found to have been a motivating factor in any decision, which SURA denies, the same action would have been taken in the absence of that factor, and Plaintiff's remedies are limited accordingly under 42 U.S.C. § 2000e-5(g)(2)(B).

6. Several of the acts on which Counts II and VIII rely are not adverse employment actions taken by SURA, including the offers of an individual contributor role and a Special Advisor role (both of which Plaintiff declined), the alleged denial of severance, to which Plaintiff had no contractual or policy entitlement, and an operational review. The comparators identified in the FAC were not similarly situated to Plaintiff.

7. The conduct alleged consists of ordinary workplace management decisions and interactions that were not based on sex, were not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment, and were not engaged in by SURA.

8. SURA did not know and should not have known of any alleged harassment, and Plaintiff did not report it to SURA. To the extent any alleged harassment did not culminate in a tangible employment action, reasonable care was exercised to prevent and promptly correct

harassing behavior, and Plaintiff unreasonably failed to take advantage of the preventive and corrective opportunities provided.

9. Plaintiff's protected activity was not the but-for cause of any challenged action. The Operations Audit, the leadership decision, the November 21, 2025 notice, and the offer of continued employment all preceded Plaintiff's alleged retention of counsel on or about November 25, 2025.

10. The post-separation acts alleged as retaliation, including remarks at the December 18, 2025 Town Meeting, the December 22, 2025 offer, and the alleged COBRA and retirement-plan issues, were not materially adverse actions taken by SURA because of protected activity.

11. Plaintiff's Title VII and VHRA claims against SURA are barred, in whole or in part, to the extent they rely on acts or theories not raised in, or not reasonably related to, EEOC Charge Nos. 437-2026-00771 or 437-2026-00772, including the 2022 Leadership Participation Agreement and the 2023 outside-engagement and non-compete allegations, or to the extent they rest on acts occurring more than 300 days before the charge was filed, 42 U.S.C. § 2000e-5(e)(1), or are otherwise untimely under Va. Code Ann. § 2.2-3907.

12. Plaintiff's VHRA claims against SURA are barred, in whole or in part, by failing to file an administrative charge with the Virginia Office of Civil Rights or local equivalent, as required by Va. Code Ann. § 2.2-3907 and/or an ordinance of a locality.

13. The DCHRA does not apply to Plaintiff's claims because Plaintiff lived and worked exclusively in Virginia, the decisions affecting her employment were made and felt in Virginia, and, by her own allegation, the alleged unlawful employment practices were "committed principally" in the Eastern District of Virginia. The location of SURA's headquarters, its board meetings, or its benefit-plan administration does not extend the DCHRA to employment performed

entirely in Virginia.

14. Plaintiff's DCHRA claim is barred, in whole or in part, by the applicable limitations period of D.C. Code § 2-1403.16, including to the extent it rests on the April 7, 2022 Leadership Participation Agreement, the 2023 non-compete conversation, or other acts outside the limitations period for Plaintiff to assert a DCHRA claim, and to the extent the claim was not tolled by a timely administrative charge.

15. Count XI is duplicative of Counts II, IV, VI, VIII, and X, and Plaintiff may not recover more than once for the same alleged injury.

16. Plaintiff's claims are barred to the extent that the alleged defamatory statements were true or substantially true.

17. Plaintiff's claims are barred to the extent that the alleged defamatory statements were statements about laboratory-wide operations rather than statements of fact of and concerning Plaintiff.

18. Plaintiff's claims are barred to the extent that the alleged defamatory statements were expressions of opinion that cannot be proven true or false.

19. Plaintiff's claims are barred to the extent that the alleged defamatory statements are protected by a qualified privilege and Plaintiff cannot overcome that privilege by clear and convincing evidence of common-law malice.

20. SURA made no statement about Plaintiff. Dr. Dilling was not SURA's employee or agent, any statement he made was not made within the scope of any employment or agency relationship with SURA, and SURA did not authorize or ratify any statement. SURA therefore cannot be vicariously liable.

21. In the alternative, to the extent any alleged statement, including the unspecified

private statements alleged in Paragraphs 108, 109, and 209, was made outside the scope of the speaker's employment, JSA is not vicariously liable for it.

22. Plaintiff's defamation claim fails to the extent it rests on the unspecified private statements alleged in Paragraphs 108, 109, and 209, because the FAC does not identify the speaker, the exact words, when, where, or to whom they were published, and is barred to the extent any statement was made more than one year before Plaintiff asserted a claim based on it, Va. Code Ann. § 8.01-247.1.

23. To the extent it can be shown, Plaintiff was a public, or limited purpose public figure, and any statements attributable to SURA were not made falsely or with reckless disregard for the truth or falsity of the statement or statements.

24. Plaintiff may not recover presumed or punitive damages on Count XII absent clear and convincing proof of actual malice, and any punitive damages award is subject to the limit in Va. Code Ann. § 8.01-38.1.

25. A plan administrator's 14-day obligation to provide an election notice under 29 U.S.C. § 1166(c) runs only from its receipt of notice of the qualifying event from the employer. SURA timely provided, or caused its COBRA administrator to provide, any notice it was required to provide, or any delay resulted from the absence of timely notice from the employer and not from any failure by SURA.

26. Statutory penalties under 29 U.S.C. § 1132(c)(1) are discretionary and are not warranted because SURA acted in good faith, any delay was not willful or in bad faith, and Plaintiff suffered no prejudice, having obtained other health coverage. Any penalty may be assessed only against the plan administrator and only for the period after the administrator's obligation arose.

27. Count XV is barred, in whole or in part, because Plaintiff failed to exhaust the

plan's administrative claims and appeal procedures before filing suit.

28. SURA did not act with the specific intent to interfere with Plaintiff's attainment of plan rights or to retaliate for the exercise of plan rights or for any other protected activity. Any delay in distributions resulted from good-faith administration of Plaintiff's employment status and from employer, payroll, and recordkeeper processes, not from conduct by SURA. Opposition to alleged Title VII violations is not activity protected by 29 U.S.C. § 1140.

29. Any decision by the plan administrator regarding Plaintiff's eligibility for a distribution is subject to deferential review under the plan's terms and was reasonable.

30. Relief under 29 U.S.C. § 1132(a)(3) is limited to appropriate equitable relief, and is unavailable where § 1132(a)(1)(B) provides an adequate remedy. Plaintiff is not entitled to compensatory, extra-contractual, or punitive damages, or to a jury trial, on Counts XIII and XV. Any claim for benefits or equitable relief is moot to the extent Plaintiff has received or may now receive a distribution.

31. To the extent any state-law count seeks relief for the alleged denial of retirement or health benefits, it is preempted by ERISA, 29 U.S.C. § 1144(a).

32. Plaintiff's Complaint fails in whole or in part to state claims upon which relief can be granted against Defendant because Plaintiff cannot show direct evidence that Defendant had the specific intent to engage in prohibited conduct.

33. Plaintiff's claims under 29 U.S.C. § 1140 fail in whole or in part to state claims upon which relief can be granted against Defendant because Plaintiff's alleged loss of benefits is a mere consequence of a termination of employment.

33. To the extent punitive damages are asserted against SURA under ERISA, punitive damages are unavailable.

34. To the extent Plaintiff's jury demand extends to her ERISA claim against SURA, Plaintiff's demand for a jury trial is barred by ERISA

35. Plaintiff failed to mitigate her alleged damages, including by declining the November 21, 2025 offer of an individual contributor role and the December 22, 2025 offer of a Special Advisor position, and any back pay or front pay must be cut off or reduced accordingly.

36. Plaintiff is not entitled to punitive damages because SURA did not act with malice or reckless indifference to her protected rights and made good-faith efforts to comply with anti-discrimination laws. Any compensatory and punitive damages are subject to the caps in 42 U.S.C. § 1981a(b)(3) and the limits in Va. Code Ann. § 2.2-3908 and § 8.01-38.1, and any award must comport with the Due Process Clause.

37. Any recovery must be offset by interim earnings, benefits, and other amounts Plaintiff has received, including from any other Defendant, and Plaintiff may not recover duplicative damages for the same alleged injury under multiple counts.

38. To the extent evidence of misconduct is discovered that would have led to Plaintiff's separation, Plaintiff's damages are limited under the after-acquired evidence doctrine.

39. SURA reserves the right to amend this Answer to assert additional defenses as they become known through discovery.

WHEREFORE, SURA respectfully requests that the Court dismiss the FAC with prejudice as to SURA, enter judgment in SURA's favor on all claims, award SURA its costs and, where permitted, reasonable attorneys' fees, and grant such other relief as the Court deems just and proper.

Date: October 15, 2026

**SOUTHEASTERN UNIVERSITIES**
**RESEARCH ASSOCIATION, INC.**

By: ______________/s/__________
Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com
Winston.west@jacksonlewis.com
*Counsel for Defendant Southeastern Universities Research Association, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including


Ronald J. Kim, Esq.
SOLOMON LAW FIRM, PLLC
300 Great Oaks Blvd, Suite 312
Albany, NY 12203
rkim@fedemploylaw.com

Dawn C. Stewart, Esq
SOLOMON LAW FIRM, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, D.C. 20036
dstewart@fedemploylaw.com


*Counsel for Plaintiff*

**SOUTHEASTERN UNIVERSITIES RESEARCH ASSOCIATION, INC.**

By: ______________/s/________________


Kristina H. Vaquera (VSB No. 43655)
Milena Radovic (VSB No. 91000)
N. Winston West, IV (VSB No. 92598)
Jackson Lewis P.C.

*Physical Addresses:*
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219

Dominion Tower
999 Waterside Dr., Ste. 2525
Norfolk, VA 23510

*Mailing Address:*
P.O. Box 85068
Richmond, Virginia 23285

Tel: (757) 648-1448
Fax: (804) 649-0403
Kristina.vaquera@jacksonlewis.com
Milena.radovic@jacksonlewis.com

Winston.west@jacksonlewis.com
*Counsel for Defendant Southeastern Universities Research Association, Inc.*

4912-1607-3433, v. 1